IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER D. BALLA, et. al., ) | |
| ) | |
| Plaintiffs, ) | Case No. CV81-1165-S-EJL |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| IDAHO BOARD OF CORRECTION, ) et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court are the following motions: Defendants' Motion for Partial Reconsideration (Docket No. 588); and Plaintiffs' Motion for Attorney Fees and Costs (Docket No. 550). A telephonic hearing was held on the Motions on October 13, 2005 before the Honorable James M. Fitzgerald. Having carefully reviewed the record and considered the oral argument of the parties, the Court has determined that Defendants' Motion for Partial Reconsideration is denied. The Court also adopts its earlier tentative ruling on the attorney fees and costs awarded to Plaintiffs' counsel.

## BACKGROUND

Defendants filed a motion requesting partial reconsideration of the Court's Order of September 26, 2005, which denied the IDOC's request for termination of a permanent

**ORDER 1**

injunction, dating back to 1987. The Order determined that the permanent injunction set forth in *Balla II* would remain in effect. The *Balla II* order capped the number of inmates that could be double-celled in Units 9, 10, 11, and A block at ISCI. The Order also preserved the portions of the *Balla II* injunction that prevented the IDOC from housing more than two inmates in any cell and from housing inmates in the day rooms or other non-designed cell areas. Finally, the Order preserved the injunction's provisions relating to maintenance of plumbing at ISCI.

Defendants' Motion for Partial Reconsideration asks the Court (1) to clarify the Order as it pertains to the population cap in Unit 9; (2) to reconsider the denial of the Motion to Terminate the injunctive orders as to Unit 9; and (3) to reconsider the denial of the termination of injunctive relief as to Unit 13. *Docket No. 588-1*, p. 2.

Defendants claim that the Court committed clear error when it denied the Motion to Terminate Prospective Injunctive Relief, and the IDOC argues that it should have been given time to formulate a remedial plan to submit to the Court. The IDOC's motion reasserts the same arguments that were presented in the Motion to Terminate Prospective Injunctive Relief, and argues that a population cap in Units 9, 10, 11, and 13 is tantamount to a "prison release order." The request for reconsideration does not indicate that the IDOC will actually release any prisoners due to the preservation of the *Balla II* injunctive orders, but it implies that a population cap has the effect of a prisoner release order. The Court previously considered this argument and rejected it.

**ORDER 2**

In January of 2005, the parties received the report of the Rule 706 expert, Chase Riveland, who was jointly selected by the parties to give an opinion on the issue of current and ongoing constitutional violations at ISCI. The report provided the expert's opinion that the *Balla II* injunctive orders were necessary to address current and ongoing constitutional violations. The report also expressed the opinion that certain conditions could possibly be remedied in the future, thereby potentially alleviating the current and ongoing constitutional violations at ISCI.

After the Court received Mr. Riveland's report, Judge Edward J. Lodge issued an Order on January 14, 2005, indicating that there was evidence of current and ongoing constitutional violations at ISCI "that would warrant a continuation of the population caps on Units 9, 10, 11, and 13 as ordered in *Balla II*." *Docket No. 552*, p. 4. At this point, Defendants were on notice that the Rule 706 expert believed that the population caps for these units should remain in place, and that the Court considered the report's findings as evidence of current and ongoing constitutional violations.

The parties decided upon a briefing schedule for the Motion to Terminate Injunctive Relief, and a hearing was held on June 8, 2005. Counsel for the IDOC argued that IDOC officials were in the process of addressing the remedial issues raised in the Riveland report. For example, assurances were made that additional showers were going to be added to Unit 9, in an attempt to address the issues raised in the report. The changes described by counsel for the IDOC were prospective in nature, and appeared to be linked

**ORDER 3**

to future funds that may be forthcoming to the IDOC. Therefore, the Court rejected the argument that the IDOC's proposed changes at ISCI would be implemented in a timely manner, if at all, to address current and ongoing constitutional violations. At the time of the hearing in June of 2005, the IDOC had been aware of the Riveland Report for at least six months.

## MOTION FOR PARTIAL RECONSIDERATION

Defendants request reconsideration of the Court's Order pursuant to Federal Rule of Civil Procedure 59(e). In *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), the Ninth Circuit Court of Appeals clarified the limited use of a Rule 59(e) motion:

> Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000). Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999). A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *See id.*

Defendants argue that the Court committed clear error in its decision to preserve the *Balla II* injunctive orders. In support of the clear error argument, Defendants raise all of the same issues that were previously presented in Defendants' Motion to Terminate Injunctive Relief. Upon reviewing the arguments for the second time, the Court will not

ORDER 4

change its original Order. Therefore, to the extent Defendants seek partial reconsideration of the Order pertaining to Units 9 and 13, the request is denied.

It is obvious that Defendants disagree with the outcome of their motion, but as the Court indicated in its Order preserving the *Balla II* injunction, the conditions at ISCI have grown worse since the time the injunctive orders were originally made. The Court has sympathy for the argument that IDOC officials are continually facing a shortfall in the budget allocated to the burgeoning prison population, but this is an argument that must be addressed through the legislative process, and not through the courts.

Plaintiffs argue that the Motion for Reconsideration was brought in bad faith, and request attorney fees as a sanction. In support of the fee request, Plaintiffs outlined the arguments that Defendants raised in the Motion to Terminate Prospective Relief, and the same arguments that were set forth in the Motion for Partial Reconsideration. The Court does not attribute a bad faith motive to Defendants' Motion for Reconsideration, and, therefore, it will deny the request for sanctions.

After considering the Defendants' request for clarification of the Order pertaining to Unit 9, the Court will clarify the Order to conform to the adjustment made in the permanent injunction in 1991. It was not clear to the Court in the Defendants' briefing whether the cells in Unit 9 had continually been used as single cells since 1987 or whether there were some cells that consistently housed two inmates after the close custody inmates were moved to IMSI. Therefore, to the extent that Defendants request

**ORDER 5**

clarification of this part of the Order, it will be modified to preserve a population cap of 117 inmates in Unit 9, or in other words, double-celling in no more than half of the 78 cells in Unit 9.

## MOTION FOR ATTORNEY FEES AND COSTS

Plaintiffs requested an award of attorney fees and costs based on the Court's preservation of the *Balla II* injunctive orders. The Prison Litigation Reform Act (PLRA) contains restrictions on the availability of attorney fees for inmate lawsuits. 42 U.S.C. § 1997e(d) provides :

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
> (B) (I) the amount of the fee is proportionately related to the court ordered relief for the violation; or (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

In *Dannenberg v. Valadez*, 338 F.3d 1070, 1075 (9th Cir. 2003), the Ninth Circuit Court of Appeals held that "fees incurred to obtain injunctive relief, whether or not monetary relief was also obtained as a result of those fees, are not limited by [42 U.S.C. § 1997e(d)(2)]." Therefore, the full amount of attorney fees incurred to obtain injunctive

**ORDER 6**

relief may be awarded when the Plaintiffs prevail.

The *Dannenberg* opinion also states that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 1075 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). District courts are given wide latitude to assess the reasonableness of attorney fees, and the court "must exercise its discretion with an eye toward 'the relationship between the extent of success and the amount of the fee award.'" *Id.* (quoting *Farrar*, 506 U.S. at 115-16.)

In the present case, the inmates were defending against the termination of the permanent injunction ordered in *Balla II*, and they were successful in their defense. The prior injunctive orders were preserved, and, therefore, the attorney fees were "directly and reasonably incurred in enforcing the relief ordered" in the prior permanent injunction. 42 U.S.C. § 1997e(d) (1)(B)(ii); *see also Cody v. Hillard*, 304 F.3d 767, 777 (8th Cir. 2002)(holding that "the inmate class's effort to prolong the efficacy of the remedial decree was time spent 'enforcing' that decree," and is fully compensable); *Webb v. Ada County*, 285 F.3d 829, 835 (9th Cir. 2002)(holding that the district court correctly awarded attorney fees for post-judgment work in enforcing and monitoring the court's prior judgment). The attorney fees in the *Balla* case were also incurred in proving a current and ongoing constitutional violation, thus creating another basis upon which to base the fee award. *Id.* at § 1997e(d)(1)(A).

The PLRA caps the hourly rate for attorney fees at no "greater than 150 percent of

**ORDER 7**

the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). The current hourly fee rate for court-appointed counsel is $113.00 per hour. Therefore, the PLRA fee cap for attorney fees in this case would be $169.50. *See Webb v. Ada County*, 285 F.3d at 839 (the PLRA provides for the payment of the established rate for court-appointed counsel). Although Plaintiffs' counsel argue that the Court can exceed the PLRA cap, the Court will not deviate from the statutory cap for the fee award.

Plaintiffs submitted affidavits in support of their attorney fees request in which the hourly rates are calculated under the PLRA fee rate. Defendants argue that the hourly fee rate for the associates who worked on the case should be reduced in the same proportion to what the hourly rate of the more experienced counsel is reduced under the PLRA. Defendants do not cite any case law in support of this argument. Plaintiffs argue that there is no merit to Defendants' request that the associates' billing rates be reduced proportionately, and the Court agrees. *See Reynolds v. Goord*, 2001 WL 118564, * 2 (S.D.N.Y. 2001)(holding that the PLRA does not require the reimbursement rate for less experienced attorneys to be proportionately reduced in relation to the statutory cap, even though the more experienced attorney's rate is reduced). The Court will not reduce the associate billing rate in proportion to the reduction of the partners' fees under the PLRA cap.

"The starting point for determining a reasonable fee is the 'lodestar' figure, which

ORDER 8

is the number of hours reasonably expended multiplied by a reasonable hourly rate." *Gates v. Deukmejian*, 987 F.2d 1392, 1297 (9th Cir. 1992)(citations omitted). The attorney fees request must properly document the time spent on the plaintiff's claims. *Id.* "The party opposing the fee application carries the burden of rebuttal" . . . [which] "requires submission of evidence challenging the accuracy and reasonableness of hours charged, or factual assertions made in affidavits submitted by the prevailing party." *Lozeau v. Lake County, Montana*, 98 F. Supp. 2d 1157, 1169 (D. Montana 2000); District of Idaho Local Civil Rule 54.2 (the objecting party must set forth specific grounds of objection).

Defendants challenge the amount of time associates spent on the case, describing it as repetitive. Plaintiffs argue that the Court appointed the law firm of Stoel Rives to represent the class of inmates, and the law firm selected the attorneys who would work on the litigation. Plaintiffs point out that due to the extensive nature of the litigation, it would have been professionally detrimental for any one associate to have complete responsibility for the litigation. The Court agrees that the complexity of the case required an extensive time commitment from the law firm in general, and from individual partners, associates, and legal assistants in particular. Therefore, the Court will not discount the attorney and paralegal fees because several members of the law firm ultimately performed services in the case.

Defendants allege that Plaintiffs' fees should be reduced for time spent preparing

**ORDER 9**

the Motion for Attorney Fees and for gathering affidavits in opposition to the Motion to Terminate Injunctive Relief. Defendants also object to attorney fees generated by Plaintiffs when they prepared for and attended a court-ordered mediation in this case. Additionally, Defendants generally object to all attorney and paralegal time spent on matters that did not result in motions or hearings. The Court will not reduce the fees for any of the categories to which Defendants raised objections.

As previously set forth in this Order, Plaintiffs' counsel successfully defended against the Defendants' Motion to Terminate the *Balla II* injunctive orders. They also successfully demonstrated that there were current and ongoing constitutional violations at ISCI. Plaintiffs' counsel adequately documented the time spent on the litigation, and the hourly rates listed in the billing statements are reasonable in light of the law firm's reputation and the average billing rates in the Boise, Idaho area.

There are also additional considerations that pertain to the attorney fees award. When Defendants filed the Motion to Terminate Prospective Relief, the motion requested termination of a broad range of injunctive orders, the majority of which were no longer in effect due to the adoption of remedial plans in the 1980's. At the time the Court appointed counsel to represent the class of inmate litigants, Stoel Rives attorneys anticipated defending against the termination of all injunctive orders established in the *Balla* cases. They initiated discovery on the full range of orders that Defendants were seeking to terminate, and only after a substantial amount of discovery had taken place, did

ORDER 10

Defendants decide to limit the issues that were included in the motion. This factor caused the attorney fees to be substantially higher during the discovery phase of the case.

After the appointment of counsel, the Court directed Plaintiffs to name new class representatives because the original class representatives were either no longer incarcerated or were deceased. Defendants challenged the addition of new class representatives to the action, resulting in additional attorney fees to defend the selection of class representatives. This type of litigation strategy caused the attorney fees to be higher in the case, and, therefore, the Court views the overall award to be consistent with the complexity of the action, the logistical difficulties inherent in representing incarcerated individuals, and the necessity of responding to Defendants' motions and objections to procedural issues.

A final category of fees that Defendants dispute is in the area of document management and organization. Defendants argue that the time spent organizing and managing documents in the case was excessive. Plaintiffs request a "case assistant" fee of $30.00 per hour for the majority of the time spent on the case, and $110.00 per hour for the paralegal fees. There are an extensive number of documents in the Court file in this case, and the Court is aware that portions of the file were difficult to locate and misfiled. Plaintiffs' counsel were at a disadvantage because they did not work on the original *Balla* cases, and, therefore, they essentially had to recreate the filings that took place during the time the original injunctive orders were made.

ORDER 11

The Court will allow all of the time entries for the case management assistant, but it will reduce the paralegal fees to $65.00 per hour. *See e.g., Minikin v. Walter*, 1997 WL 778753 (E.D. Wash.)(awarding paralegal fees in inmate litigation at a rate of $65.00 per hour). It appears to the Court that $110.00 per hour for paralegal fees is too high, considering that the associates billing range is between $110.00 to $170.00 per hour. Accordingly, the time entries for the paralegal fees will be reduced to an hourly rate of $65.00 per hour.

Based on the foregoing, the Court has determined that Plaintiffs' Motion for Attorney Fees is granted. The following fees will be awarded to Plaintiffs' counsel:

| Stoel Rives Staff | Hours | Rate | Total |
|---|---|---|---|
| Kerry Bittler/legal editor | 4.7 | $35.00 | $ 164.00 |
| Bradley Ebert/paralegal | 8.6 | $65.00 | $ 559.00 |
| Janelle Frinfrock/case assistant | 359.9 | $30.00 | $10,796.50 |
| Janelle Frinfrock | 3.2 | $50.00 | $ 160.00 |
| Darin S. Frost/paralegal | 36.3 | $65.00 | $ 2,359.50 |
| Nicole Hancock/associate | 201.6 | $150.00 | $30,240.00 |
| Nicole Hancock | 163 | $169.50 | $27,628.50 |
| Mary Hobson/partner | 49.7 | $169.50 | $ 8,424.15 |
| Samia McCall | 4.6 | $150.00 | $ 690.00 |
| Margaret Marlatt | 1.0 | $110.00 | $ 110.00 |
| Christina Morrow | 7.6 | $110.00 | $ 836.00 |
| Jason Prince | 96.9 | $ 90.00 | $ 8,721.00 |
| Scott Randolph/associate | 18 | $150.00 | $ 2,700.00 |
| Scott Randolph | 6.3 | $160.00 | $ 1,008.00 |
| Jeff Severson | 245.1 | $160.00 | $39,216.00 |
| J. Walter Sinclair/partner | 97 | $169.50 | $16,441.50 |
| **Total:** | | | **$150,054.15** |

ORDER 12

## COSTS AWARD

Federal Rule of Civil Procedure 54(d) provides, in pertinent part, as follows:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed *as of course* to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. (emphasis added.)

In exercising its discretion under Rule 54(d) as to whether to award costs in this civil rights case, the Court considered the degree of success gained by Plaintiffs' counsel. It also considered the extent to which Stoel Rives was willing to advance costs to the inmate class during the course of the litigation. Stoel Rives willingly accepted the Court's appointment on a pro bono basis, and although the Court paid for a portion of the litigation costs, the law firm incurred additional costs beyond those covered by the Pro Bono Program. Finally, the Court considered the indigent filing status of the class members in awarding the costs.

The Court has reviewed the costs that were incurred during the course of the litigation, and has determined that they are reasonable in light of the complexity of the litigation and duration of the appointment. Defendants object to Plaintiffs' request for costs because some were previously reimbursed through the Court's Pro Bono Program. Stoel Rives was informed when they were appointed as Plaintiffs' counsel that they could seek reimbursement for at least a portion of the costs they incurred in representing the inmate class. Therefore, to the extent these costs were paid from the Court's program,

ORDER 13

Stoel Rives must reimburse the program funds once they receive a cost award.

Based on the foregoing, Plaintiffs' request for costs will be awarded in the amount of $5,804.53. Plaintiffs' counsel is also directed to reimburse Barry Searcy for his out-of-pocket costs from the costs award.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Reconsideration (Docket No. 588, all parts therein) is DENIED. The population cap in Unit 9 is clarified as set forth above.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Attorney Fees and Costs (Docket No. 550) is GRANTED. Plaintiffs' counsel shall be awarded $150,054.15 in attorney fees and $5,804.53 in costs.

DATED this 9 day of December, 2005.

_____
JAMES M. FITZGERALD
Judge, United States District Court