IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WALTER D. BALLA, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CV81-1165-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| IDAHO BOARD OF CORRECTION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court are the following motions: (1) Plaintiffs' Motion for Temporary Restraining Order (Docket No. 604); (2) Plaintiffs' Motion for Preliminary Injunction (Docket No. 605); (3) Plaintiffs' Motion for Contempt and Sanctions (Docket No. 607); (4) Plaintiffs' Motion to Appoint Counsel (Docket No. 608); (5) Plaintiffs' Motion for Discovery (Docket No. 609); (6) Defendants' Motion to Strike (Docket No. 611); (7) Plaintiffs' Motion to Strike (Docket No. 616); (8) Plaintiffs' Motion to Amend or Correct (Docket No. 618); and (9) Plaintiffs' Motion for Class Representative Entitlements (Docket No. 629).

Plaintiffs are inmates at the Idaho State Correctional Institution (ISCI), and they allege that Defendants' shower repair project at ISCI violates the Court's Order of

**ORDER  1**

September 26, 2005.  For the following reasons, the Court does not view the Defendants' shower repair project as a violation of the injunctive orders, nor does the project appear to violate the inmates' Eighth Amendment rights.  Therefore, Plaintiffs' request for injunctive relief against Defendants is denied.

## BACKGROUND

Plaintiffs filed this motion on the basis that they are class representatives, obligated to protect the inmates at ISCI from violations of the Court's injunctive orders in *Balla II*.  In November of 2003, Defendants filed a motion seeking to terminate the long-standing injunctive relief ordered in *Balla v. Idaho State Board of Correction (Balla I)*, 595 F. Supp. 1558 (D. Idaho 1984), and *Balla v. Idaho State Board of Correction (Balla II)*, 656 F. Supp. 1108 (D. Idaho 1987) ("*Balla* cases").  The *Balla* cases were filed as class action challenges to prison conditions at ISCI, and at the time Defendants sought to terminate the injunctive relief, the injunction consisted of a population cap in certain ISCI units and an order pertaining to plumbing repairs.  *Id*. at 1119.

In the Court's ruling on the Defendants' Motion to Terminate the Injunctive Relief, it found that the number of toilets and sinks appeared to be adequate for Units 9, 10, 11, and 13, but that the toilets and sinks were not consistently in operating condition.  The Court also found that there were lengthy delays associated with repairing the sinks and toilets.  Based on the findings of the Court's expert, it also determined that the number of showers was deficient in Units 9, 10, 11, and 13, and that not all showerheads were in working order within the Units.  Therefore, the Court determined that the influx

**ORDER  2**

of additional inmates in these ISCI units put a considerable strain on the availability of regular showers for the inmates.  The Court's expert also reported that no substantive changes in the plumbing for these Units at ISCI had been made over the past eighteen years.  Therefore, the plumbing fixtures and pipes required even more frequent repairs. *Docket No. 585*., p. 12-13.

The Court denied Defendants' Motion to Terminate Injunctive Relief, thereby preserving the population cap at the ISCI units.  The Court also ordered that "Defendants attend to all plumbing disorders in the housing units within twenty-four (24) hours of oral or written report to the Idaho State Correctional Institution (ISCI) staff and that those plumbing disorders be remedied within three (3) working days from such report."  *Id*., p. 25.

## STANDARD FOR PRELIMINARY INJUNCTION

A Rule 65 preliminary injunction may be granted if the moving party satisfies one of two tests, designated as the "traditional standard" or the "alternative standard" of law. *International Jensen, Inc. v. Metrosound U.S.A., Inc*., 4 F.3d 819, 822 (9th Cir. 1993). The traditional standard requires a demonstration of the following elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2) that the moving party will probably prevail on the merits; (3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief.  *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).  Under the alternative standard, the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the

**ORDER  3**

merits and the possibility of irreparable injury,[1] or (2) that serious questions are raised and the balance of hardships tips sharply in the movant's favor. *Benda v. Grand Lodge of Internat'l. Ass'n. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S. Ct. 2065 (1979).

Where, as here, a party seeks a mandatory preliminary injunction, the court must deny such relief "unless the facts and law clearly favor the moving party." *See Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quotation and citation omitted); *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (because a preliminary injunction is an extraordinary remedy, it should not to be granted routinely, but only when the plaintiff, by a clear showing, carries its burden of persuasion on each of the required elements). In deciding whether to issue a preliminary injunction, the court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l. Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (citing *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

A court "is not obligated to hold a hearing [on a motion for a preliminary injunction] when the moving party has not presented a colorable factual basis to support

---

[1] An irreparable injury is defined as an actual and concrete harm, or the imminent threat of an actual and concrete harm. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). A threat of harm is not "imminent," if it is based upon remote possibilities or mere speculation. *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988).

**ORDER  4**

the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Board of Education,* 910 F.2d 1172, 1176 (3rd Cir. 1990); *see also DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 341 (5th Cir.1984) (preliminary injunctions are denied without a hearing when the written evidence clearly shows the lack of a right to relief).

## PLAINTIFFS' REQUESTED RELIEF

Plaintiffs assert that Defendants' shower repair project violates the *Balla II* injunctive orders and the Plaintiffs' Eighth Amendment rights.  Plaintiffs request that the Defendants be enjoined from housing any inmate on any tier unless the tier "has its plumbing fixtures operational 24 hours a day, and has its shower fixtures and facilities operational 24 hours a day."  They further request an order allowing inmates to have access to their cell and property 24 hours per day.  Finally, they request that Defendants submit a construction plan that proves "the shower project will be accomplished without violating the order, opinion, purpose, and spirit of the Balla II injunctions." *Plaintiffs' Motion for Preliminary Injunction*, Docket No. 605, p. 2.

Plaintiffs allege that Defendants posted notices at ISCI in January of 2006, notifying the inmates that ISCI officials were undertaking a shower construction project. The inmates were informed that during the shower construction in Unit 13, they would only have access to half of the unit's regular number of showers.  The shower construction project would also allegedly disrupt the use of all plumbing during the day on Monday through Friday for half of the Unit 13 inmates.  Plaintiffs also claimed that half of the inmates would be restricted from access to their cells and personal property

**ORDER  5**

during the construction.  Docket No. 606, p. 8-9.

Plaintiffs argue that the shower construction violates "the constitutionally minimal plumbing and shower ratios established by the *Balla II* injunctions."  *Id*., p. 9.  Plaintiffs allege that the number of inmates using the showers would essentially double during the time of the shower construction.  *Affidavit of Barry Searcy*, Docket No. 606-2, p. 4-6.  The construction plan for Unit 13 also provides that half of the inmates may use areas in other units.  Plaintiffs claim that this violates the IDOC's "normal policy of not allowing inmates to go on tiers they don't live on, and presents numerous crowding, safety and security issues."  *Id*., p. 6.  Plaintiffs also allege that there is an increased risk of violence and assaults through the implementation of the construction plan, and that some inmates will be denied access to personal property during the time construction is occurring.  *Id*.

The Deputy Warden of Operations issued a memo to the inmates at ISCI, stating that the inmates would be "allowed to shower in the gymnasium or on other tiers in the unit."  *Id*., Exhibit A.  The memo also states that IDOC officials will attempt to lessen the impact of the construction project on the offenders.  An email message from the Deputy Warden also indicates that some of the inmates in Unit 13 will lose their cell assignments in certain locations due to the expansion of the showers .  *Id*., Exhibit B.  The shower construction project was delayed on two occasions, and it appears that construction did not begin until January 30, 2006.  *Id*., Exhibit C, D.

Defendants filed a response to the Plaintiffs' request for a preliminary injunction, claiming that the shower construction project would have no impact on the inmates'

**ORDER  6**

access to urinals, toilets, sinks and water fountains in Unit 13. *Affidavit of Keith Yordy*, Docket No. 610-1, p. 4. Defendants also claim that inmates will be given the opportunity to have a daily shower during the construction process and that security concerns have been adequately addressed. *Id.*, p. 4-5.

Defendants were also requested to provide information to the Court regarding the length of time the construction project would disrupt the inmates in Units 9, 11, and 13. Defendants indicated that the shower construction for Unit 13 is now complete. *Affidavit of Patrick Donaldson*, Docket no. 626-3, p. 2. Defendants informed the Court that the shower renovation in one tier of Unit 9 and two tiers in Unit 11 was set to begin on May 8, 2006. This work is supposed to take six weeks to complete. Defendants also report that the next phase of construction, involving two more tiers on Unit 9 and one tier in Unit 11, will allegedly be completed at the end of July. *Id.*

Plaintiffs submitted affidavits in response to Defendants' description of the shower reconstruction. Plaintiffs allege that the shower renovation in Unit 13 is still not complete, despite the Defendants' affidavit claiming the project was complete in April of 2006. Plaintiffs claim that the new showers lack towel bars and shower curtains. Plaintiffs also claim that the renovation project on Unit 13 was extremely disruptive to the inmates incarcerated on those Units. Plaintiffs allege that plans were announced to move 234 inmates, and that this caused a "huge uproar" at ISCI. The Warden at ISCI allegedly abandoned the plan that would have displaced the inmates. *Plaintiffs' Response to Defendants' Supplemental Briefing*, Docket No. 628-1, p. 3-4.

**ORDER  7**

Plaintiffs also allege that some inmates have been forced to stay in the gym for several hours at a time, thus preventing them from obtaining sick call and receiving special medical meals. Some inmates have also allegedly missed meals because they were forced to spend time in the gym. *Id*., p. 5-6. Plaintiff Searcy alleges that these occurrences on Units 9 and 11 are consistent with similar events that occurred on Unit 13 during the shower renovation. *Affidavit of Barry Searcy*, Docket No. 628-2, p. 5. The Plaintiffs also allege that the construction has caused more inmates to temporarily be on tiers than are allowed under the population cap set forth in *Balla II*. *Plaintiffs' Response*, Docket No. 628-1, p. 7.

**DISCUSSION**

Plaintiffs argue that they have met their burden for a preliminary injunction against the Defendants, and that the balance of hardships tips in their favor. Plaintiffs also claim that there is a strong likelihood they will prevail on the merits of their claim. The Court does not agree with Plaintiffs' assessment of the Defendants' conduct, primarily because it does not view the shower construction project as a violation of the *Balla II* injunctive order. The Court's injunctive order required Defendants to attend to all plumbing disorders in the housing units within twenty-four (24) hours of oral or written report to the ISCI staff. The order also requires that those plumbing disorders be remedied within three (3) working days from such report. The injunctive order was based on the failure of IDOC officials to fix broken or malfunctioning plumbing at ISCI. The Court does not view the IDOC's attempt to add additional showers to ISCI units as the equivalent of

**ORDER 8**

failing to address broken or malfunctioning plumbing fixtures.  Therefore, the allegation that Defendants have violated the injunctive order in *Balla II* is not accurate.

Additionally, Plaintiffs general allegation that their Eighth Amendment rights have been violated because of the unavailability of showers during the construction project is not sufficient to support a separate injunctive relief request.  In support of this general allegation, Plaintiffs argue that the report from the Court's Rule 706 expert sets forth the constitutional minima for shower use, day room capacity, and other crowding issues at ISCI.  This is not accurate because the Rule 706 expert's report specifically states that the American Correctional Association (ACA) standards referred to in the report are not the constitutional standard, citing to *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982).  The Rule 706 expert used the ACA standards as a reference point in describing design capacity for cells, day rooms, and plumbing fixtures.  *See* Docket 585, Exhibit A, p. 8-9. Therefore, linking the shower construction to the standards described in the Rule 706 expert's report does not establish a violation of Plaintiffs' Eighth Amendment rights.

To demonstrate an Eighth Amendment violation, an inmate must show that conditions within the prison deny him "the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 114 S. Ct. 1970, 1977-78 (1994).  The Eighth Amendment guarantees an inmate's right to personal hygiene.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1110-11 (9th Cir. 1986).  The number of showers that an inmate takes can be limited so long as the limitation does not deny him the right to basic sanitation.  *Baptisto v. Ryan*, 2005 WL 2416356, *13 (D. Ariz.)(upholding

**ORDER  9**

constitutionality of providing three showers per week)(citing *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988)(stating that three showers per week is adequate during 90-day lock down)).

Plaintiffs' general allegation that the shower construction project has denied the inmates the opportunity to shower fails to state a cognizable constitutional claim.  The alleged denial of showers during the construction process must be linked to dangerous hygienic conditions resulting from the lack of showers.  There is nothing in the record establishing this linking.  Accordingly, the Plaintiffs' request for a mandatory preliminary injunction is not warranted because the facts and law do not clearly favor the moving party.  *See Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

**OTHER PENDING MOTIONS**

Plaintiffs also filed a motion requesting that they be allowed to file supplemental pleadings on behalf of the inmate class at ISCI.  It appears that Plaintiffs are requesting leave to file an amended complaint in this action which would include allegations of new constitutional violations.  A Judgment was entered in this action on December 9, 2005, and the Court retained limited jurisdiction to enforce the provisions of the permanent injunction.  *Docket No. 601*, p. 2.  The retention of jurisdiction in this action does not permit the expansion of the lawsuit by way of an amended complaint.  Accordingly, Plaintiffs' request for leave to file an amended complaint is denied.

Plaintiffs' motion made some troubling allegations about medically infirm inmates being denied medical care, medically prescribed meals, and access to their cells during

**ORDER  10**

the shower construction project. Plaintiff Searcy generally alleges the occurrence of these events in his affidavit, and if individual Plaintiffs believe they are being subjected to unsafe conditions at ISCI or are being denied adequate medical care, then they are advised to file individual civil rights complaints, raising these Eighth Amendment claims.

Defendants also filed a Motion to Strike portions of Plaintiff Searcy's Affidavit based on lack of personal knowledge and foundation. Affidavits submitted on a preliminary injunction motion are not subjected to the same strict standards (personal knowledge and competency to testify) as those submitted on a summary judgment motion, and they may contain hearsay. 11A Charles Alan Wright, Federal Practice and Procedure ¶ 2949 (2d ed. 1995); *see also Flynt Distributing Co. v. Harvey,* 734 F. 2d 1389, 1394 (9th Cir. 1984). Therefore, Defendants' Motion to Strike is denied.

Plaintiffs also request a finding of contempt and an award of sanctions against Defendants based on the shower construction project. Based on the Court's determination that the shower construction project is not a violation of the permanent injunction, the request for a finding of contempt and sanctions is denied.

Plaintiffs also filed a motion requesting that they be allowed to conduct discovery on the extent of the alleged civil rights violations that have occurred during the shower construction project. As set forth above, the individual inmates whose civil rights have allegedly been violated are advised to file individual claims arising out of the shower construction project. The Court will not allow Plaintiffs to conduct discovery on this issue in the class action.

**ORDER 11**

Finally, Plaintiffs claim that they are entitled to an appointment of counsel and other "entitlements" due to the class action designation of this lawsuit. The Court will not appoint an attorney to represent the inmate class at this time, and Plaintiffs' request for other entitlements is also denied.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Temporary Restraining Order (Docket No. 604, all parts therein) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction (Docket No. 605, all parts therein) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion for Contempt and Sanctions (Docket No. 607, all parts therein) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion to Appoint Counsel (Docket No. 608) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion for Discovery (Docket No. 609) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Strike (Docket No. 611) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion to Strike (Docket No. 616) is DENIED.

**ORDER  12**

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion to Amend the Complaint (Docket No. 618) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion for Class Representative Entitlements (Docket No. 629) is DENIED.

DATED: **June 28, 2006**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

**ORDER  13**