IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

WALTER D. BALLA, et. al.,       )
                                )
                    Plaintiffs, )       Case No. CV-81-1165-S-BLW
                                )
vs.                             )       **ORDER**
                                )
IDAHO BOARD OF CORRECTION,)
et al.,                         )
                                )
                    Defendants. )
_____)

A hearing on the pending motions in this case was held on December 10,

2007.  Present in Court were the following attorneys: Walter Sinclair of Stoel

Rives on behalf of the Plaintiffs' inmate class; and Michael Gilmore and Mark

Kubinski, Deputy Attorneys General, on behalf the Idaho Department of

Correction Defendants.  The Court heard oral argument on the following motions:

(1) Plaintiffs' Motion to Appoint Class Representatives (Docket No. 707); and (2)

Plaintiffs' Motion for Attorney Fees and Costs (Docket No. 714).  The Court also

considered two motions filed by individual inmates: Randall Davis' Motion and

Petition (Docket No. 711); and Allen Brandt's Request for Appearance  (Docket

No. 720).

Having reviewed the pending motions and the record in this action, the

**ORDER  1**

Court has determined that it will grant both Plaintiffs' Motion to Appoint Class
Representatives and the Motion for Attorney Fees for Plaintiffs' counsel.  Mr.
Davis' motion will be denied, and he may re-file his petition as a separate civil
rights complaint.   Mr. Brandt's request to be reinstated as a class representative is
denied, and he may file a separate civil rights lawsuit.

## BACKGROUND

On September 26, 2005, the Honorable James M. Fitzgerald issued an order,
denying the IDOC Defendants' Motion to Terminate the injunctive orders placing
a population cap at ISCI in Units 9, 10, 11 and 13 and requiring the repair of
persistent plumbing problems at ISCI (*Balla III*).  The Order denying the request to
terminate the population cap was based in part on the extensive findings by the
Court's Rule 706 expert, Chase Riveland.  Mr. Riveland's report provided the basis
for the Court's determination that there were current and ongoing constitutional
violations at ISCI, warranting the continued enforcement of the population cap and
plumbing repair order.  After the Court denied Defendants' Motion to Terminate
Prospective Relief, Judge Fitzgerald granted Plaintiffs' request for attorney fees
and costs in the amount of $155,858.68 because they had successfully defended the
existing injunction.

Approximately eighteen months after the Court denied the Defendants'

**ORDER  2**

Motion to Terminate Prospective Relief, the IDOC filed the same motion, requesting that the Court terminate the current court-ordered population cap, and allowing them to house 636 inmates in these previously capped units.  The addition of these extra inmates would raise the inmate population to 200% of the original design capacity for these units.  Defendants did not seek to terminate the injunctive orders which prohibited triple-celling of inmates and placing their mattresses on the floor.  *See Docket No. 635-2, p. 3.*

Plaintiffs filed a Motion to Postpone the automatic stay provided for in the PLRA, and issued an Order to Show Cause as to why the Court should not appoint Chase Riveland to conduct a further investigation of the prison conditions at ISCI. *Docket No. 689, p. 9.*  The Court issued a notice of intent to reappoint Stoel Rives, the attorneys who represented Plaintiffs in Defendants' first attempt to terminate the injunctive order.  The Court also issued notice of intent to order payments to Stoel Rives on a monthly basis.  *Id.*

On March 26, 2007, Defendants filed a "Notice of Partial Withdrawal of Motion to Terminate Prospective Relief."  *Docket No. 691.*  Defendants notified Plaintiffs that they only intended to seek termination of the population cap for Units 9 and 13, rather than all four units subject to the cap.  *Id.*, p. 2.  Stoel Rives filed a Notice of Appearance on April 5, 2007, along with a brief relating to their

**ORDER  3**

appointment as class counsel. *Docket No. 695.*

The Court held a status conference on April 6, 2007 at which Defendants'
counsel informed the Court that they would not pursue the Motion to Terminate.
The IDOC counsel indicated that they might re-file the motion within six to
eighteen months. On April 9, 2007, Defendants filed an official "Notice of
Withdrawal of Motion to Terminate Prospective Relief." *Docket No. 699.* The
Notice stated that the request to terminate the population cap was withdrawn in its
entirety.

On August 14, 2007, Defendants filed a supplement to the Notice of
Withdrawal of Motion to Terminate Prospective Relief "for the purpose of
advising the Court and the parties of their intent regarding this action." *Docket No.
704*, p. 2. Defendants stated that the Idaho Board of Correction had

> reassessed its goals and priorities in light of current
> circumstances. As a result of that process, the IDOC does not
> have any present intent to seek termination of the permanent
> injunctions in effect in this action. Nor does the IDOC intend
> within the foreseeable future to seek termination of the
> permanent injunction.

*Id.*, p. 2.

Plaintiffs' counsel filed a Motion to Appoint Class Representatives (Docket
No. 707) on September 6, 2007, and a Motion for Attorney Fees (Docket No. 714)
on October 22, 2007. Plaintiffs' counsel seeks the appointment of four inmates,

**ORDER  4**

Mr. Searcy (Unit 13), Mr. Glass (Unit 9), Mr. Ibarra (Unit 11), Mr. Slaughter (Unit 10), and Mr. Wood (Unit 10), as the new class representatives.  Barry Searcy was also a class representative in *Balla III*, the IDOC's prior attempt to terminate the population cap orders.  Plaintiffs argue that the inmates are unable to communicate with each other because they live in different units at ISCI, and they need to be able to provide information about the prison conditions in their respective units to their counsel.

Plaintiffs' counsel informed Defendants that they were interviewing potential class representatives at ISCI and that they had decided upon a list of candidates.  Plaintiffs' counsel prepared a stipulation for appointment of new class representatives, and sent it to Defendants' counsel, Jeremy Chou. in July of 2007.  Defendants' counsel then informed Plaintiffs' counsel that they were going to inform the Court of their intention not to re-file the motion to terminate the injunctive relief.  *Docket No. 712-2*, p. 3-4.  Defendants subsequently filed the notice with the Court in August of 2007.

Defendants argue that it is no longer necessary to appoint new class representatives because they have withdrawn their Motion to Terminate the population caps at ISCI.  Defendants also argue that appointing class representatives based on their current housing assignments in the capped Units at

**ORDER  5**

ISCI could change between now and the time Defendants may seek termination of the population caps.  They argue that appointing new class representatives prior to the actual filing of a motion to terminate would only set the stage for another motion to appoint class representatives, in the event the class representatives are transferred to other units.  Defendants allege that Mr. Glass and Mr. Ibarra are eligible for parole in 2008, and therefore, these inmates may only be able to serve as class representatives for a short duration.

At oral argument, Plaintiffs' counsel argued that appointment of the class representatives facilitates consultation with the inmates about prison conditions arising from the alleged overcrowding, and counsel is then in a position to advise the inmates about claims that have no merit, thereby reducing the number of individual claims that may arise from the alleged overcrowding conditions.

Plaintiffs' counsel also filed a Motion for Attorney Fees and Costs. Plaintiffs' counsel requested $18, 322.60 in attorney fees for representing the inmate class through October 18, 2007.  *See Docket No. 714-3, Affidavit of J. Walter Sinclair and Exhibits A, B, and C, thereto*.  Exhibit A contains a billing summary of time spent on representing the inmate class from the time Stoel Rives was reappointed in March of 2007.

Defendants appear to have conceded the reasonableness of the attorney fees

**ORDER  6**

billed up through April 9, 2007, the date Defendants withdrew the Motion to Terminate Prospective Relief.  *Docket No. 718*, p. 2.  They agree that Plaintiffs are entitled to attorney fees in the amount of $4,341.05, which represents the fees billed from March 16, 2007 to April 9, 2007.  *Id*., p. 3.  They argue that billing fees beyond this date is unreasonable and that any fees incurred thereafter should be denied or reduced.   As part of Defendants' response to the attorney fees motion, they submitted an affidavit from IDOC Director Brent Reinke in which he discusses the various mechanisms the IDOC is using in order to accommodate the current inmate population.  *Docket No. 718-2*, p. 2.  Director Reinke states that "the IDOC does not intend in the foreseeable future to seek termination of the 1987 injunction involving population caps in Units 9, 10, 11, and 13" at ISCI.  *Id*.  The Director states that "it is my intention to continue to direct the IDOC's resources toward other means of alleviating the prison population problem."  *Id*., p. 5.  He indicates that he will direct the IDOC's counsel to give Plaintiffs at least thirty days notice prior to the filing of another motion to terminate the population caps at ISCI.  *Id*., p. 5-6.

## MOTION TO APPOINT CLASS REPRESENTATIVES

Despite the Defendants' complete withdrawal of the Motion to Terminate Prospective Relief, the Court has determined that appointment of new class

**ORDER  7**

representatives is necessary.  IDOC Director Reinke has indicated that there is no

present intention to re-file a motion to terminate the injunctive orders placing a

population cap in Units 9, 10, 11 and 13 and requiring plumbing repairs in these

units at ISCI.  But the Director was not willing to rule out the possible re-filing of a

motion to terminate the *Balla III* injunctive orders.  It is obvious that naming class

representatives and appointing counsel for the inmate class after the motion to

terminate is re-filed is inefficient and unworkable, given the short time within

which the Court is required to rule on a motion to terminate injunctive relief.  In 18

U.S.C. § 3626, the procedures for filing a motion to terminate prospective relief

under the PLRA are set forth.  It states that "[a]ny motion to modify or terminate

prospective relief made under subsection (b) shall operate as a stay during the

period– (A)(I) beginning on the 30th day after such motion is filed. . . . The court

may postpone the effective date of an automatic stay specified in subsection

(e)(2)(A) for not more than 60 days for good cause."  18 U.S.C. § 3626 (e)

(2)(A)(I) and (e)(3).   Therefore, by the time the Court is made aware of the re-

filing of the motion, there is a narrow window of time in which the class

representatives can meet with their counsel and respond to the motion.  It is also

important for the class representatives to have access to counsel in order to report

on alleged violations of the *Balla III* injunctive orders.  If the class representatives

**ORDER  8**

are not in place to serve as the conduit for inmate complaints about the injunctive orders, the attorneys are bombarded by an overwhelming number of inmate complaints.

Plaintiffs submitted Affidavits from three inmates at ISCI, stating that they believe there is a present intention to seek termination of the population cap.  In support of this argument, Plaintiff Barry Searcy states that the IDOC has failed to remove the second bunk and locker from the single cells in his unit.  *Docket No. 721-2*, p. 3-4.  He also states that the visiting hours are being reduced, the school and library are being closed in the evening hours, and the laundry swing shift is being eliminated.  Mr. Searcy also indicates that the amount of time inmates are allowed to spend on the ball field and in the gym are being reduced.  *Id*., p. 5.

Inmate Dennis Slaughter filed an affidavit stating that medically prescribed diets are not being provided to inmates and access to medical care is being delayed "up to months at a time."  *Docket No. 721-3*, p. 2.  He also states that the pill call policy forces inmates to stand in long lines of up to 150 inmates for up to an hour at a time.  *Id*.  Inmate Franklin Johnson also submitted an affidavit, stating that he had been denied adequate medical for colon cancer.  He claims that the significant delays in providing medical care caused him further injury and untreated pain.  *Docket No. 721-4*, p. 2-3.  It appears that the alleged inadequate medical care

**ORDER  9**

scenarios arise from the additional inmates added to ISCI as a whole, rather than conditions arising specifically in Units 9, 10, 11, and 13.

While the Affidavits from Inmates Searcy, Slaughter, and Johnson make compelling arguments, their allegations are not within the relief provided in the *Balla III* orders. The permanent injunction places a population cap on four units at ISCI, and it also provides for ongoing attention to plumbing repairs on these units. There are presently no class-wide injunctive orders relating to the provision of medical diets and adequate medical care because years ago, a remedial plan was accepted to address these issues. Therefore, it appears that the Court may be restricted in terms of what it can address within the parameters of the *Balla III* injunction. Presently, the recourse for inmates at ISCI is to file individual civil rights claims pertaining to the alleged constitutional violations occurring at ISCI.[1]

As the parties are no doubt aware, Congress enacted the PLRA as a way to limit the type and duration of injunctions the federal courts can order for prison condition claims. 18 U.S.C. § 3626 (a)(2) states that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds . . . , and be the least intrusive means necessary to correct that

---

[1] The Court is aware that the number of civil filings from inmates in IDOC facilities has increased by almost 50 % during 2007. Although it is difficult to directly attribute the increased filings to prison conditions arising from overcrowding of inmates, it may be a statistic the IDOC will find noteworthy.

**ORDER  10**

harm."  The PLRA also states that injunctive relief "shall be terminable upon the motion of any party . . . (i) 2 years after the date the court granted or approved the prospective relief; or (ii) 1 year after the date the court has entered an order denying termination of prospective relief."  18 U.S.C. § 3626 (b)(1).  Therefore, the PLRA specifically provides for the type of motion to terminate prospective relief that Defendants filed eighteen months after the *Balla III* orders were entered.

Based on the foregoing, the Court has determined that it provides efficiency and constancy to reappoint class representatives, despite the IDOC's decision not to attempt termination of the population cap in the foreseeable future. Therefore, the Court will appoint the four new class representatives requested by Stoel Rives. *See Gluth v. Kangas*, 951 F.2d 1504, 1509 (9th Cir. 1991)(district court properly added three new class representatives because turnover of named class representatives is high due to frequent transfers or releases); *Benjamin v. Fraser*, 343 F.3d 35, 41 (2d Cir. 2003)(pre-trial detainees in correctional facility opposed the termination of injunctive orders resulting from a class action filed by a different group of pre-trial detainees in 1975 and demonstrated continuing constitutional violations which warranted the continuation of injunctive orders).

The proposed class representatives have adequately alleged the existence of current, ongoing constitutional violations, affecting them personally and on behalf

**ORDER  11**

of the inmates at ISCI. *See* Fed. R. Civ. Proc. 23(a)(4)(person representing the class must be able "fairly and adequately to protect the interests" of all members in the class); *United States Parole Commission v. Geraghty*, 445 U.S. 388, 403 (1980)(an action brought on behalf of a class does not become moot upon the expiration of the class representatives' substantive claim). The existence of injunctive orders which were maintained after the IDOC's Motion to Terminate Prospective Relief in *Balla III* gives rise to an inference that the orders were designed to provide current protection for the inmate class at ISCI.

The following class representatives will be appointed to replace the class representatives who were named in the *Balla III* portion of the case: (1) Jimmy Glass, (2) Jesse Ibarra, (3) Dennis Slaughter; and (4) Lance Wood. Barry Searcy will continue to act as a class representative in this action.

The IDOC Director has also indicated that he would direct his counsel to provide thirty days notice in the event the motion to terminate the injunctive order is re-filed. Therefore, the Court will order that IDOC counsel provide thirty days written notice to Plaintiffs' counsel in the event they decide to re-file the motion to terminate the *Balla III* injunctive orders.

## MOTION FOR ATTORNEY FEES

When the Court reappointed Stoel Rives to represent the inmate class in this

**ORDER  12**

action, it also issued an order to show cause on the payment of attorney fees and costs on a monthly basis to Plaintiffs' counsel.  Because the *Balla III* injunctive orders arise from a class action lawsuit, the Court must appoint counsel to represent the interests of the class members because the inmates cannot proceed pro se.  Therefore, Defendants were immediately put on notice that there was a potential for attorney fees and costs to be incurred by the inmate class and that the Court intended to pay the attorneys on a monthly basis.  *See Webb v. Ada County*, 285 F.3d 829, 834-35 (9th Cir. 2002)(holding that post-judgment fees incurred in enforcing existing injunctive orders was compensable without necessity of proving a new constitutional violation); *Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002)(approving fees for defending against a motion to terminate because "the class's effort to prolong the efficacy of the remedial decree was time spent 'enforcing' that decree under the statute.").

Defendants argue that it would be unreasonable to award all of the attorney fees Plaintiffs' counsel have requested because the IDOC withdrew the Motion to Terminate on April 9, 2007.  This ignores the statements made during the status conference, indicating that the motion to terminate could be re-filed between six to eighteen months.  The record also shows that Plaintiffs' counsel were attempting to arrive at an agreement with the IDOC Defendants to name the new class

**ORDER  13**

representatives up until at least three months after the status conference.  It appears

that the IDOC Defendants were still considering re-filing the motion to terminate

because in August of 2007, another Notice of Withdrawal of Motion to Terminate

Prospective Relief was filed.  This new Notice informed Plaintiffs' counsel and the

Court that there was no intention to seek termination of the permanent injunction

"within the foreseeable future."  *Docket No. 704*, p. 2.

Additionally, in response to Plaintiffs' Motion for Attorney Fees, IDOC

Director Reinke explained the manner in which the agency was attempting to

manage the burgeoning prison population.  Director Reinke outlined  eight

different tactics the IDOC was implementing to address the prison population

issues without resorting to a termination of the population caps in the ISCI units.

Director Reinke's Affidavit was filed on November 16, 2007.  Therefore, it has

only become clear to the Court through these most recent filings that the IDOC

intends to abandon its attempt to terminate the *Balla III* injunctive orders and make

a good faith effort to pursue other means for addressing the inmate crowding

issues.

In *Dannenberg v. Valadez*, 338 F.3d 1070, 1075 (9th Cir. 2003), the Ninth

Circuit Court of Appeals held that "fees incurred to obtain injunctive relief,

whether or not monetary relief was also obtained as a result of those fees, are not

**ORDER  14**

limited by [42 U.S.C. § 1997e(d)(2)]."  Therefore, the full amount of attorney fees

incurred to obtain injunctive relief may be awarded when the Plaintiffs prevail.

The *Dannenberg* opinion also states that "'the most critical factor' in determining

the reasonableness of a fee award' is the degree of success obtained.'" *Id*. at 1075

(quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  District courts have great

discretion in assessing the reasonableness of attorney fees, and the court "must

exercise its discretion with an eye toward 'the relationship between the extent of

success and the amount of the fee award.'" *Id*. (quoting *Farrar*, 506 U.S. at 115-

16.)

In the circumstances giving rise to *Balla III*. the inmates were placed in the

position of defending against the termination of the prior injunctive relief orders

within eighteen months of their successful opposition to the termination of the

population caps at ISCI.  When the IDOC withdrew the Motion to Terminate

Prospective Relief, the prior injunctive orders were preserved, and, therefore, the

attorney fees were "directly and reasonably incurred in enforcing the relief

ordered" in the prior permanent injunction.  42 U.S.C. § 1997e(d) (1)(B)(ii); *see

also Cody v. Hillard*, 304 F.3d at 777 (holding that "the inmate class's effort to

prolong the efficacy of the remedial decree was time spent 'enforcing' that decree,"

and is fully compensable); *Webb v. Ada County*, 285 F.3d at 835 (holding that

**ORDER  15**

district court correctly awarded attorney fees for post-judgment work in enforcing and monitoring the court's prior judgment).

The PLRA caps the hourly rate for attorney fees at no "greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). The current hourly fee rate for court-appointed counsel is $113.00 per hour. Therefore, the PLRA fee cap for attorney fees in this case would be $169.50. *See Webb v. Ada County*, 285 F.3d at 839 (the PLRA provides for the payment of the established rate for court-appointed counsel). "The starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate." *Gates v. Deukmejian*, 987 F.2d 1392, 1297 (9th Cir. 1992)(citations omitted). The attorney fees request must properly document the time spent on the plaintiff's claims. *Id*. "The party opposing the fee application carries the burden of rebuttal" . . . [which] "requires submission of evidence challenging the accuracy and reasonableness of hours charged, or factual assertions made in affidavits submitted by the prevailing party." *Lozeau v. Lake County, Montana*, 98 F. Supp. 2d 1157, 1169 (D. Montana 2000).

Plaintiffs request an award of the following fees billed under the PLRA cap:

| Stoel Rives Staff | Hours | Rate | Total |
|---|---|---|---|

**ORDER  16**

| | | | |
|---|---|---|---|
| J. Walter Sinclair/partner | 22 | $169.50 | $3,729.00 |
| Bradley J. Dixon/associate | 28.2 | $169.50 | $4,799.90 |
| Samia McCall/associate | 10.6 | $169.50 | $1, 796.70 |
| Jason Prince/associate | 44.4 | $160.00 | $7, 104.00 |
| Emily Strong/case assistant | 26.1 | $ 35.00 | $   913.00 |
| | **Total:** | | **$ 18, 322.60** |

Defendants object to the total fees billed, arguing that it was unnecessary to staff the case with three associates and a case assistant.  They also question why four attorneys continued to work on the case after the Defendants withdrew the Motion to Terminate in April of 2007.  *Docket No. 718*, *p. 9.*  Defendants also object to time entries from attorney Brad Dixon totaling $575.00, relating to a lawsuit Barry Searcy filed in Ada County.

The Court has reviewed the time entries submitted by Plaintiffs' counsel, and the amount of time spent on defending the inmate class appears reasonable, with the exception of one category.  The Court will disallow fees in the amount of $575.00 billed by Bradley Dixon for a lawsuit Barry Searcy filed in Ada County. These fees appear unrelated to representation of the inmate class.

Based on the foregoing, the Court will order the IDOC Defendants to pay the attorney fees incurred by Stoel Rives in the amount of $17, 747.60.  The IDOC Defendants shall also pay the additional fees Plaintiffs incurred for filing a reply brief to the Motion for Attorney Fees and for Mr. Sinclair's appearance at the oral

**ORDER  17**

argument on the pending motions.  Stoel Rives shall filed a supplemental affidavit,

including this category of fees in the total amount requested.  The issues on which

Plaintiffs' counsel worked are "inextricably intertwined with those on which the

plaintiff[s] prevailed" in the Defendants' first Motion to Terminate Prospective

Relief.  *See Cody v. Hillard*, 304 F.3d at 772.  Accordingly, Plaintiffs' counsel are

entitled to an award of attorney fees for their successful representation of Plaintiffs

on Defendants' second Motion to Terminate Prospective Relief.

**Costs Award**

Plaintiffs seek a costs award of $486.06.   Federal Rule of Civil Procedure

54(d) provides, in pertinent part, as follows:

> Except when express provision therefor is made either in
> a statute of the United States or in these rules, costs other
> than attorneys' fees shall be allowed *as of course* to the
> prevailing party unless the court otherwise directs; but
> costs against the United States, its officers, and agencies
> shall be imposed only to the extent permitted by law.
> Such costs may be taxed by the clerk on one day's notice.
> On motion served within 5 days thereafter, the action of
> the clerk may be reviewed by the court. (emphasis
> added.)

In exercising its discretion under Rule 54(d) regarding whether to award

costs in civil rights cases, a district court "should consider the financial resources

of the plaintiff and the amount of costs."  *Stanley v. University of Southern*

**ORDER  18**

*California*, 178 F.3d 1069, 1079 (9th Cir. 1999) (internal citations omitted). Accordingly, the district court may consider the indigency of a party as a factor in awarding costs. *Id.* (internal citations omitted).

The Court has reviewed the Plaintiffs' costs request and has determined that the expenditures were reasonable. Therefore, Plaintiffs' counsel will also be awarded the costs incurred in representing the inmate class. To the extent Barry Searcy incurred out-of-pocket costs for responding to the motion prior to appointment of counsel, the IDOC shall also pay those costs to Mr. Searcy.

## OTHER PENDING MOTIONS

In the Court's previous Order, the inmate Plaintiffs were directed to file motions and affidavits only through their appointed counsel, Stoel Rives. Two inmates, Randall Davis and Allen Brandt, filed their own motions, requesting relief. Mr. Davis' motion appears to raise issues outside the parameters of the *Balla III* injunctive order, and therefore, Mr. Davis will be directed to pursue the issues in his Motion as a separate civil rights complaint after he has exhausted the prison grievance system.

Mr. Brandt's Motion sets forth his objection to being excluded as a possible class representative. He served as a class representative in the *Balla II* portion of the case, until the time he was released from prison. Mr. Brandt was recently

**ORDER  19**

transferred to Oklahoma, and he asserts that the transfer was retaliatory in nature. In the event Mr. Brandt decides to pursue a retaliation claim against the IDOC, then he must do so in a separate civil rights lawsuit after he has exhausted the prison grievance system.  The Court will deny Mr. Brandt's request to be named as a class representative.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Appoint Class Representatives (Docket No. 707) is GRANTED as set forth above.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion for Attorney Fees and Costs (Docket No. 714) is GRANTED as set forth above.  The IDOC Defendants shall pay the attorney fees incurred by Stoel Rives in the amount of $17, 747.60, plus the additional amount indicated above.  Costs in the amount of $486.06 shall also be awarded.  Payment of these amounts shall be within thirty (30) days of this Order's date.   The Court's Order to Show Cause as to why attorney fees should not be paid on a monthly basis to Stoel Rives is withdrawn without prejudice to Plaintiffs' counsel reopening the request.

IT IS FURTHER HEREBY ORDERED that Randall Davis' Motion and Petition (Docket No. 711) is DENIED; and Allen Brandt's Request for Appearance (Docket No. 720) is DENIED.

**ORDER  20**

IT IS FURTHER HEREBY ORDERED that Defendants' counsel shall provide thirty (30) days advance notice to Plaintiffs in the event they decide to re-file the motion to terminate the permanent injunctive relief.  The notice shall also be sent to the Pro Se Unit at the Court.

DATED:  **December 18, 2007**



B. LYNN WINMILL
Chief Judge
United States District Court

**ORDER  21**