IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WALTER D. BALLA, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CV81-1165-S-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| IDAHO BOARD OF | ) | |
| CORRECTION,  et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Plaintiffs' Motion for Clarification of the

Court's Order of December 18, 2007.  (Docket No. 729.)  The Court previously

issued a Notice of Tentative Ruling and Proposed Order, indicating that it intended

to grant Plaintiffs' Motion, and clarifying that Plaintiffs are entitled to pursue

contempt motions for Defendants' failure to comply with remedial plans that were

previously ordered in this action.  (Docket No. 734.)  The parties have since

responded to the Court's Tentative Ruling by filing written submissions, and the

Court is now prepared to enter its final ruling.

For the reasons that follow, the Plaintiffs' Motion for Clarification shall be

**MEMORANDUM DECISION AND ORDER - 1**

granted.[1]

# BACKGROUND

## History of the Injunctive Orders

### 1.    *Balla I*

The *Balla* cases were filed as class action challenges to prison conditions at the Idaho State Correctional Institution (ISCI).  In *Balla I,* the Court ordered prison officials to do the following: (1) adopt a special dietary program for medically infirm inmates; (2) provide adequate clothing for inmates in protective custody; (3) create 24-hour emergency medical care for inmates and hire a full-time physician; (4) provide a properly staffed medical delivery system; (5) establish a psychiatric care program; (6) provide adequate security staff for double-celled units; (7) report to the Court on the IDOC's progress; (8) establish an inmate classification system to protect younger offenders; and (9) implement a disciplinary procedure insuring due process protection.  *Balla v. Idaho State Board of Correction*, 595 F. Supp. 1558, 1583 (D. Idaho 1984)(*Balla I*).  The Court also ordered Defendants to submit compliance plans to the Court, outlining how the IDOC would accomplish the Court's Order.  *Id.*

---

[1]  This Memorandum Decision and Order functions as the official ruling of the Court, superseding the December 4, 2008 Notice of Tentative Ruling and Proposed Order (Docket No. 734).

**MEMORANDUM DECISION AND ORDER - 2**

On July 11, 1985, the Court approved the compliance plans submitted in response to the *Balla I* Order.  The Court adopted the following compliance plans: (1) a dietary program; (2) a plan for adequate clothing for protective custody inmates; (3) a medical delivery system plan; (4) a program for psychiatric treatment; (5) implementation of security staffing for double-celled units; (6) a plan to reduce predatory attacks in protective custody units; (7) a classification procedure to protect younger offenders; and (8) a disciplinary offense procedure in compliance with due process standards.  (Docket No. 525, Exhibit A.)  IDOC officials were ordered to fully implement the compliance plans by October 1, 1985.

During compliance hearings, the Court also became persuaded that "a full determination needed to be made regarding the overall overcrowded conditions at ISCI."  *Balla II*, 656 F. Supp. at 1110.  "Of particular concern to [the] Court was the historical failure in the operation of ISCI to meet constitutional minima in the housing of high-security and close custody inmates."  *Id.* at 1109.

Plaintiffs filed a Motion for Contempt in October 1985, alleging that Defendants had failed to comply with the plan implementing psychiatric care. After a two-day hearing, in an Order dated August 16, 1986, the Court ruled that Defendants were not violating the remedial plan.  (Docket No. 223, p. 4.)

**MEMORANDUM DECISION AND ORDER - 3**

Plaintiffs were informed that the Court would not make a re-determination of whether the psychiatric care plan satisfied the Eighth Amendment constitutional minima.  (Docket No. 223, p. 6.)

> The Court also clarified the remaining issues in the action:
>
> The plaintiffs have not challenged . . . the implementation of any programs or policies ordered and adopted in the July 11, 1985 order, except the psychiatric care program.  Therefore, the court will herein order that all issues except the overcrowding issue have been raised, decided, ordered, remedied and the remedial measures completed, and therefore, closed in this action.  The only issue which remains to be decided and will hereafter be litigated in this action is the issue of overcrowding.
>
> . . .
>
> IT IS FURTHER ORDERED that all issues which have been heretofore raised in this action, except the issue of overcrowding, should be, and are hereby, closed and will not be re-litigated in this action.

(Docket No. 223, p. 6-7.)

### 2.    *Balla II*

The Court conducted a hearing on the overcrowding issue on October 31, and November 1, 1985.  At the close of the hearing, both parties agreed to the appointment of a court-appointed expert.  The Court appointed W. Raymond Nelson as its expert.  Mr. Nelson toured ISCI in January of 1987, and submitted a report to the Court in February of 1987.  The Court and its staff also toured the ISCI facility.

**MEMORANDUM DECISION AND ORDER - 4**

Another hearing was held, at which the parties had an opportunity to question Mr. Nelson about his report.  On March 25, 1987, the Court entered its Findings of Fact and Conclusions of Law, and ordered injunctive relief for Plaintiffs, capping the population in certain units at ISCI (*Balla II*).  *See Id.* 656 F.Supp. at 1119.  The injunctive relief was based on the Eighth Amendment standards as they pertained to "specific conditions of confinement."  *Id*. at 1111 (quoting *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981)).  The Court was aware that it could "not use the totality of all conditions to justify federal intervention requiring remedies more extensive than are required to correct Eighth Amendment violations."  *Id*.

The Court made extensive findings in support of the population cap order. The main theme of the findings was that housing inmates in an overcrowded condition "threatens the physical, mental and emotional health and certainly threatens their personal and property safety.  Such conditions are dehumanizing, intolerable and certainly of no penological benefit."  *Balla II*, 656 F. Supp. at 1114.  A permanent injunction was issued against the IDOC, consisting of a population cap in certain ISCI units and an order pertaining to plumbing repairs.  *Id*. at 1119.

The Court incorporated the terms of the *Balla I* Order of November 1984,

**MEMORANDUM DECISION AND ORDER - 5**

into the *Balla II* Order of March 1987. *Id*. at 1116. Defendants were "enjoined from engaging in any reclassification inconsistent with this court's November 1, 1984 opinion, or in any other vehicle, scheme or mechanism designed to undermine the spirit and letter of this opinion and order." *Id*. at 1119. The Court also wrote:

> [w]hile the clerk will cause this action to be closed, plaintiffs will retain the right and opportunity to petition this court to reopen this matter in the event the terms of the permanent injunction are violated. Violation of the terms of this injunction may be deemed a contempt of court. This court will not hesitate to invoke its broad power to impose punishment for contempt of court and to take any other action necessary to deter similar conduct in the future.

*Id*.

### 3.    The Appeal

Plaintiffs filed an appeal of Judge Ryan's August 1986 ruling on the contempt motion for the psychiatric care compliance plan. The Ninth Circuit Court of Appeals held, in pertinent part, that the District Court was correct in evaluating Defendants' compliance under the July 11, 1985 Order, in which Defendants' remedial plans were adopted, rather than the November 1984 opinion, which was not sufficiently specific. *Balla v. Idaho State Board of Corrections*, 869 F.2d 461 (9th Cir. 1989). The Court of Appeals also held that the District Court did not abuse its discretion in denying Plaintiffs' Motion for Contempt. *Id*. at 465-66. The

**MEMORANDUM DECISION AND ORDER - 6**

Ninth Circuit wrote that "[i]t is well settled that a 'contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Id*. at 465.

### 4.     Motion to Reopen

In August of 1990, the Court heard Plaintiffs' Motion to Reopen Cases, Motion for Enforcement of Orders, and Motion for Finding of Contempt.  (Docket No. 317.)  After characterizing the motions as an "order to show cause why defendants should not be held in contempt for violating" the Orders in *Balla I* and *Balla II*, the Court denied them.   *Id*. at 1.

### Recent History and *Balla III*

In November of 2003, Defendants filed a motion seeking to terminate the injunctive relief ordered in *Balla I* and *Balla II*.  The motion was filed pursuant to the procedure set forth in the Prison Litigation Reform Act (PLRA), 18 U.S.C.A. § 3626 (b)(1) and (2).  (Docket No. 439.)  The Court appointed the law firm of Stoel Rives to represent the inmate class.  (Docket No. 459.)

Plaintiffs' counsel designated new class representatives and began sending discovery requests to Defendants.  The discovery requests were designed to glean information about all of the orders set forth in *Balla I* and *Balla II* because Defendants were seeking termination of all injunctive orders in the case.

**MEMORANDUM DECISION AND ORDER - 7**

Defendants filed a Motion for Protective Order, requesting that discovery be limited to the issues of the population cap and plumbing repairs, arguing that they had mistakenly sought termination of injunctive orders in both *Balla I* and *Balla II*. Judge Lodge interpreted Defendants' Motion for Protective Order as a request to narrow the Motion to Terminate Prospective Relief, and Plaintiffs were asked to withdraw the discovery requests beyond those related to the population cap and plumbing repair orders in *Balla II*.  (Docket No. 543.)  In making his ruling, Judge Lodge noted that "the only injunctive orders sought to be terminated are those relating to overcrowding and population caps on units at ISCI."  (Docket No. 543, pp. 6-7.)

In September of 2005, Judge James Fitzgerald denied Defendants' Motion to Terminate Prospective Relief and ordered that the population cap for ISCI and the plumbing repair orders remain in place.  (Docket No. 585 (*Balla III*).)  Relying upon an expert's report, Judge Fitzgerald stated that

> Seventeen years after the injunctive orders in *Balla II*, Defendants return to Court, requesting relief under conditions that are worse, both as to overall inmate population and plumbing problems, than when the original injunctive orders were put in place.

*Balla III* at 18-19.

Within two years, Defendants filed a second Motion to Terminate

**MEMORANDUM DECISION AND ORDER - 8**

Prospective Relief, which was ultimately withdrawn in April of 2007.  (Docket Nos. 635, 691, 699.)  By then, the case had been reassigned to Chief Judge Winmill, who issued an Order granting Plaintiffs' Motion to Appoint Class Counsel and Motion for Attorneys Fees and Costs.  In that Order, the Court noted that in its opinion *Balla I* did not provide ongoing class-wide injunctive relief on issues relating to prison conditions such as adequate medical care and food, "because years ago, a remedial plan was accepted to address these issues." (Docket No. 724, p. 10.)  The Court indicated that "it appears that the Court may be restricted in terms of what it can address within the parameters of the *Balla III* injunction."  *Id*.

This passage regarding the continued viability of *Balla I* relief prompted Plaintiffs to file the pending Motion for Clarification, in which they seek confirmation that *Balla I* injunctive relief is in fact ongoing and that they have the ability to enforce it through contempt proceedings.

## DISCUSSION

The issue before the Court is whether Judge Ryan's Order incorporating the findings, conclusions, and orders from *Balla I* into *Balla II* allows Plaintiffs to file contempt motions on the issues resolved through the adoption of compliance plans

**MEMORANDUM DECISION AND ORDER - 9**

to remediate constitutional violations at ISCI.

Plaintiffs argue that Defendants' compliance plans were adopted to remedy the *Balla I* violations, creating injunctive relief that has never been terminated. According to Plaintiffs, when Judge Ryan indicated in his August 1986 Order that "all issues heretofore raised in this action, except the issue of overcrowding, should be, and are hereby, closed and will not be re-litigated in this action," he was making a distinction between relitigating whether the compliance plans were themselves adequate, which would be prohibited, and litigating whether the Defendants had failed *to comply* with the terms of the plans, which would be allowed.  As proof, Plaintiffs point to the Judge Ryan's Order in 1990 in which he denied Plaintiffs' requests to hold Defendants in contempt, without indicating in any fashion that *Balla I* injunctive relief no longer existed.

Conversely, Defendants take the position that once the compliance plans had been developed and submitted, Judge Ryan was satisfied that all constitutional violations, except the issue of overcrowding, had been remedied.  According to Defendants, Judge Ryan closed all *Balla I* issues to future litigation in his August 1986 Order.  Defendants further argue that Judge Ryan's incorporation of *Balla I* into the *Balla II* Order did not create a valid injunction under Rule 65 of the Federal Rules of Civil Procedure because it lacked sufficient specificity.

**MEMORANDUM DECISION AND ORDER - 10**

The resolution of this issue lies in the Ninth Circuit Court of Appeals' 1989 decision on appeal. *Balla v. Idaho State Board of Correction*, 869 F.2d 461, 465 (9th Cir. 1989).  Plaintiffs had filed a contempt action against Defendants, alleging that IDOC officials had failed to comply with the Court's order to implement a constitutionally adequate psychiatric care plan.  The Ninth Circuit held that "the district court properly measured compliance against its July 11, 1985 order, which approved and incorporated concrete plans for compliance with the November 1, 1984 opinion." *Id.* at 464.  In affirming the District Court's decision not to relitigate the adequacy of the plans, the Ninth Circuit noted that "'a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.'" *Id.* (quoting *United States v. Rylander*, 460 U.S. 752, 756 (1983)).

In other words, the Ninth Circuit necessarily determined that while the adequacy of the remedial plans cannot be relitigated, the District Court's adoption of the plans created an order that was specific and definite enough to be enforced through contempt proceedings.  This is consistent with Plaintiffs' reading of Judge Ryan's August 1986 Order, in which he "closed" to relitigation whether the remedial plans satisfied constitutional minima, but did not foreclose the possibility of future contempt motions to enforce compliance with the terms of the plans.

**MEMORANDUM DECISION AND ORDER - 11**

Judge Ryan's 1990 Order denying Plaintiffs' new contempt motion further supports this view.  It makes little sense for the Court to adopt plans as a remedial measure and then to absolve Defendants of complying with the terms of those plans after a date certain, as Defendants seem to suggest.

Nor is the Court persuaded by Defendants' new argument that incorporation of the findings and conclusions from *Balla I* into *Balla II* rendered any attempt at ordering injunctive relief invalid under Rule 65 of the Federal Rules of Civil Procedure.  While it is true that Rule 65(d)(1)(C) requires every injunction to "describe in reasonable detail–and not by referring to the complaint or other document–the act or acts restrained or required," the Ninth Circuit has held that incorporation may be permissible if the primary purpose of the Rule–to provide adequate notice to a party facing possible contempt–has been satisfied.  *Davis v. San Francisco*, 890 F.2d 1438, 1450 (9th Cir. 1989).  Here, Defendants drafted the plans that would govern their own actions, satisfying the notice requirement.  *See Davis*, 890 F.2d at 1450 ("[t]he document incorporated into the 1988 injunction consisted of fire department rules already binding upon the officers of the SFFD. It is unlikely the officers could argue they were unaware of these rules").

Nevertheless, the Court recognizes that practical considerations may now make enforcement extremely difficult.  Circumstances appear to have changed

**MEMORANDUM DECISION AND ORDER - 12**

significantly over the past twenty years; the Idaho Department of Correction has built several new prisons, and Defendants have implemented new policies and amended old ones.  Indeed, due to the passage of time, the initial step of reconstructing all of the terms in the plans that were adopted by the Court in 1985 may prove to be challenging.  But these considerations are more appropriately addressed in a subsequent proceeding.  The Court notes that the burden in any contempt action will be on Plaintiffs to prove by clear and convincing evidence that Defendants are in contempt of a clear and definite order, before the burden shifts to Defendants to show why they were unable to comply.  *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).  "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir.1993) (quotations omitted).

Based on the foregoing, the Court will grant Plaintiffs' Motion for Clarification, thereby ordering that the compliance plans adopted by the Court in *Balla I* and incorporated into *Balla II* are enforceable through contempt motions. As previously set forth herein, the compliance plans are not subject to re-litigation.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for

**MEMORANDUM DECISION AND ORDER - 13**

Clarification of the Court's Order of December 18, 2007 (Docket No. 729) is

GRANTED as set forth above.



DATED:  **May 28, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 14**