J. Walter Sinclair, ISB #2243
E-mail: *jwsinclair@stoel.com*
Jason E. Prince, ISB # 7227
E-mail: *jeprince@stoel.com*
Allison M. Blackman, ISB #8686
E-mail: *amblackman@stoel.com*
STOEL RIVES LLP
101 S. Capitol Blvd, Ste 1900
Boise, ID 83702
Telephone: (208) 389-9000
Fax: (208) 389-9040

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER D. BALLA, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>IDAHO STATE BOARD OF<br>CORRECTION, et al.,<br><br>               Defendants. | Case No. CV 81-1165-S-BLW<br><br>**STIPULATED MOTION TO MODIFY<br>INJUNCTIVE RELIEF** |

      This Stipulated Motion to Modify Injunctive Relief (this "Stipulation") is entered into this 15th day of May 2012 by and between Plaintiffs and Defendants (collectively, the "Parties") in the lawsuit captioned as *Walter Balla, et al. v. Idaho State Board of Correction, et al.*, Case No. 1:81-cv-1165-BLW, United States District Court for the District of Idaho.

## RECITALS

      WHEREAS the *Balla* case was filed on May 15, 1981 as a class action challenge to prison conditions at the Idaho State Correctional Institution ("ISCI"), thereby commencing Case No. 1:81-cv-1165-BLW, United States District Court for the District of Idaho;

      WHEREAS on November 1, 1984, in *Balla I*, the Court ordered prison officials to do the following: (1) adopt a special dietary program for medically infirm inmates; (2) provide adequate clothing for inmates in protective custody; (3) create 24-hour emergency medical care for inmates and hire a full-time physician; (4) provide a properly staffed medical delivery system;

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 1**

(5) establish a psychiatric care program; (6) provide adequate security staff for double-celled units; (7) report to the Court on Defendants' progress; (8) establish an inmate classification system to protect younger inmates; and (9) implement a disciplinary procedure ensuring due process protection (*Balla v. Idaho St. Bd. of Corr. (Balla I)*, 595 F. Supp. 1558, 1583 (D. Idaho 1984));

WHEREAS on July 11, 1985, the Court approved the compliance plans Defendants submitted in response to the *Balla I* Order ("*Balla I* Compliance Plans") consisting of the following: (1) dietary program; (2) a plan for adequate clothing for protective custody inmates; (3) a medical delivery system plan; (4) a program for psychiatric treatment; (5) implementation of security staffing for double-celled units; (6) a plan to reduce predatory attacks in protective custody units; (7) a classification procedure to protect younger inmates; and (8) a disciplinary offense procedure in compliance with due process standards (Dkt. No. 150);

WHEREAS, on May 28, 2009, the Court issued a Memorandum and Decision and Order, determining that *Balla I* and the *Balla I* Compliance Plans adopted in 1985 remained enforceable through contempt proceedings (Dkt. No. 768);

WHEREAS, on January 6, 2011 the Court issued another Order finding that the appointment of a special master was appropriate to address the remedial phase of the *Balla I* Compliance Plans (Dkt. No. 793);

WHEREAS, on July 20, 2011, the Court appointed Dr. Marc F. Stern as special master and ordered Dr. Stern, *inter alia*, to "investigate and attempt to reconstruct the injunctive relief issued by the Court in *Balla I*, pertaining to the delivery of medical care—including special medical diets—and mental health care at the Idaho State Correctional Institution (ISCI)." The Court also instructed Dr. Stern to draft a report in which he was to assess to the extent he was able (a) the terms of the compliance plans that were adopted by the Court to remedy the constitutional violation in the areas of special diets, medical and mental health, (b) whether changes in circumstances had rendered the plans ineffective or unworkable as a practical matter, and, if still applicable, (c) whether Defendants were presently in compliance. (Dkt. No. 806);

WHEREAS, on February 2, 2012, Dr. Stern filed his Special Master's Report (Dkt. No. 822), and the Parties subsequently agreed to engage in mediation to address the following *Balla I* Orders only: (a) adopt a special dietary program for medically infirm inmates (Order No. 1), (b) create 24-hour emergency medical care for inmates and hire a full-time physician (Order No. 3), (c) provide a properly staffed medical delivery system (Order No. 4), and (d) establish a psychiatric care program (Order No. 5);

WHEREAS, Defendants strongly dispute the conclusions contained in the Stern Report (Dkt. No. 822), deny many of the facts contained therein and deny the legal conclusions stating that Defendants were deliberately indifferent to the constitutional rights of the Plaintiff class, which objections and denials are set forth in Defendants' "Response and Objections to Special Master's Report" (Dkt. No. 826), filed on March 30, 2012;

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 2**

WHEREAS, Plaintiffs strongly agree with the conclusions contained in the Stern Report (Dkt. No. 822), agree with the facts contained therein and agree with the legal conclusions stating that Defendants were deliberately indifferent to the constitutional rights of the Plaintiff class, which position is set forth in Plaintiffs' "Response to Special Master's Report" (Dkt. No. 827), filed on March 30, 2012;

WHEREAS, following mediation, the Parties entered into a Memorandum of Understanding (the "MOU") on April 6, 2012, which memorialized the Parties' desire to enter into a definitive document that set forth in greater detail the Parties' points of agreement; and

WHEREAS, seeking to resolve the outstanding class-wide injunction issues related to Orders 1, 3, 4, and 5 of the *Balla I* Order, the parties wish to execute the definitive document contemplated in the MOU and to thereby stipulate to modifying the *Balla I* Compliance Plans pursuant to 18 U.S.C. § 3626(b)(4).

NOW THEREFORE, in consideration of the recitals, covenants, and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

## STIPULATION

1.     **Recitals**.  The Parties hereby acknowledge that all of the Recitals stated above are true and accurate and by this reference are incorporated into and made a part of the body of this Stipulation.

2.     **Representations**.  The Parties have negotiated in good faith this Stipulation that expresses in greater detail the points of agreement set forth in the MOU.

3.     **Acknowledgements and Consents**.  The Parties each hereby acknowledge, confirm, and agree that this Stipulation addresses specific issues raised by Plaintiffs in this action relating to alleged constitutional violations with respect to medical and mental health care at ISCI and the resolution of these issues. The Parties stipulate that the terms of this Stipulation extend no further than necessary to satisfy the requirements of 18 U.S.C. § 3626(a)(1).  This Stipulation shall remain in effect in accordance with the provisions set forth below.

4.     **Modified Compliance Plans**.

    4.1    Implementation.  Defendants shall implement modified compliance plans (the "Modified Compliance Plans") to address certain medical and mental health concerns identified by Plaintiffs.  The Modified Compliance Plans shall be broken into two categories:

        a.     Addendum A.
           (1)    Addendum A modifications are those that Defendants represent they have already implemented or are ready to be implemented at ISCI, the preliminary specifics of which are set forth in Appendix A to this Stipulation.

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 3**

(2)   Defendants agree to provide further detail on the specifics of Addendum A to this Stipulation, including but not limited to further details concerning applicable IDOC policies and procedures, increases in ISCI staffing, processes developed for the Nurse Monitor Manager, Clinical Supervisor and IDOC staff to monitor the provisions of this Stipulation, and format of reports to be provided to Plaintiffs' Counsel and the *Balla* Class Representatives at the MM's described in Section 5. Defendants will provide an initial draft of Addendum A to Plaintiffs at the first MM.

(3)   If Plaintiffs object to the level of detail provided in the proposed Addendum A, they may resort to the dispute resolution procedures set forth in Section 7.

(4)   The Parties shall execute Addendum A no later than six (6) months after the Parties' execution of this Stipulation. Once executed by all Parties, Addendum A will supersede and replace Appendix A in its entirety, and Addendum A shall be filed with the Court and incorporated into the Court's order granting this Stipulation.

b.   <u>Addendum B.</u>

(1)   Addendum B modifications are those that Defendants have not yet implemented at ISCI, the preliminary specifics of which are set forth in Appendix B to this Stipulation.

(2)   Following the execution of this Stipulation, the Parties shall continue to negotiate in good faith the specifics of Addendum B and, if necessary, may resort to the dispute resolution procedures set forth in Section 7.  Defendants will provide a draft of Addendum B to Plaintiffs no later than the third MM.

(3)   The Parties shall execute and Defendants shall fully implement the modifications set forth in Addendum B no later than six (6) months after the Parties' execution of this Stipulation.  Once executed by all Parties, Addendum B will supersede and replace Appendix B in its entirety, and Addendum B shall be filed with the Court and expressly incorporated into the Court's order granting this Stipulation.

c.   Upon implementation of the Modified Compliance Plans, the Modified Compliance Plans shall be subject to a 2-year period of compliance monitoring by Plaintiffs (the "2-Year Compliance Monitoring Period").

d.   During the 2-Year Compliance Monitoring Period, Defendants shall provide Plaintiffs' Counsel with copies of all policies, procedures, and programs adopted or modified with respect to the topics contained in this Stipulation or the Modified Compliance Plans, within thirty (30) days of such adoption or modification.  To the extent certain documents provided under this Section include confidential work product of IDOC's contracted

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 4**

medical provider, the *Balla* Class Representatives and their counsel will execute a mutually agreeable confidentiality stipulation. Any documents falling under the confidentiality stipulation will be produced after the Court enters a Stipulated Protective Order in this matter.

4.2     **Temporary Emergency Suspension.**

a.      Nothing in this Stipulation prevents Defendants from temporarily suspending compliance with the Modified Compliance Plans or Sections 5, 6, and/or 8 as may be necessary or appropriate during any emergency (a "Temporary Emergency Suspension"). Defendants shall advise Plaintiffs' counsel of any Temporary Emergency Suspension in writing within two (2) business days of the Temporary Emergency Suspension, describing what portion(s) were suspended and the reasons therefor. Defendants shall also advise Plaintiffs' counsel in writing of the termination of any Temporary Emergency Suspension under this Section within two (2) business days of the termination.

b.      An emergency requiring a Temporary Emergency Suspension of compliance with the Modified Compliance Plans or Sections 5, 6 or 8 could include, and in any event shall be substantially similar to, the following:

   i.    Lockdown Events – Events which result in a total lockdown of the facility, with inmates not being permitted to leave their cells. Lockdown Events can include, but are not limited to: Hazardous materials incidents; escapes and/or attempted escapes; riots; natural disasters; discovery of major contraband such as drugs, firearms or other weapons; bomb threats; assaults and/or batteries affecting inmates and/or staff; severe utility outage or other facility issue that compromises inmate and/or staff security; fire, arson or attempted arson at the facility; disturbances or other individual or group actions that threaten the orderly and secure operation of the facility; and/or other incidents involving inmates or occurring on facility property that causes death or life-threatening injuries to inmates and/or staff.

   ii.   Secure Status Events – Events which result in restricted inmate movement, with inmates permitted to leave their cells but generally not their housing units, except for escorts to food service and/or medical appointments. Secure Status Events can include, but are not limited to: the above-identified Lockdown Events, plus physical plant or utility problems; significant weather that inhibits visibility from guard towers, i.e. fog and/or heavy snow; rape and/or sexual assault; sexual assault allegations; and/or successful or attempted suicide.

c.      In the event Plaintiffs utilize the Dispute Resolution Procedure set forth in Section 7 with regard to a Temporary Emergency Suspension under this

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 5**

Section, the Parties agree to waive compliance with the notification and meet-and-confer process set forth in Sections 7(a), (b), (c) and (d), such that the Parties proceed directly to the dispute resolution procedures set forth under Section 7(e) and, if necessary, Section 7(f).

d.    In the event any Temporary Emergency Suspension under this Section lasts longer than five (5) days, each day of the Temporary Emergency Suspension in excess of five (5) days shall be added to the end of the 2-Year Compliance Monitoring Period.

5.    **Monitoring Meetings ("MM's")**. Following the Parties' execution of this Stipulation, the Parties shall engage in MM's as follows:

5.1    <u>Party Members Present at MM's.</u> The following individuals shall be entitled to attend the MM's:

a.    Plaintiffs' Counsel;
b.    *Balla* Class Representatives at ISCI;
c.    Defendants' Counsel;
d.    IDOC Nursing Manager Monitor;
e.    IDOC Director of Education, Treatment and Re-Entry;
f.    IDOC Chief Psychologist;
g.    IDOC Health Services Director;
h.    Other Necessary IDOC Representatives; and
i.    Representative(s) of the contract medical provider.

5.2    <u>Monitoring Report Review.</u> The topics addressed during each MM shall include, without limitation, the following:

a.    Review of a monitoring report prepared by Defendants and approved by Plaintiffs that concerns Defendants' compliance with the Modified Compliance Plans;
b.    Review of statistical data prepared by Defendants related to Defendants' compliance with the Modified Compliance Plans; and
c.    Periodic review of Defendants' internal audits of the provision of special diets, medical care, and mental health care at ISCI, including without limitation:
    (1)    ISCI Bi-Annual Audits performed by Defendants, with the March 2012 audit to be presented at the first MM; and
    (2)    Review of any follow-up audits.
d.    Specific areas of concern which may be submitted by Plaintiffs or Defendants.

5.3    <u>Formal Meeting Minutes.</u> Formal meeting minutes shall be promptly prepared by Defendants after each MM and reviewed and approved by Plaintiffs.

5.4.    <u>MM Timeline.</u> During the first six (6) months following the execution of this Stipulation, MM's shall occur monthly. Subsequently, the Parties shall reassess the appropriate

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 6**

frequency of MM's and negotiate in good faith to reach an agreement concerning the frequency of MM's thereafter.

6.     **National Commission on Correctional Health Care ("NCCHC") Compliance Audit**.

6.1     Purpose. NCCHC shall conduct a final compliance audit (the "Compliance Audit"), payment for which shall be arranged by Defendants, to determine Defendants' compliance with the Modified Compliance Plans.

6.2     Selection of NCCHC Auditors. The Parties shall negotiate in good faith in an effort to agree on the NCCHC auditors who perform the Compliance Audit, based on a roster provided by NCCHC. If the Parties are unable to reach agreement within thirty (30) days of the Parties' commencement of negotiations, NCCHC shall make the selection.

6.3     Further Refinement of Compliance Audit Details.
   a.    Prior to the Compliance Audit, the Parties shall negotiate in good faith the specific details of how the Compliance Audit shall be conducted.
   b.    The Parties' counsel shall work with NCCHC to develop audit tools that shall be used to determine whether Defendants have (a) attained compliance with NCCHC's standards, and (b) attained compliance with the Modified Compliance Plans; provided, however, that any compliance percentage threshold utilized shall be no lower than ninety percent (90%).
   c.    The Compliance Audit shall include, without limitation, inmate focus groups to provide feedback to the auditors on Defendants' compliance with the Modified Compliance Plans. The inmates selected to participate in the focus groups shall be selected in a manner mutually acceptable to the Parties pursuant to good faith negotiations. Individuals present for NCCHC focus group interviews with the auditors shall only include the individuals interviewed, auditors, and correctional officers.
   d.    As part of the Compliance Audit, the *Balla* Class Representatives at ISCI shall be provided an opportunity to meet with the NCCHC auditors.

6.4     Audit Schedule. The Compliance Audit shall occur two (2) months prior to the close of the 2-Year Compliance Monitoring Period.

6.5     Cure Period. If the Compliance Audit reveals any areas of non-compliance with the Modified Compliance Plans, Defendants shall have a 60-day period to remedy any such non-compliance, and then NCCHC shall promptly conduct a follow-up audit to assess whether Defendants have successfully cured the non-compliance.

6.6     Failure to Cure Non-Compliance. If Defendants fail to cure any area of non-compliance identified by NCCHC during the Compliance Audit, the injunctive relief set forth in *Balla I* Orders 1, 3, 4 or 5 related to that area of non-compliance shall remain in full force and effect and Plaintiffs shall have the right to seek from the Court any and all available legal remedies to address the situation.

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 7**

6.7     Termination of *Balla I* Orders 1, 3, 4, and 5.  Upon NCCHC's provision to the Parties and the Court, under penalty of perjury, of written certification that Defendants attained the NCCHC compliance percentage thresholds developed pursuant to Section 6.3(b) with respect to (a) the NCCHC standards, and (b) the Modified Compliance Plans (*see* Section 6.3(b)), the Parties shall promptly submit to the Court a stipulation that terminates the injunctive relief set forth in Orders 1, 3, 4, and 5 of *Balla I*, the *Balla I* legal claims related thereto, and the provisions of this Stipulation.  Nothing in this Section shall preclude any individual class member from bringing a new individual action, or a putative class action, related to special diets, medical care, or mental health care.

7.      **Dispute Resolution & Enforcement of Compliance Plans**.

7.1     Dispute Resolution & Enforcement Process.

a.     If (i) Plaintiffs object to aspects of Defendants' proposed Addendum A or B (*see* Sections 4.1(a) and (b)), (ii) Plaintiffs believe Defendants are not in compliance with this Stipulation or the Modified Compliance Plans, (iii) the Modified Compliance Plans are not operating as the Parties intended, (iv) Plaintiffs object to any aspect of the proposed Compliance Audit (*see* Section 6.3), or (v) the agreed upon allowances for the *Balla* Class Representatives' communication with class members are not operating as intended (*see* Section 8), Plaintiffs' counsel shall provide Defendants' counsel written notice of such non-compliance.

b.     Upon receipt of such written notice, Defendants' counsel shall have five (5) business days to respond in writing.

c.     If Plaintiffs remain dissatisfied with Defendants' written response, Plaintiffs' counsel shall provide a second written notice to Defendants' counsel.

d.     The Parties, through their counsel, shall meet and confer within five (5) business days (or on some other mutually agreed upon date) of Plaintiffs' second written notice if the issue remains unresolved.

e.     If the Parties' counsel remain unable to resolve their dispute, the Parties' counsel shall meet with the ADR coordinator for the District of Idaho within three (3) business days of counsels' meet-and-confer session.

f.     If the Parties' dispute remains unresolved upon conclusion of the ADR coordinator's involvement, either Party's counsel may submit the dispute to Judge Carter, who shall have the full authority of a federal judge to enforce the terms of the Stipulation and the Modified Compliance Plans, or otherwise determine the outcome of any dispute arising under Section 7.1(a).

g.     In the event Judge Carter becomes incapacitated and is unable to perform his duties under this Stipulation, the authority to resolve disputes and enforce the terms of this Stipulation and the Modified Compliance Plans shall return to the current presiding judge in the *Balla* case.

h.     Throughout the dispute resolution process set forth above, the Parties' communications, whether in writing, electronic, verbal or other form, shall be subject to F.R.E. 408.

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 8**

i.   The Parties agree that Judge Carter's role, as a federal judge capable of resolving disputes and enforcing the terms of this Stipulation and the Modified Compliance Plans as to *Balla I* Orders 1, 3, 4 and 5, shall not prevent him from acting as a mediator in any other aspect of the *Balla* case.

8.   **_Balla_ Class Representatives' Communication with Class Members**. The Parties agree to negotiate in good faith to ensure the *Balla* Class Representatives at all times have adequate channels of communication with other members of the inmate class, such that the *Balla* Class Representatives can actively participate in monitoring Defendants' compliance with the Modified Compliance Plans. These channels of communication shall include:

8.1   Gym Pass. Each of the *Balla* Class Representatives will be provided with an anytime gym pass. The anytime gym pass shall allow *Balla* Class Representatives to have gym access to all inmates in Units 7, 9, 10, 11, 13, 14, and 24; General Population inmates in Unit 15; non-acute inmates in Unit 16; and inmates in the Medical Annex.

a.   As of the date of this Stipulation, recreation is open from 0800 hours until 2100 hours Monday thru Friday. On Saturday and Sunday, recreation is opened upon completion of the breakfast feeding and remains open until 2100 hours.

b.   The opening times identified above may be delayed in the event of a Lockdown or Secure Status Event. A delay in opening of the gym does not constitute a Temporary Emergency Suspension under Section 4.2.

c.   The *Balla* Class Representatives will be provided access to the gym during these timeframes for the purpose of meeting with class members concerning the medical and mental health care issues addressed in the Modified Compliance Plans (or any drafts thereof).

d.   Nothing in this Section prevents the *Balla* Class Representatives from permitted gym activities while they are accessing the gym areas pursuant to this Section.

8.2   Access to Specified Units. The *Balla* Class Representatives shall be provided access to inmates in the following units according to the following schedule:

a.   Medical Long Term Care – First Monday of every month from 0800-1000;

Medical Annex - First Tuesday of every month from 0800-1000;

Unit 15 (RDU Inmates) – First Wednesday of every month:
Odd Days – Upper Level from 900-1100 / Lower Level from 1400-1600;
Even Days – Lower Level from 900-1100 / Upper Level from 1400-1600

b.   Only one *Balla* Class Representative at a time will be allowed to enter a living area to meet with inmates.

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 9**

c.    Inmates in each of the above identified Units shall be given prior notification of the *Balla* Class Representatives' scheduled access.

d.    The *Balla* Class Representatives shall be provided access to the above units during these timeframes for the sole purpose of meeting with class members concerning the medical and mental health care issues addressed in the Modified Compliance Plans (or any drafts thereof).

e.    Within five (5) business days of the Court's entry of an order granting this Stipulation, the schedule set forth in Section 8.2(a), along with a mutually agreeable explanation of the schedule's purpose and its relation to this Stipulation, shall be posted on the dayroom bulletin boards in each housing unit at ISCI, and shall also be made available for check-out from each ISCI housing unit control center and the ISCI Resource Center

8.3    <u>Meeting with Nurse Monitor</u>. On or about the 10th of every month, the *Balla* Class Representatives shall have the opportunity to meet with IDOC's Nurse Manager Monitor and a Deputy Warden or Warden from ISCI. This meeting shall be scheduled for one hour. This meeting shall be in addition to the Monitoring Meetings referenced in Section 5.

8.4    <u>Temporary Emergency Suspension Provision</u>. In the event of a Temporary Emergency Suspension, the access times listed herein shall be rescheduled at the earliest opportunity by an ISCI Deputy Warden or Warden.

8.5    <u>Grievance Process</u>. This Section only details processes for the *Balla* Class Representatives to communicate with class members for the purpose of monitoring compliance with the Modified Compliance Plans. Nothing herein substitutes or otherwise replaces the Grievance Process set forth in IDOC Standard Operating Procedure 316.02.01.001. Inmates still must utilize the procedures set forth in IDOC Standard Operating Procedure 316.02.01.001 in order to notify the facility of any concerns and to exhaust their administrative remedies.

8.6    <u>Appointment of Class Representatives</u>. Prior to the first MM, the Parties shall negotiate in good faith a stipulation regarding the appointment of additional *Balla* Class Representatives, such that there are no fewer than five (5) *Balla* Class Representatives at ISCI during the MM's and 2-Year Compliance Monitoring Period.

9.    **Plaintiffs' Right to Seek Medical Expertise**. Plaintiffs reserve the right to petition the Court for federal funds to obtain a medical expert to provide Plaintiffs an independent review of the sufficiency of any aspect of the Modified Compliance Plans.

10.    **Individual Claims**. Nothing in the Stipulation shall preclude any individual Plaintiff class member from bringing his own individual claim related to his own special diet, medical care, or mental health care.

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 10**

11.    **Miscellaneous**.

11.1    Amendment.  This Stipulation may be amended or modified only explicitly in a writing signed by the Parties to this Stipulation.

11.2    Successors and Assigns.  This Stipulation shall be binding upon the Parties and their successors and assigns.

11.3    Merger and Integration.  This Stipulation, the Appendices attached hereto, and the to-be-adopted Addenda (i.e., the Modified Compliance Plans) constitute the entire agreement between the Parties with respect to the subject matter of this Stipulation, and supersede all prior negotiations, agreements, and understandings with respect thereto.

11.4    Documents Referenced in Recitals.  Defendants shall make available to Plaintiffs all documents referenced in the above Recitals through check-out from each ISCI housing unit control center, along with the ISCI Resource Center.

11.5    Documents Referenced in Modified Compliance Plans.  Defendants shall make available for Plaintiffs' counsel all documents referenced in the Modified Compliance Plans (including any drafts thereof) upon Plaintiffs' request.  If necessary, the Parties shall enter into a stipulated protective order regarding the confidentiality of documents.

11.6    Section References.  All references herein to a specific "Section" or "Sections" are to the applicable Section or Sections of this Stipulation.

11.7    Governing Law. This Stipulation shall be governed by and construed in accordance with the laws of the State of Idaho, excluding its conflict of laws rules.

11.8    Severability. If any provision or application of this Stipulation is held unlawful or unenforceable in any respect, such illegality or unenforceability shall not affect other provisions or application which can be given effect and this Stipulation shall be construed as if the unlawful or unenforceable provision or application had never been contained in this Stipulation or prescribed by this Stipulation.

11.9    Interpretations; Headings. No provision of this Stipulation shall be interpreted or construed against any Party because that Party or its legal representative drafted that provision. Each of the Parties hereto shall be deemed to have drafted this Stipulation.  The rule of law that provides that ambiguities, inconsistencies and the like shall be construed against the author of a document or contract shall not apply to this Stipulation.

11.10   Authorization.  This Stipulation has been duly and validly authorized by all necessary action on the part of all Parties hereto.

Each of Plaintiffs and Defendants have caused a duly authorized representative to execute this Stipulation as of May 15, 2012.

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 11**

RESPECTFULLY SUBMITTED this 15th day of May, 2012.


**PLAINTIFFS**

_____
Barry Searcy
*Balla* Class Representative

_____
Jesse Ibarra
*Balla* Class Representative

_____
Lance Wood
*Balla* Class Representative


**DEFENDANTS**

_____
Brent Reinke
Director, Idaho Department of Correction


**PLAINTIFFS' COUNSEL**

_____
Jason E. Prince
Allison M. Blackman
Attorneys for Plaintiffs

**DEFENDANTS' COUNSEL**

_____
Mark A. Kubinski
Colleen Zahn
Attorneys for Defendant


**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 12**

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2012, I served a copy of the foregoing **STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF** on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

Paul R. Panther
ppanther@ag.idaho.gov

Mark A. Kubinski
mkubinsk@idoc.idaho.gov

William Michael Loomis
wloomis@idoc.idaho.gov

Michael S. Gilmore
Deputy Attorney General
mike.gilmore@ag.idaho.gov

Colleen D. Zahn
czahn@idoc.idaho.gov

Marc Stern
marcstern@live.com

Jason E. Prince
Allison M. Blackman

**STIPULATED MOTION TO MODIFY INJUNCTIVE RELIEF - 13**

**APPENDIX A**
**(ITEMS COMPLETED AND IMPLEMENTED)**
*Walter Balla, et. al. v. Idaho State Board of Correction, et. al.*
Case No. 1-81-cv-1165-BLW

| Plaintiffs' Concern | Page Number from Stern Report | IDOC Action |
|---|---|---|
| Address gaps in diet-related grievances (confirm that all grievances go through the Food Service Supervisor) | Page 7 | 1. IDOC Food Service Manager will be the level one reviewer of medical diet-related grievances<br><br>2. IDOC Health Services Director to conduct appellate review of medical diet-related grievances<br><br>3. IDOC ongoing compliance plan and reporting<br><br>4. IDOC creation of mechanisms to address isolated events<br><br>&bull; IDOC Food Services Manager to review all medical diet related grievances monthly to identify any issues and provide details concerning those grievances during the monthly Monitoring Meetings (MM).<br><br>&bull; IDOC kitchen staff will follow up on those instances where the diet ordered was not provided in a timely manner, identify corrective action steps, and report back to the Health Services Director<br><br>5. IDOC Nurse Manager Monitor to provide ongoing QA and validate reporting<br><br>&bull; IDOC Nurse Manager Monitor will participate in the MM meetings, follow up on any medical diet-related grievances that have not been resolved, and report back to the IDOC Health Services Director concerning the grievance resolution<br><br>&bull; IDOC Nursing Manager Monitor to track medical |

APPENDIX A TO DEFINITIVE AGREEMENT - 1

APPENDIX A TO DEFINITIVE AGREEMENT - 2

| | | |
|---|---|---|
| Address delays in ordering or communication to the kitchen of special diets upon arrival of new patients and new orders to ISCI | Page 7 | diet-related grievances and trend on a weekly basis the amount of time from physician order to offender receiving new diet<br>• IDOC Nursing Manager Monitor to provide a weekly summary report to IDOC Health Services Director using newly developed monitoring tool<br>1. IDOC ongoing compliance plan and reporting<br>2. IDOC creation of mechanisms to address isolated events<br><br>• ISCI food services staff will communicate to the IDOC Food Services Manager and Corizon staff all delays in ordering medically ordered special diets, or communication issues concerning medically ordered special diets<br>• The Food Services Manager and Corizon staff will work to identify and resolve systematic issues concerning such diets, and report resolution to the IDOC Health Services Director<br>3. IDOC Nurse Manager Monitor to provide ongoing QA and validate reporting concerning medically prescribed special diets<br>• IDOC Nurse Manager Monitor will participate in the MM meetings, and follow up on any delay issues concerning medically ordered diets that have not been resolved<br>4. Corizon staff to address oversight and ensure medically prescribed special diets communicated to ISCI kitchen staff in a timely manner<br>• Timely implementation of a medically prescribed special diet is considered to be: (a) implementation within the same day prescribed for individuals who are unable to intake sufficient calories and nutrients in the absence of the prescribed diet; and (b) within |

**APPENDIX A TO DEFINITIVE AGREEMENT - 3**

| | | |
|---|---|---|
| | | 2-3 days for individuals who are able to intake calories and nutrients between the time of prescription and time of implementation |
| Address delays/ lack of response (time delays/ referrals) to HSRs | Page 8 | 1. IDOC added two positions in 2011: (1) a monitor/nurse manager for IDOC; and (2) an ombudsman for Corizon, both of which participate in responding to medically-related grievances and concerns, and in auditing response time to HSR's<br><br>2. IDOC monitoring process to ensure response, timeliness, and quality<br>• IDOC Nurse Manager Monitor audits 10% of the HSR's weekly to ensure offenders were seen in a timely manner<br>• Monitor will review, trend, and analyze findings specific to instances of delay or non-responsiveness to HSRs, follow up on systematic issues with Corizon, identify and address anomalies with Corizon, and report back to the IDOC Health Services Director |
| Address poor quality of nursing care when delivered; also look to issues at RDU | Page 8 | 1. Corizon currently employs RN oversight of LPN use of protocols during sick call<br><br>2. IDOC Nurse Manager Monitor examines process to ensure response, timeliness, and quality<br>• IDOC Monitor reviews 10% of randomly selected responses to HSR's to identify and address processes or activities that are non-effective or cause delays, follow up on systematic issues in process and clinical appropriateness, identify and address anomalies, and report back to the IDOC Health Services Director.<br><br>3. This will be a core item for RN supervisor review<br>• Corizon RN supervisor will randomly pull 10% of HSR's and review for responsiveness, timeliness, |

APPENDIX A TO DEFINITIVE AGREEMENT - 4

| | | and clinical appropriateness. |
|---|---|---|
| Address concerns related to staff competency and that certain systems for selecting and training qualified staff/ detect and respond to incompetent staff | Page 19 | 1. IDOC/Corizon to provide training, training content, training calendar, recruitment materials, selection process and orientation<br>2. Corizon conducts annual performance evaluations for clinical staff<br>3. Corizon staff evaluates clinical staff competency<br>4. Corizon's Regional Medical Director conducts:<br>  • Quarterly peer review on midlevel providers<br>  • Yearly peer review on physicians |
| Address lack of confidentiality during care at sick call/pill call | Pages 8, 10 | 1. IDOC added one LPN to pharmacy staff in July 2011<br>2. All sick call assessments are conducted in a private room<br>3. Offenders are required to stay behind a red line during medication dispensing in order to protect patient confidentiality |
| Address the poor quality of medical care when it is delivered-- Increase the availability of RN's to respond during Emergency Responses | Page 11 | 1. Corizon RN available as resource during emergency responses<br>2. Compliance plan to review quality and the continuity of care in emergency responses<br>  • Corizon RN conducts a monthly audit of Emergency Responses<br>  • IDOC Nurse Manager Monitor reviews Emergency Response Log weekly |
| Address/confirm the continuity of care upon return from hospital, ER, or pharmacy visits [Off-site care] | Page 13 | 1. Corizon's infirmary nurse assesses all offsite returns and notifies the provider as necessary<br>2. IDOC Nursing Manager Monitor uses the IDOC Continuity of Care Audit checklist to conduct weekly |

APPENDIX A TO DEFINITIVE AGREEMENT - 5

| Issue | Page | Action |
|---|---|---|
| Address the issue of emergency response equipment not being kept in order or not being carefully tracked / confirm that emergency cart being used in the way described | Page 13 | review off-site referrals and emergency ER runs<br>1. IDOC has purchased equipment<br>• Emergency response cart<br>• Pneumatic paramedic gurney<br>2. Emergency response equipment that meets Basic Cardiac Life Support (BCLS) guidelines is available for emergency responders<br>3. Implement preventative maintenance and equipment check- provide as monitoring/ reporting<br>• Corizon staff conducts daily checks and documents findings on all emergency and life saving equipment.<br>• IDOC reviews Emergency Response Log weekly<br>4. IDOC Nursing Manager Monitor randomly checks the daily inspection documentation. |
| Address outpatient medical care to ensure adequate follow-up related to outpatient care | Pages 14, 15 | 1. Corizon staff schedule follow-up clinic appointments for outpatient care<br>2. An off-site scheduler tracks follow-up provider visits to ensure they are completed |
| Address the elimination of the Life Transitions Program- reinstate or create a similar program to deliver care to patients who cannot fend for themselves such as providing food and water, cleaning soiled linen, and treating pain | Page 16 | 1. IDOC will provide documentation to confirm existence of program as a measure of good faith but do not consider it an element of the Balla compliance plans related to medical care |
| Long Term Care | Page 16 | 1. Protocol maintenance- quality compliance review<br>• The IDOC Nursing Manager Monitor makes rounds on long-term care patients to obtain visual/documentary evidence that they are clean, fed and medications dispensed as ordered<br>2. IDOC added two additional CNA positions to the long-term care unit in July 2011<br>3. Corizon's Regional Medical Director makes rounds |

APPENDIX A TO DEFINITIVE AGREEMENT - 6

| | | |
|---|---|---|
| | | weekly in the long-term care unit to ensure clinical standards are met.<br><br>4. IDOC Nurse Manager Monitor audits 100% of all MARs on a weekly basis<br>• The Monitor randomly selects one day during the week and reviews all MARs from that day to ensure all medications dispensed<br>• If a medication is not given, the Monitor communicates with Corizon to obtain documentation about why the dose was missed and how the error was corrected<br>• The Monitor also speaks with individual offenders who submit concerns/grievances related to not receiving medications |
| Address poor documentation of medication delivery or administration | Page 17 | 1. RN supervision review by Corizon<br>• Corizon conducts monthly and random Medication Administration Record (MAR) audits<br>• Corizon conducts monthly and random audits of "Keep on Person" (KOP) medications to ensure timely distribution<br><br>2. IDOC Nurse Manager Monitor reviews for compliance and oversight<br>• IDOC Nurse Manager Monitor conducts weekly audits of all MARs for one randomly selected day<br>• The Monitor randomly selects one day during the week and reviews all MARs from that day to ensure all medications dispensed<br>• If a medication is not given, the Monitor communicates with Corizon to obtain documentation about why the dose was missed and how the error was corrected<br>• The Monitor also speaks with individual offenders who submit concerns/grievances related to not receiving medications |

APPENDIX A TO DEFINITIVE AGREEMENT - 7

| Concern | Page | Actions |
|---|---|---|
| Segregation/ Welfare Check Concerns | Page 18 | 3. Corizon added staff for maintenance of medical records<br>• Corizon added a full-time medical record technician in 2011 to insure filing is was current and all charts are maintained appropriately<br><br>1. IDOC added one full-time LPN to Unit 8 (segregation unit)<br>2. Corizon staff conduct a monthly review of the Segregation Log using IDOC Segregation Checklist<br>• Staff reviews the completeness of the ledger and that no contraindication exist for them being confined<br>• RN supervisor reviews records to ensure welfare checks are performed as required by policy and National Commission on Correctional Health Care (NCCHC) standards<br>• RN performing review discusses findings with primary segregation LPN and nursing leadership as necessary<br>3. IDOC Nurse Manager Monitor to review ongoing compliance<br>• IDOC Monitor conducts a weekly review of the entire segregation log |
| Assure access to Offender Medical Records/ Mental Health Records | Pages 20, 21, 34 | 1. ISCI allows offenders to access their medical records, but does not permit offenders to retain copies of their medical records<br>2. IDOC allows offenders to request review of their own medical records through a concern form to request access to medical records<br>• Depending on how many offenders request access, how long offenders spend reviewing their record and the amount of patient education required as a result of medical record review, IDOC may need to |

| Issue | Pages | Action |
|---|---|---|
| | | examine adding staff to handle reviews.<br><br>3. IDOC Nurse Manager Monitor will monthly review two randomly selected days' worth of HSR's, and review those HSR's requesting medical record access to insure that HSR access is granted according to practice |
| Address issues surrounding review of Complaints from IDOC Grievance System—complaints not timely reviewed by Corizon's Regional Manager as required per policy | Pages 21 | 1. Corizon Ombudsman to review medical-related concerns and grievances and provide response to offender<br>2. IDOC Nursing Manager Monitor to review Corizon's responses and actions<br>  • Monitor will review all medical concerns and grievances to determine the number of days from when medical receives the concern form to when it is placed into the intra mail (distribution) system, will identify any systematic issues with untimely responses and address those issues with Corizon<br>3. IDOC agrees that all offender concern forms related to competency of health care staff will be forwarded to the IDOC Health Services Director for review<br>4. IDOC Nurse Manager Monitor and Corizon Ombudsman will track and trend concerns and grievances to insure responses are within the parameters contained in the IDOC SOPs. Trend data will be utilized in the CQI program to identify opportunities to improve existing service lines/key processes/address personnel behavior and competency |
| Address concerns related to death review | Pages 22, 34 | 1. Mortality reviews<br>  • The coroner conducts an independent autopsy in mortality cases<br>  • IDOC conducts a serious incident review (SIR) for mortality cases |

APPENDIX A TO DEFINITIVE AGREEMENT - 8

APPENDIX A TO DEFINITIVE AGREEMENT - 9

| | | |
|---|---|---|
| Address requirement for a systematic program for screening and evaluating offenders to identify those in need of mental health—make sure that new offenders are being adequately screened—perhaps related to increased psychiatric staff | Page 23 | • IDOC's Health Services Director conducts an internal review of mortality cases<br>• Corizon conducts an internal peer to peer review process for mortality cases<br>1. Ongoing monitoring and compliance by IDOC Mental Health Clinical Supervisor<br>• Each month the Mental Health Clinical Supervisor randomly selects 10% of the total intake screening forms completed and reviews them for compliance with IDOC procedure and for appropriate clinical decision-making |
| Address requirement for a treatment program that involves more than segregation and close supervision of mentally ill offenders<br><br>a. Follow-up to ensure that adequate psychological intake assessments are occurring/ follow through with treatment plans<br><br>b. Increase the use of group therapy<br><br>c. Address mental health care issues of adequate care during acute mental health illness<br><br>d. Address the misuse of segregation for mental health problems | Page 24 | 1. In response to subpart a:<br>• IDOC has a screening/assessment/treatment plan protocol in place<br>  o IDOC policy mandates timelines for when screening, assessment and treatment plans are completed<br>  o On a monthly basis, the IDOC Mental Health Clinical Supervisor will randomly select 10% of screenings and treatment plans to review for compliance with IDOC procedure and for appropriate clinical judgment.<br>• IDOC will provide compliance regarding assessment and treatment plan report as part of ongoing monitoring and compliance by IDOC clinical supervisor<br>  o Each month the Mental Health Clinical Supervisor will randomly select 10% of the total intake screening forms and treatment plans completed that month and review for compliance with IDOC procedure and for appropriate clinical decision-making.<br>2. In response to subpart b:<br>• General population group therapy hours increased |

| Increase employment of sufficient number of trained mental health professionals | Page 28 | |
|---|---|---|

to 20 hours per week
- The number of group hours actually provided can be verified through available OMP databank that provides class, offender participation and classroom hours each month

3. In response to subpart c:
- Currently all mentally ill offenders housed at ISCI have access to more intensive mental health care through the Behavioral Health Unit (BHU)

4. In response to subpart d:
- Under IDOC policy, a clinician reviews the Disciplinary Offense Report (DOR) for any offender with a mental health level of care higher than Correctional Mental Health Level of Care (CMHS) 2, in order to determine whether the DOR was mental health related
- The clinician will move the offender to BHU rather than segregation if required due to offender's mental health status
- If the DOR is related to the offender's mental health status, the clinician will recommend sanctions which take into consideration the offender's mental health status
- Clinical supervisor will review all mental health related DOR's for the month to make sure clinicians are exercising appropriate clinical judgment

1. IDOC to provide list of current mental health positions and respective responsibilities related to mental health services at ISCI

2. The IDOC Nurse Manager Monitor will ensure no reduction from mental health staffing levels in existence as of April 6, 2012

**APPENDIX A TO DEFINITIVE AGREEMENT - 11**

| | | |
|---|---|---|
| Address administration of psychotropic medication only with appropriate supervision and periodic evaluation | Page 30 | 1. Appropriateness of mental health medication currently monitored through psychiatric visits every 90 days<br>• On a monthly basis Corizon will randomly select 10% of medical records for offenders currently under the care of the psychiatrist and review to ensure compliance<br><br>2. Clinicians review periodically for patient concerns<br>• Clinicians meet with offenders on a regular basis according to the offender's mental health level of care<br>• Offenders can request to see clinician at any time through HSR<br>• Clinicians review and triage HSR's on a daily basis and set appointments with offenders based on availability and urgency of request/need<br><br>3. Clinical supervisor QA<br>• The clinical supervisor is available daily to consult with clinicians on cases<br>• The clinical supervisor reviews mental health documents for quality<br>  o The clinical supervisor will randomly sample 10% of psychiatric 90 day review and treatment plans for timeliness of follow-up |
| Address requirement of creating a basic program to identify, treat, and supervise offenders at risk for suicide<br><br>a. Assure the safe use of Companion Offenders during suicide watch<br><br>b. Assure adequate suicide prevention training for staff | Page 31 | 4. In response to subpart a:<br>• Selection, training, and monitoring currently in place<br>  o All offender companions are selected, trained, and monitored according to the Correctional Mental Health Services System (CMHSS) Manual and IDOC Policy<br>• Clinical supervisor to monitor for compliance<br>  o Will review roster of training completed by offender companions |

APPENDIX A TO DEFINITIVE AGREEMENT - 12

- o Mental health clinical supervisor has final say in selection of offender companions

5. In response to subpart b:
- IDOC will provide training materials and training calendar
- Clinical supervisor to monitor for compliance
  - o On an annual basis, the clinical supervisor will review the staff log of attendance at suicide trainings and the content of the suicide risk management presentation
  - o IDOC will provide staff with suicide training on a biannual basis

**APPENDIX B
(ITEMS TO BE IMPLEMENTED)**
*Walter Balla, et. al. v. Idaho State Board of Correction, et. al.*
Case No. 1-81-cv-1165-BLW

| Plaintiffs' Concern | Page Number from Stern Report | IDOC Action |
|---|---|---|
| Address delays/ lack of response (time delays/ referrals) to HSRs | Page 8 | 1. IDOC proposes enhanced RN clinical supervisor hours to provide oversight of the medical clinics<br>  • Increased RN clinical supervisor hours would provide RN clinical supervision 7 days a week to monitor, educate, manage, direct and develop clinical areas<br><br>2. Corizon to conduct continuous quality improvement (CQI) review of HSR's, in the form of monthly review of 10% of randomly selected HSR's<br><br>3. IDOC Nurse Manager Monitor will review Corizon CQI findings concerning timeliness of response to HSR's, identify any systematic issues and notify and work with Corizon to address and resolve any such issues |
| Address poor quality of nursing care when delivered; also look to issues at RDU | Page 8 | 1. IDOC proposes an enhanced RN Supervisor to provide oversight for RDU<br>  • Increased RN clinical supervisor hours would provide clinical supervision 7 days a week to monitor, educate, manage, direct and develop clinical areas<br>  • Increased RN hours to complete competency assessment of clinical staff. Increased RN hours will then result in development of training plan based on assessment outcomes. |

APPENDIX B TO DEFINITIVE AGREEMENT - 2

| | | |
|---|---|---|
| Address concerns related to staff competency and that certain systems for selecting and training qualified staff detect and respond to incompetent staff | Page 19 | 2. Corizon clinical staff will participate in competency assessment demonstration on an annual basis<br>3. RN supervisor will conduct a weekly audit of 10% of the sick call visits performed by LPN to ensure nursing protocols are used and appropriate provider referrals are made<br>1. IDOC ongoing assessment of recruitment, orientation and training<br>  • IDOC Nurse Manager Monitor will ensure policy and training expectations are met, including timely filling of critical positions<br>2. Monitoring process to ensure response, timeliness, and quality<br>  • IDOC Nurse Manager Monitor to review Corizon's progress on completing competency assessments of clinical staff and creating a development plan based on assessment outcomes<br>3. Corizon clinical staff will participate in competency assessment demonstration on an annual basis<br>4. Corizon will develop a mentor program to provide on-going training<br>5. IDOC Nurse Manager Monitor will identify and address any gaps in the process, follow up on identified issues, and report findings to the IDOC Health Services Director |
| Address lack of confidentiality during care at sick call/pill call | Pages 8, 10 | 1. IDOC proposes construction and/or modification of medical building to expand pharmacy and |

APPENDIX B TO DEFINITIVE AGREEMENT - 3

| Issue | Page | Responses |
|---|---|---|
| Address the poor quality of medical care when it is delivered-- Increase the availability of RN's to respond during Emergency Responses | Page 11 | 1. IDOC proposes an enhanced RN Supervisor to provide oversight<br>• Increased RN clinical supervisor hours would provide RN clinical supervision 7 days a week to monitor, educate, manage, direct and develop clinical areas<br>• Increase RN hours to complete competency assessment of clinical staff and create develop plan for staff that require further training<br>• Corizon clinical staff will participate in competency assessment demonstration on an annual basis<br>2. Compliance plan to review quality and the continuity of care in emergency responses<br>• IDOC proposes that Corizon Regional Medical Director will review 100% of Emergency Responses to ensure that adequate medical care is delivered<br>3. IDOC proposes Corizon Regional Medical Director to review all sentinel events and mortality reviews |
| Address/confirm the continuity of care upon return from | Page 13 | 1. IDOC will develop a protocol to review |

Additional column content (medication/pill call responses):

create additional pill call windows to reduce crowding during dispensing of medications

2. IDOC proposes adding a portable trailer to assist with medication dispensing during construction of additional pharmacy windows

3. IDOC considering adjustments to medication dispensing schedules to relieve overcrowding

4. IDOC proposes adding additional staffing to handle additional pill call windows

APPENDIX B TO DEFINITIVE AGREEMENT - 4

| | | |
|---|---|---|
| hospital, ER, or pharmacy visits [Off-site care] | | compliance with off-site recommendations for treatment plan and care<br><br>2. IDOC will review the medication formulary with Corizon<br><br>3. Corizon Regional Medical Director to review 10% of provider charts every week to ensure that clinical standards are being met<br><br>4. Corizon Regional Medical Director to review 10% of patient charts and medical orders for patients returning from hospital to ensure appropriate follow-up is being provided<br><br>5. IDOC will work with Corizon to implement a review system for IDOC to verify that Corizon is performing oversight function |
| Address outpatient medical care to ensure adequate follow-up related to outpatient care | Pages 14, 15 | 1. IDOC Nurse Manager Monitor will review Corizon CQI (continuous quality improvement) findings concerning:<br>  &bull; Corizon RN on a monthly basis will randomly select 10% of charts for patients seen in clinic by providers to review and ensure that orders are completed:<br>    ○  In-House referrals ordered<br>    ○  Medications ordered<br>    ○  Tests ordered<br>    ○  Offsite Consults ordered<br>    ○  Procedures ordered |
| Long Term Care | Page 16 | 1. Enhanced Medical Director QA review<br>  &bull; IDOC Nursing Manager Monitor on a monthly basis will review randomly selected charts for 50% of patients in the long-term care unit. The monitoring will be done using IDOC |

APPENDIX B TO DEFINITIVE AGREEMENT - 5

| | | |
|---|---|---|
| Pharmacy/Medication Dispensing: Address the failure to ensure seamless provision of medication as ordered | Page 17 | • Extended Care Audit form while rounding on offender patients<br>• As part of CQI, Corizon's Regional Medical Director on a monthly basis will review 10% of randomly selected files to ensure appropriate clinical care, timeliness, and treatment planning occurring<br><br>1. Proposal to implement electronic dispensing protocol<br>• IDOC is awaiting a proposal from Corizon for expense associated with implementing an electronic system for dispensing medications, recording medications dispensed, and maintaining pharmacy inventory<br>2. Look to create alternative sites for specialty patients, i.e. Diabetics<br>• IDOC proposes construction and/or modification of medical building to expand pharmacy and create additional pill call windows to reduce crowding during dispensing of medications<br>• IDOC proposes adding a portable trailer to assist with medication dispensing during construction of additional pharmacy windows<br>3. IDOC considering adjustments to medication dispensing schedules to relieve overcrowding<br>4. IDOC proposes adding additional staffing to handle additional pill call windows |
| Address poor documentation of medication delivery or administration | Page 17 | 1. Proposal to implement electronic dispensing protocol<br>• IDOC is awaiting a proposal from Corizon for expense associated with implementing an |

APPENDIX B TO DEFINITIVE AGREEMENT - 6

| Concern | Page | Response |
|---|---|---|
| | | electronic system for dispensing and recording medications dispensed |
| Segregation/Welfare Check Concerns | Page 18 | 1. IDOC proposes increasing LPN hours to provide weekend coverage in Unit 8<br>2. IDOC also proposes Corizon conduct weekly reviews of segregated offenders<br> • Corizon will review segregation log using IDOC Segregation Audit checklist |
| Address issues surrounding review of Complaints from IDOC Grievance System—complaints not timely reviewed by Corizon's Regional Manager as required per policy | Page 21 | 1. IDOC will modify its written Standard Operating Procedure (SOP) to reflect IDOC is the appellate authority for medically-related grievances<br>2. IDOC will also provide for review of medically-related grievances by the IDOC Nursing Manager Monitor |
| Address concerns related to death review | Pages 22, 34 | 1. IDOC proposes retaining a contract physician to conduct independent review of mortalities and sentinel events<br>2. IDOC proposes increasing hours for Corizon's Regional Medical Director to provide enhanced death reviews and review of sentinel events |
| Address requirement for a systematic program for screening and evaluating offenders to identify those in need of mental health—make sure that new offenders are being adequately screened—perhaps related to increased psychiatric staff | Page 23 | 1. IDOC is enhancing the mental health intake screening form<br> • The form is being rewritten to include sufficient room so that in the event an offender is immediately referred for suicide risk follow-up, the follow-up clinician has room to document the disposition of that particular case on the intake form, rather than in a case note<br> • The revised form will also include additional room so the screener can write additional notes in clinical SOAP format and document clinical observations |

APPENDIX B TO DEFINITIVE AGREEMENT - 7

| | | |
|---|---|---|
| Address requirement for a treatment program that involves more than segregation and close supervision of mentally ill offenders<br><br>a. Follow-up to ensure that adequate psychological intake assessments are occurring/ follow through with treatment plans<br><br>b. Increase the use of group therapy<br><br>c. Address mental health care issues of adequate care during acute mental health illness<br><br>d. Address the misuse of segregation for mental health problems | Page 24 | 2. IDOC in process of scheduling additional clinical staff to be available during large intake days<br>• Additional clinicians are being scheduled to work on Tuesday and Thursday nights when intake occurs, so they are available to help complete the screening form and complete any suicide risk assessments that may be needed as a result of answers provided on the intake form<br>• Clinicians are then also available to assist with decisions about disposition and placement<br><br>1. In response to subpart b:<br>• IDOC proposes adding additional clinician hours to provide additional hours of group therapy<br><br>2. In response to subpart d:<br>• IDOC proposes developing a Disciplinary Offense Report (DOR) Documentation Log<br>  o The log will facilitate internal communication between providers<br>  o The log will also provide additional metric points for CQI program |
| Increase employment of sufficient number of trained mental health professionals | Page 28 | 1. IDOC will explore adding additional psychiatric services through tele-psych |