UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER D. BALLA, et al., | Case No. CV-81-1165-S-BLW |
| Plaintiffs, | |
| v. | **AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS [994, 1000]** |
| IDAHO STATE BOARD OF CORRECTION, et al. Defendants. | |

Before the Court is Plaintiffs' Motion for Attorney's Fees and Costs ("Motion") and Supplement to Motion for Attorney's Fees and Costs ("Supplemental Motion") (Dkts. 994, 1000). Having reviewed the moving papers and considered the parties' arguments, the Court GRANTS Plaintiffs' Motion.

## I.      Relevant Factual and Procedural Background

The Court recently detailed the history of this litigation in a recent opinion. *See* Order Granting in Part Plaintiffs' Motion for Sanctions ("Sanctions Order"), August 11, 2015 (Dkt. 983) at 1–16. For purposes of resolving the instant motions, the Court recounts on the following facts.

The Court appointed law firm Stoel Rives to represent Plaintiffs pro bono beginning in January 2004. Order, January 6, 2004 (Dkt. 459) at 4–6. On July 20, 2011, the Court appointed Dr. Marc Stern as a special master to evaluate the medical and mental health care delivery system at the Idaho State Correctional Institution ("ISCI") (Dkt. 806). In March of the following year, Dr. Stern filed a report in which he concluded there were "serious problems with the delivery of medical and mental health care" within IDOC and that "these conditions violate the right of inmates at ISCI to be protected from cruel and unusual punishment." Special

Master's Report (Dkt. 822) at 3. Following the issuance of Dr. Stern's report, Defendant agreed to implement certain Modified Compliance Plans and to be subject to a two-year monitoring period. *See generally* Stipulated Motion to Modify Injunctive Relief (Dkt. 842).

On February 19, 2015, W. Christopher Pooser ("Mr. Pooser") and Elijah M. Watkins ("Mr. Watkins"), two attorneys with Stoel Rives, learned of allegations raised against the Idaho Department of Correction ("IDOC") in a state lawsuit filed by Diana Canfield ("Ms. Canfield"). Declaration of W. Christopher Pooser ("Pooser Decl.") (Dkt. 994-2) ¶ 10. Ms. Canfield specifically alleged that IDOC employees at ISCI had altered, falsified, and destroyed medical records and other patient information. *Id.*

After learning of these allegations, Pooser, Watkins, and attorney Andrea W. Reynolds ("Ms. Reynolds") along with Stoel Rives paralegals Jacqueline D. Franolich ("Ms. Franolich") and Darin S. Frost ("Mr. Frost"), began an investigation – they attended parts of the state court proceeding, reviewed the relevant trial documents, and conducted interviews of individuals with knowledge of the allegations. *Id.* ¶ 11. Plaintiffs' counsel then informed opposing counsel and Special Master Susie Headlee[1] of their investigation, and given the serious nature of the alleged misconduct, the parties agreed to engage in an expedited period of discovery. *Id.* ¶ 12.

Plaintiffs filed a Motion for Sanctions or, in the Alternative, Contempt ("Motion for Sanctions") on June 22, 2015 (Dkt. 956). The Court held a two-day evidentiary hearing on July 22 and July 23 (Dkts. 974, 975). On August 11, 2015, the Court issued its Sanctions Order, concluding that "Defendant acted with improper purpose to keep the Court's special master from appreciating the true extent to which the dry cells were used and the true extent to which ISCI failed to keep adequate records related to mental health care." Sanctions Order at 16. The Court wrote that "[b]y keeping the dry cells empty during the days of Dr. Stern's and Dr. Ruiz's visits; discouraging Mr. Fariss, who ran the suicide watch companion program, from speaking with the special master; creating a 'log' that would have misled the special master into thinking that training for suicide watch companions was tracked contemporaneously; and re-organizing and supplementing documents during an anticipatory 'audit' of inmates medical

---

[1] Ms. Headlee was appointed as special master on March 25, 2015. *See* Dkt. 947.

files, ISCI attempted to paper over and mislead the special master about the inadequacies of its mental health care system rather than risk a bad finding by the special master . . . ." *Id.* at 16–17.

As a remedy for these violations, the Court restarted the two-year compliance monitoring period for the Modified Compliance Plans, placed the burden on Defendant to prove compliance with these plans, and ordered Defendant to pay reasonable attorney's fees and costs incurred by Plaintiffs in bringing the Motion for Sanctions. *Id.* at 18–19. The Court relied on its inherent authority in imposing these sanctions. *Id.* at 14.

Pursuant to the Sanctions Order, Plaintiffs brought the instant Motion on September 15, 2015. Defendant filed its Opposition on October 1, 2015 (Dkt. 997). Plaintiffs replied and filed their Supplemental Motion on October 15, 2015 (Dkts. 999, 1000). IDOC filed its Opposition to the Supplemental Motion on November 9, 2015 (Dkt. 1002).

## II.   Legal Standard

### A.   Applicability of the PLRA

As an initial matter, the parties dispute what legal framework applies to the calculation of attorney billing rates. Plaintiffs seek an award of attorney's fees based on their standard billing rates. Mot. at 5. Because the Court relied on its inherent authority in sanctioning Defendant, Plaintiffs argue their attorney's fees request should not be capped by the Prison Reform Litigation Act ("PLRA"). *Id.* (citing *Ball v. Leblanc*, No. 13-00368-BAJ-SCR, 2015 WL 4454779, at *3–4 (M.D. La. July 17, 2015)) (finding PLRA "inapplicable" when court awards attorney's fees as part of its inherent power to sanction). Defendant contends the PLRA rate cap does in fact apply to Plaintiffs' request.

In *Webb v. Ada County*, the Ninth Circuit considered whether the PLRA rate cap applied to attorney's fees stemming from plaintiff's post-judgment motions for contempt and discovery sanctions. 285 F.3d 829, 837 (9th Cir. 2002). The discovery sanctions in *Webb* were "ordered against Ada County for refusing to turn over documents related to the jail's staffing levels." *Id.* The Ninth Circuit concluded that because Webb's motions "were directly related to his underlying § 1983 cause of action," the PLRA rate cap applied. *Id.* The *Webb* court explained:

> [I]t is unlikely that Congress intended that only *part* of the attorney's fees awarded in a prisoner lawsuit be subject to the PLRA fee cap. Congress' desire to reduce the costs of these lawsuits would not be furthered by awarding attorney's fees piecemeal; Webb's interpretation of the PLRA's scope would increase litigation over which fees should be paid at which rate. The district court did not abuse its discretion by applying the PLRA rates to fees related to motions for contempt and discovery sanctions.

*Id.*

A district court in this Circuit later relied on *Webb* in analyzing the exact argument Plaintiffs make here. The plaintiff in *Norwood* argued "*Webb* is distinguishable" because defendant's conduct warranted sanctions under the court's inherent power. *Norwood v. Vance*, No. 2:03-cv-2554-GEB-GGH-P, 2008 WL 686901, at *1 (E.D. Cal. Mar. 12, 2008). But the district court found this argument "unconvincing" because "his motion for sanctions is 'directly related to [the] underlying § 1983 cause of action.'" *Id.* Thus, the *Norwood* court awarded attorney's fees at the PLRA hourly rate. *Id.*

The Court agrees with this analysis. The Ninth Circuit's *Webb* decision made clear the PLRA rate cap applies to post-judgment discovery and contempt motions because they are related to the underlying § 1983 claim. Here, Defendant's sanctionable conduct was directly related to Plaintiffs' ongoing attempts to achieve compliance with the Modified Compliance Plans. Further, Plaintiffs' reliance on *Bell* is unpersuasive, as the Louisiana district court was not bound by the Ninth Circuit's holding in *Webb*.[2]

Accordingly, the Court finds the PLRA rate cap applies here.

**B. Attorney's Fees Under § 1988**

Under 42 U.S.C. § 1988, the Court may, in its discretion, grant a reasonable attorney's fee as part of the costs to the prevailing party. 42 U.S.C. § 1988(b). The lodestar formula should be used to determine a reasonable figure for an award of attorney's fees. A lodestar figure is calculated by "multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Del. Valley Citizens' Council for*

---

[2] In their Reply, Plaintiffs cite to three additional decisions that did not apply the PLRA rate cap to attorney's fees awarded as sanctions. Reply at 3 (citing *Scott v. Clarke*, No. 3-12-CV-00036, 2014 WL 1463755, at *1 (W.D. Va. Apr. 15, 2014); *Davis v. Rouse*, No. WDQ-08-cv-3106, 2012 WL 3059569, at *3 (D. Md. July 25, 2012); and *Edwin G. v. Washington*, No. 97-1177, 2001 WL 196760, at *2 (C.D. Ill. Jan. 26, 2001)). However, these decisions, like *Bell*, come from district courts outside of the Ninth Circuit.

*Clean Air*, 478 U.S. 546, 563 (1986). "A 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee, and upward adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases." Jordan v. *Multnomah County*, 815 F2d 1258, 1262 (9th Cir. 1987) (quoting *Delaware Valley*, 478 U.S. at 565).

A plaintiff is considered a prevailing party if it succeeds on any significant issue in litigation that gives some benefit that plaintiff sought in bringing the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To satisfy this requirement, the suit must have produced a material alteration of the legal relationship between the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). This alteration may be the result of an enforceable judgment or comparable relief through a consent decree. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

Once the Court determines attorney's fees are warranted in a given case, the Court must then assess whether the amount of fees requested is reasonable. "In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)). The first step the district court must take is to "determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Gracie*, 217 F.3d at 1070 (internal quotation marks and citation omitted). Next, the district court should, where appropriate, "adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that ha[ve] not been subsumed in lodestar calculation." *Id.* (internal citation and quotation marks omitted).

## C. Limits Under the PLRA

The PLRA applies to all civil rights actions by prisoners. The PLRA limits the availability of attorney's fees under § 1988 "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(d)(1). Under the

PLRA, attorney's fees can be awarded for post-judgment work in enforcing and monitoring the court's prior judgments. *Webb*, 285 F.3d at 835.

Under 42 U.S.C. § 1997e(d)(1), the Court may award fees to prisoners only to the extent that (1) the fees were "directly incurred in proving an actual violation of the plaintiff's rights," § 1997e(d)(1)(A); and (2) the fees are either "proportionately related to the court ordered relief for the violation" or "directly and reasonably incurred in enforcing the relief ordered for the violation," § 1997e(d)(1)(B). See *Jimenez v. Franklin*, 680 F.3d 1096, 1099 (9th Cir. 2012).

### III.   Discussion

### A. Attorney's Fees Under the PLRA

The Court will first consider whether the requirements for seeking attorney's fees under the PLRA are met and discuss the appropriate hourly rates for attorneys and paralegals.

#### 1.  Prevailing Party

Plaintiffs are clearly the prevailing party for purposes of attorney's fees. The Court awarded sanctions and ordered IDOC to pay reasonable attorney's fees and costs incurred by Plaintiffs in bringing their Motion for Sanctions.

#### 2.  Reasonable Rate

As determined above, the PLRA rate applies to the present matter. Plaintiffs request an upward adjustment from the maximum PLRA rate. Before determining whether an enhancement is warranted in this case, the Court must first clarify the current maximum PLRA rate for attorneys and paralegals.

Perhaps relying on prior court orders in this matter, Plaintiffs state "[t]he maximum hourly rate under the PLRA is $213 per hour for attorneys and $64 per hour for paralegals . . . ." Mot. at 9. This statement is inaccurate. As explained below, the current maximum rate under the PLRA is $190.50 per hour for both attorneys and paralegals.

#### a. Attorney Rate

Under § 1997(e)(d)(3), "[n]o award of attorney's fees in an action [brought by prisoners in which attorney's fees are authorized under 42 U.S.C. § 1988] shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 of

payment of court-appointed counsel." Thus, the hourly rate for attorney's fees subject to the PLRA cannot exceed 150% of the hourly rate for court-appointed counsel authorized by the Criminal Justice Act ("CJA"). Congress sets the baseline hourly rate under the CJA on an annual basis. As of January 1, 2015, the rate for court-appointed counsel is $127 per hour. Guide to Judiciary Policy § 230.16;[3] *see also White v. Bell*, No. 3:10-00863, 2015 WL 5123906, at *2 (M.D. Tenn. Aug. 31, 2015). Thus, the maximum hourly rate for attorney's fees under the PLRA is currently is 150% of this amount, or $190.50 per hour.[4]

### b. Paralegal Rate

The maximum PLRA billing rate is the same for paralegals as it is for attorneys. The Ninth Circuit made this clear in 2011 in holding that "paralegal fees are subject to the same cap under the PLRA as attorney's fees . . . ." *Perez v. Cate*, 632 F.3d 553, 554 (9th Cir. 2011). Put differently, the Ninth Circuit determined paralegals could seek the same maximum rate as attorneys under the PLRA, which was $169.50 per hour in 2011. *Id.* at 557. Noting this approach "could result in cost-savings," the *Perez* court determined it was justified so long as the paralegal fees were "consistent with market rates and practices." *Id.* at 556; *see also Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014) ("The maximum rate established by the PLRA is the same for paralegals and other non-attorneys billers as it is for attorneys.").

In a February 2013 order in this litigation, the prior Court acknowledged the Ninth Circuit's decision in *Perez*: "[T]he plain language of the PLRA does not require a reduction in paralegal rates" – rather, "the statute's cap on attorney's fees applies equally to paralegal rates." Order Granting in Part and Denying in Part Motion for Attorney's fees, February 8, 2013 (Dkt. 867) at 5. But in considering Plaintiffs' request for $150–$165 per hour for paralegal work, the prior Court concluded Plaintiffs had not demonstrated the rate was reasonable "for duties

---

[3] The CJA rates are also publicly available at http://www.id.uscourts.gov/district/cja/Panel_Information.cfm ("The hourly CJA panel attorney compensation rate is $127 for in-court and out-of-court time. This hourly rate applies to work performed on or after January 1, 2015.").

[4] Plaintiffs calculate the maximum hourly rate under the PLRA to be $213 per hour, Mot. at 9, but this calculation does not appear to be based on the CJA rate as of January 1, 2015.

performed in this type of case in the Treasure Valley." *Id.* at 6. Therefore, the prior Court maintained the rate of $65 per hour for paralegals and summer associates.

As noted earlier, Plaintiffs mistakenly state the PLRA cap for paralegals is $64 per hour – instead of $190.50 – and request enhancements from that amount to Ms. Franolich and Mr. Frost's standard rates, which are $165 per hour and $210 per hour respectively. Mot. at 8, 13. But as just explained, the proper inquiry is actually whether Plaintiffs' proposed hourly rates for the two paralegals are "consistent with market rates and practices." Following the Ninth Circuit's guidance in *Perez*, the Court will evaluate the reasonableness of the requested rates.

Plaintiffs present both general evidence of the market rates for paralegals in the region and specific evidence related to the qualifications of Ms. Franolich and Mr. Frost. With respect to market rates in Boise, Plaintiffs provide an affidavit from J. Walter Sinclair, a partner in the Boise office of Holland & Hart LLP. Mr. Sinclair notes that his firm "charges between $180 and $205 for the litigation services of paralegals in the Boise office, depending on various factors includ[ing] the nature of the litigation and the experience of the paralegal." Declaration of J. Walter Sinclair ("Sinclair Decl.") (Dkt. 994-13) ¶ 10. He adds the rates charged by Mr. Frost and Ms. Franolich "are typical for complex litigation in the Boise market for . . . paralegals practicing with a regional law firm like Stoel Rives and are commensurate with their skill and experience." Further, the Stoel Rives paralegals have significant experience. Mr. Frost has been a paralegal for twenty-seven years, including the last eleven years at Stoel Rives. Declaration of Darin Frost ("Frost Decl.") (Dkt. 994-12) ¶¶ 2–3. Ms. Franolich became a paralegal in 1996, has nine years of experience in the field, and joined Stoel Rives in 2014. Declaration of Jacqueline Franolich ("Franolich Decl.") (Dkt. 994-11) ¶ 3.

Defendant does not contest Plaintiffs' mistaken PLRA rate cap of $64 per hour for paralegals and argues the Court should not award a higher amount. Opp'n at 6. Ms. Zahn, Defendant's counsel, notes she worked with paralegals during her ten years in private practice. Declaration of Colleen D. Zahn ("Zahn Decl.") (Dkt. 997-1) ¶ 9. Ms. Zahn states that "paralegals supplemented and assisted attorneys by performing certain case-related tasks" so "attorney[s] could devote more time to other legal tasks and keep costs down for the client." *Id.*

She adds that since moving to the Attorney General's Office, she has "become much more self-sufficient when litigating cases" because she does "not have access to the same number of paralegal hours as I did in private practice." *Id.*

Based on the evidence presented by the parties, the Court concludes the hourly rates for paralegals should not be limited to $64 per hour. Plaintiffs have presented specific and credible evidence that paralegals working on complex litigation matters in Boise are generally compensated at a higher rate. *See Gonzales v. City of Maywood*, 729 F.3d 1196, 1206–07 (9th Cir. 2013) (holding that paralegal hourly rates must be consistent with "the prevailing market rate in the relevant community"). Further, the thirty-six years of combined experience between Mr. Frost and Ms. Franolich also justifies a departure from the Court's prior limitation on the rates of less experienced paralegals and summer associates. IDOC has not presented strong counter evidence.

Further, awarding paralegals their standard hourly rates makes a great deal of "'economic sense' and could result in cost-savings." *Perez*, 632 F.3d 553, 556 (9th Cir. 2011) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989)). The Supreme Court has explained the rationale behind this: "[b]y encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services and, by reducing the spiraling costs of civil rights litigation, furthers the policies underlying civil rights statutes.'" *Missouri*, 491 U.S. at 288 (citing *Cameo Convalescent Center, Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir. 1984)). In this case, the Court notes that a single paralegal (Ms. Franolich) alone billed 39.5% of the total hours requested.[5] By relying so heavily on Ms. Franolich for critical fact investigation and development, rather than billing the higher attorney rates for these tasks, Plaintiffs acted in a reasonable and economical fashion.

As the Ninth Circuit established in *Perez*, paralegals can be compensated at the same maximum hourly rate as attorneys under the PLRA *so long as* the rate requested is reasonable considering the prevailing market rate for the work performed. Having determined that plaintiffs' request is reasonable and consistent with the prevailing market rate, the Court

---

[5]  Plaintiffs request 532.1 hours for Ms. Franolich's work out of a total of 1,348 hours.

concludes the hourly rates for paralegals should not be limited to the $64 per hour rate previously imposed in this litigation.[6] In this case, Mr. Frost requested his standard hourly rate of $210 per hour, and Ms. Franolich requested her standard hourly rate of $165 per hour. The Court finds that the current maximum rate under the PLRA – $190.50 per hour – is appropriate for Mr. Frost. The Court also finds Ms. Franolich's standard rate of $165 per hour to be reasonable for her hours.

### 3. Reasonable Hours

Plaintiffs submit billing records (including time spent on filing the original Motion and Reply as described in the Supplemental Motion) as follows: 252.70 hours for Mr. Pooser, 362.60 hours for Mr. Watkins, 134.7 hours for Ms. Reynolds, 19.7 hours for Anna E. Courtney ("Ms. Courtney"), an associate at Stoel Rives who worked on the Supplemental Motion, 532.1 hours for Ms. Franolich, and 46.2 hours for Mr. Frost (Dkts. 994-4, 1000-3). The total fee amount for attorney time using the PLRA-capped rate ($190.50 per hour) is thus $146,094.45. The total fee amount for Mr. Frost using the PLRA-capped rate ($190.50 per hour) is $8,801.10. The total fee amount for Ms. Franolich using her standard rate of $165 per hour is $87,796.50.

### B. Specific Objections

IDOC makes 119 specific objections[7] to Plaintiffs' claims for fees and costs. *See* Zahn Decl. Ex. A. IDOC argues that "[a] portion of the requested fees should be reduced to eliminate charges for duplicated work, administrative and clerical tasks, internal correspondence, and vague time entries." Opp'n at 2. IDOC often lists several reasons for each of its objections. The Court addresses the objections in groups.

### 1. Duplicative Time Entries; Objections Nos. 1, 18, 20, 22, 27, 32, 34, 45, 46, 49, 50–52, 55, 58, 60, 63, 65, 68, 83, 93, 95, 99

IDOC first argues that Plaintiff's billed time includes unnecessary duplication. Specifically, IDOC challenges fees incurred when more than one of Plaintiffs' attorneys and/or

---

[6] As the Ninth Circuit recognized in *Gonzalez*, courts are not constrained to billing rates used in "previous cases." *Gonzalez*, 729 F.3d at 1207.

[7] IDOC's specific objections to Plaintiff's attorney fee requests are provided in Exhibit A to Ms. Zahn's Declaration (Dkt. 997-2) Ex A. The document is entitled "Plaintiffs' fees that should be disallowed." For clarity, the Court has labeled IDOC's specific objections from 1 to 119.

paralegals attended meetings with Defendant and the Special Master, prepared for depositions, attended depositions, and analyzed exhibits. *See, e.g.*, Zahn Decl. Zahn Decl. Ex. A Objections 1, 18, 27, 46. A court may reduce fees if it finds them to be duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). In this case, however, it seems clear the fees incurred were reasonable. Given the complexity of the investigation and the compressed timeline, the Court finds it appropriate for attorneys and paralegals to review the same documents, and for two attorneys to be present during important meetings with opposing counsel and the Special Master. *See Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 ("Here, the participation of more than one attorney constituted a reasonable necessity, given the complexity of the legal issues and the breadth of the factual evidence involved in this case."). Further, multiple time entries for deposition preparation is not convincing evidence of duplicative or excessive fees. Rather, it is reasonable that Plaintiffs' counsel prepared for a deposition in late April and then again undertook additional preparation in late May. *See, e.g.*, Zahn Decl. Ex. A Objection 46. The Court therefore declines to reduce the requested fees on this basis.

### 2.  Not Related to Furthering Sanctions Motions; Objections Nos. 2, 4, 29, 30, 39, 84, 98, 110

Next, IDOC objects to several tasks it views as unrelated to Plaintiffs' Motion for Sanctions. For instance, IDOC objects to Plaintiffs' tracking of the Canfield matter and reviewing the deposition schedule. *See* Zahn Decl. Ex. A Objection 29, 39. These tasks, however, were an important part of Plaintiffs' research and preparation for the sanctions motion.

The Court does agree with Defendant regarding Objection No. 4 (research regarding Corizon and St. Alphonsus), Objection No. 84 (review of Dr. Arnold's appointment), and Objection No. 98 (correspond with opposing counsel regarding Dr. Arnold). Because these time entries were unrelated to the Motion for Sanctions, the Court disallows those time entries. Accordingly, Ms. Franolich's time is reduced by 1.3 hours and Mr. Watkins's time reduced by .5 hours.

### 3.   Internal Administrative Conference with Entire Litigation Group Are Duplicative and Unnecessary; Objections Nos. 3, 5–9, 12, 14, 15, 19, 21, 23, 24, 28, 31, 33, 36, 37, 39, 41, 47, 48, 54, 56, 59, 61, 62, 64, 66, 67, 69, 71, 72, 74, 75, 77, 79, 81, 85, 87, 89, 91, 92, 94, 96, 98, 102, 105, 109, 111, 113, 114, 116-118

IDOC challenges Plaintiffs' time entries for various meetings between Plaintiffs' attorneys and counsel. The Court finds these entries are reasonable, considering that staff meetings are necessary to coordinate efforts and provide updates on the status of the case. *See* Pooser Decl. ¶ 15 ("But intra-office conferences were a necessary part of coordinating a case of this kind and to prevent duplication, particularly given the fast and diligent pace required to complete discovery, file for judicial relief, and prepare for the evidentiary hearing."). The time entries reflect that Plaintiffs' attorneys and paralegals corresponded with each other to discuss legal briefs, review deposition schedules, and discuss strategy for the hearing. *See, e.g.*, Decl. Zahn Decl. Ex. A Objections 36, 39, 89. These meetings are a normal part of legal practice. Therefore, the Court declines to reduce the requested fees on this basis.

### 4.   Clerical Tasks; Objections Nos. 10, 11, 13, 16, 17, 25–27, 29, 34, 35, 38, 40, 42–44, 49, 50-53, 57, 70, 73, 76, 77, 78, 80, 82, 83, 88, 90, 95, 97, 99–101, 103,104, 106–108, 110, 119

IDOC objects to a series of tasks it views as clerical in nature. The Supreme Court has stated that "[i]t has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri*, 491 U.S. at 288 n.10.

It is entirely appropriate for paralegals to complete these types of tasks. As Plaintiffs explain, "the time entries that Defendants argue are clerical are not tasks such as calendaring or filing, but gathering and reviewing evidence, preparing documents, and assisting in

depositions." Reply at 9; *see, e.g.*, Zahn Decl. Ex. A Objections 27, 34, 70, 95. The Court therefore declines to reduce fees for these tasks. Further, the Court rejects IDOC's classification of drafting a subpoena and revision of briefs as clerical tasks. *See* Zahn Decl. Ex. A Objections 50, 77.

The Court does reduce Plaintiffs' request for purely scheduling matters. Zahn Decl. Ex. A Objection 3, 13, 34. This amounts to a reduction of .7 hours for Ms. Franolich.

Additionally, IDOC objects to "clerical tasks concerning electronic evidence presentation software unnecessary where no electronic evidence presentation was done at hearing." After reviewing these objections, the Court declines to award fees for Plaintiffs' use of trial director, an organizational management tool. Accordingly, Ms. Franolich's hours are reduced by 5.1 hours.[8] The Court also reduces Mr. Frosts's time by 1.7 hours. *See* Objection 104.

### 5.  Vague; Objections Nos. 38, 40, 42, 43, 52, 53, 57, 70, 73, 77, 78, 80, 83, 88, 90, 93, 95, 97, 100, 101, 103, 104, 106, 107, 108, 110, 119

IDOC objects to several of Plaintiffs' time entries on vagueness grounds. The Court finds that these objections are unwarranted. For instance, Defendant objects to time entries such as "prepare for the deposition of Brian Farris" and "prepare exhibits for the hearing in this matter." *Id*. Objections 53, 80. These entries are sufficiently detailed. Therefore, the Court declines to reduce the fees on this ground.

### 6.  Timekeeper Error Objections Nos. 112, 115

IDOC objects to two time entries on the grounds of timekeeper error. Specifically, on August 18, 2015, Mr. Watkins spent .7 hours on a phone conference with his client, but the entry was billed for 1.2 hours; and on September 4, 2015, Ms. Reynolds completed 5.6 hours of work but Plaintiffs billed for 7 hours. Given these timekeeper errors, Mr. Watkins' time is reduced by .5 hours and Ms. Reynold's time is reduced by 1.4 hours.

### 7.  Block Billing Objections Nos. 83, 101

Finally, IDOC objects to Plaintiffs' block billing for two entries: Mr. Frosts' July 2, 2015 time entry of 7.2 hours for "document control" and witness outline preparation, and Ms.

---

[8] The hours are reduced specifically for the portions allocated for trial director and live testimony streaming preparation on July 1, 6, 16, 18, 20, and 21, 2015. *See* Objections 82, 86, 97, 100, 103, 104, 106.

Franolich's July 19, 2015 time entry of 4.7 hours related to the preparation of exhibits and preparation of witness outlines. The "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Block billing "makes it more difficult to determine how much time was spent on particular activities." *Id.*; *see also Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours that were block billed because "many time records lump together multiple tasks, making it impossible to evaluable their reasonableness"). Here, Plaintiffs have not specifically delineated how many hours were dedicated to each of the specific tasks. Therefore, the Court finds that a 20% reduction for these hours is reasonable. *See Welch,* 480 F.3d at 948 (relying on California State Bar's Committee on Mandatory Fee Arbitration Report and finding reduction of block billing by 20% to be reasonable); *see also Huhmann v. FedEx Corp.*, No. 13-cv-00787-BAS(NLS), 2015 WL 6127198, at *8 (Oct. 16, 2015) (same). As such, Mr. Frost's time is reduced by 1.44 hours and Ms. Franolich's time is reduced by .94 hours.

### 8.  Conclusion Regarding Reasonable Fees

After reviewing Plaintiffs' timekeeping records, the Court is satisfied that the hours billed are reasonable and appropriate in this case. The Court declines to reduce the hours beyond the small reduction for the timekeeper hour, clerical tasks, and block billing as discussed above.

### C.  Costs

Plaintiffs also request $21,838.20 in costs associated with the case. Mot. at 1. IDOC asks the Court to reduce this total by $7,993.81. Opp'n at 13.

Federal Rule of Civil Procedure 54(d) "generally provides for an award of costs to the prevailing party. A Rule 54(d)(1) award includes taxable costs, and a Rule 54(d)(2) award of attorney's fees may include 'nontaxable expenses.'" *Gomez v. Reinke*, No. CV91-299-S-LMB, 2008 WL 3200794, at *16 (D. Idaho 2008). "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000). The Court must give its reasons for denying costs. *Id.*

Under District of Idaho Local Rule 54.1, a party can seek to recover: (1) clerk's fees and service fees; (2) trial transcripts; (3) deposition costs; (4) witness fees, mileage and subsistence; (5) copies of papers and exhibits; (6) maps, charts, models, photographs, summaries, computations, and statistical summaries; (7) interpreter and translator fees; (8) other items "with prior Court approval[;]" and (9) certificate of counsel.

The primary dispute is over the $6,788.75 Plaintiffs request for copies. As stated in a 2010 order, "[t]he Court agrees with Defendants that the photocopies in the normal course of representation should be absorbed in the hourly rate being charged by the attorney." Order Granting in Part and Denying in Part Motion for Attorney's fees, March 30, 2010 (Dkt. 775) at 9. District of Idaho Local Rule 54.1(c)(5) provides: "The cost of an exhibit necessarily attached to a document (or made part of a deposition transcript) required to be filed and served is taxable." The rule further states that the "cost of reproducing copies of motions, pleadings, notices and other routine case papers is not taxable."

Plaintiffs made copies between May 18 and June 16 and July 10 and July 15, 2015 in preparation for depositions; they made copies between June 17 and June 30 for exhibits related to their Motion for Sanctions; and they made copies between July 17 and July 22, 2015 for hearing exhibits. Second Pooser Decl. ¶ 5. Given the Court's prior direction in this area, the Court declines to award costs for the copies[9] made between May 18 and June 16 ($770.16) and July 10 and July 15, 2015 ($1,324.56), as they were not made in connection with any court filings. *See* Mot. Attach. 5; Ex. C, Part 1. Therefore, the requested amount is reduced by $2,094.72. Plaintiffs have not specified what copies were made prior to May 18 and after July 22;[10] therefore, the Court reduces costs for those copies, which totals $568.44. *Id.* The Court cannot determine to what extent the photocopies made between June 17 and June 30, 2015 ($1,229.64) and July 17 and July 22, 2015 ($2,326.92) were necessary for court filings or presentation to the Court as part of the evidentiary hearing. *Id.* Accordingly, the Court will

---

[9] The Court only declines to award costs labeled "Document Reproduction," not the "Special Copy" entries, which correspond with copies of official court documents.

[10] For instance, Plaintiffs request $19.20 for copies made on May 7, 2015, and $32.88 for copies made on August 26, 2015.

decrease the costs requested by 50%, or $1,778.28. Thus, in total, the costs for photocopies are reduced by $4,441.44.

IDOC objects to a few other costs incurred by Plaintiffs. The Court finds that Westlaw research costs, postage costs, the witness and services fees, and the inmate phone calling fund are appropriate. However, the Court declines to award costs for airline ticket change fees ($25) and lunch expenses during the hearing ($64). Therefore, the costs are further reduced by $89.

In total, Plaintiffs' requested award for costs is reduced by $4,530.44. Thus, Plaintiffs will be awarded $17,307.76 for costs.

### D.  Presumptive Lodestar

After factoring in the reductions, the attorney and billing time (including the supplemental attorney fees) is as follows: 252.70 hours for Mr. Pooser, 361.60 hours for Mr. Watkins, 133.30 hours for Ms. Reynolds, 19.7 hours for Ms. Courtney, 43.06 hours for Mr. Frost, and 524.76 hours for Ms. Franolich. Using the PLRA-capped attorney rates and the paralegal rates discussed above, and adding $17,307.76 for costs, the presumptive lodestar calculation totals $255,180.64.

### E.  Whether a Lodestar Enhancement is Appropriate

Plaintiffs' counsel requests a multiplier from the PLRA rates. A fee applicant bears the burden of proving that a fee enhancement is necessary, and must produce "specific evidence" supporting the award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

Defendants argue the "PLRA does not expressly permit an upward enhancement from its statutory rate . . . ." Opp'n at 7. However, other courts have allowed enhancements from the PLRA rate. *See Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1083 (D. Idaho 2014) (granting a 2.0 multiplier and 1.3 multiplier for attorney's fees) ("To read the statute as setting an absolute maximum arguably eliminates the well-established enhancement framework in § 1988 litigation, a drastic step."); *see also Ginest v. Bd. of Cty. Comm'rs of Carbon Cty.*, 423 F. Supp. 1237, 1241 (D. Wyo. 2006) (finding a 25% fee multiplier for attorney's fees in a PLRA case; *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1287 (D. Wyo. 2004).

In the appropriate case, "the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc . . . .*" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). The *Kerr* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. "The court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Cairns*, 292 F.3d at 1158 (citing *Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n.1 (9th Cir. 1981)).

In adjusting an award, however, the district court must focus on the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). Factors one through four and six are considered subsumed in the lodestar calculation. *Id.* at 364 n.9. Those *Kerr* factors determined not subsumed in the lodestar calculation therefore include: "(5) the customary fee . . . (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*; *Kerr*, 526 F.2d at 70; *see Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) *aff'd*, 623 F.3d 1043 (9th Cir. 2010).

In most cases, the lodestar amount generally may not be enhanced on the basis of an attorney's performance. *Perdue*, 559 U.S at 543 However, the Supreme Court has held that in certain "'rare' and 'exceptional'" circumstances, "superior attorney performance is not

adequately taken into account in the lodestar calculation" and therefore an enhancement justified.

Plaintiffs' counsel argue that an enhancement is appropriate for three core reasons: (1) the PLRA's fee cap undervalues Plaintiffs' counsel significantly; (2) Plaintiffs achieved extraordinary results; (3) it is difficult for prisoner plaintiffs to find qualified counsel to take cases for which only declaratory or injunctive relief might be available because of the law compensation. *See* Mot. at 9–12.

Defendant responds that no upward enhancement from the PLRA rate cap is warranted. IDOC advances three specific arguments: (1) Plaintiffs' counsel true market value in civil rights cases is appropriately measured by the PLRA rate; (2) Plaintiffs' counsel has not experienced an extraordinary outlay of expenses that would justify an upward departure; and (3) there has not been an exceptional delay in payment of fees to Stoel Rives.[11] Opp'n at 7–10.

### 1. Undervaluing Counsel and Excellent Results

The Court considers the arguments for a multiplier based on undervaluing counsel and on excellent results together. The Supreme Court has addressed the extent to which extraordinary results may justify a fee enhancement. *See Perdue*, U.S. at 554. The *Perdue* Court treated the "quality of an attorney's performance" and "the results obtained" as one factor, determining that "superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance." *Id*. Circumstances in which attorney performance can justify enhancement are "'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id*. (quoting *Blum*, 465 U.S. at 897). The only such "rare and exceptional" circumstance detailed by the *Perdue* Court that is relevant here is where "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id*. at 554–55. If the district court does find an enhancement

---

[11] IDOC argues the Supreme Court's decision in *Perdue* limited the enhancement of fees to three particular situations. Opp'n at 7. However, a close reading of *Perdue* reveals the three situations IDOC references are simply factors in the Court's analysis of "superior attorney performance." *Perdue*, 559 U.S. at 543–44. The Supreme Court's decision did not constrain enhancement to only these three circumstances.

appropriate, it "should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate." *Id.* at 555.

Here, the performance of Plaintiffs' counsel was exceptional. Plaintiffs' counsel learned of the IDOC's misconduct in mid-February 2015 and quickly mobilized to investigate the serious allegations. Plaintiffs conducted numerous depositions in a short time period, submitted its Motion for Sanctions in June, prepared for the two-day evidentiary hearing, and ultimately presented a compelling case to the Court. Through this process, Plaintiffs uncovered substantial evidence that IDOC altered, destroyed, and fabricated medical evidence. As the Court wrote in its Sanctions Order, "[a]ttempts to mislead the Court strike at the heart of the judicial process and cannot be ignored even if the parties have made progress since then." Sanctions Order at 17–18. The Court again acknowledges that IDOC has made significant progress since the special master's visits in 2011 and 2012. At the same time, the Court recognizes that in bringing the Motion for Sanctions, Plaintiffs counsel's excellent performance yielded excellent results for their clients. *See* Mot. at 11; Mot. Ex. D at 1 (concerning use of dry cells); *see also* Second Declaration of W. Christopher Pooser ("Second Pooser Decl.") ¶ 7.

The Court finds that counsels' lodestar hours do not fully reflect their success because the quality of the work that produced these results is underrepresented in the hourly fee. Plaintiffs have provided specific evidence to this effect. For instance, Plaintiffs submitted a declaration from Howard Belodoff, a civil rights litigator in Idaho with considerable experience. Declaration of Howard A. Belodoff ("Belodoff Decl.") (Dkt. 994-14). Mr. Belodoff currently charges $425 per hour for his federal civil rights litigation practice, which involves representation of prison and jail inmates and civil rights cases class actions seeking injunctive, declaratory, and monetary relief. Belodoff Decl. ¶¶ 1, 7, 14. According to Mr. Belodoff, the hourly rates sought by Plaintiffs' attorneys "are similar to what other attorneys with similar reputation and experience charge in Boise in similar types of cases, and are reasonable for prosecuting an action dealing with prisoner civil rights." *Id.* at 11. Indeed, he states that "[c]ounsel's experience could support an even higher hourly rate." *Id*.

Further, Plaintiffs provided "specific proof linking the attorney's ability to a prevailing

market rate." *Perdue*, U.S. at 554. An affidavit from J. Walter Sinclair, a partner with Holland & Hart, speaks generally to the legal market in Boise. Mr. Sinclair's normal hourly rate is approximately $435 per hour, and his firm charges between $195 per hour and $495 per hour for the litigation services of attorneys in the Boise office. Sinclair Decl. ¶¶ 4, 10. He adds that Holland & Hart charges between $180 per hour and $205 per hour for the litigation services of paralegals based in Boise. *Id.* ¶ 10. Further, the PLRA rate "is well below the market rate for work involved in a "complex and difficult case" like this. *Id.* ¶¶ 5, 12.

IDOC's arguments to the contrary are unpersuasive. Defendant's main argument is while Plaintiffs' counsel are capable attorneys, their experience with federal civil rights cases is limited. *See* Opp'n at 8–9. The Court notes that Stoel Rives began representing Plaintiffs pro bono in January 2004. Further, IDOC's argument does not diminish the extraordinary results Plaintiffs' counsel achieved in this case. IDOC further contends that Plaintiffs should only be awarded "what the market will bear for this type of case." *Id.* at 9. But IDOC has not supported this statement with any evidence of what the market bears for complex federal civil rights cases. Plaintiffs, on the other hand, have produced evidence through Mr. Belodoff's declaration that the fees requested by Plaintiffs are commensurate with the rates of attorneys who handle complex federal civil rights cases in Idaho. Thus, based on the present record, Plaintiffs have provided "specific proof linking the attorney's ability to a prevailing market rate." *Perdue*, 559 U.S. at 543.

The Court therefore finds a multiplier appropriate to reasonably compensate counsel for their extraordinary performance in this matter.[12] Plaintiffs have submitted evidence suggesting that Mr. Pooser's billing rate is $375 per hour, Mr. Watkins' billing rate is $265 per hour, and that Ms. Reynold's billing rate is $240 per hour. *See* U*nited Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the

---

[12] The Court notes that enhancements are being awarded for Mr. Pooser, Mr. Watkins, and Ms. Reynolds. Based on the existing case law, the Court declines to grant an enhancement for paralegals; therefore, Mr. Frost's remains at $190.50 per hour and Ms. Franolich at her normal billing rate of $165 per hour. The Court also declines to grant an enhancement for Ms. Courtney, as it appears her involvement in this matter is limited to working on the present fees Motion.

prevailing market rate."). The Court accordingly grants a 1.97 multiplier for Mr. Pooser's hours, a 1.39 multiplier for Mr. Watkin's hours, and a 1.26 multiplier for Ms. Reynold's hours.[13] The Court grants Plaintiffs the fees incurred in briefing the present Motion, Reply, and Supplemental Motion. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

## 2. Risks and Incentives to Obtain Competent Counsel

Plaintiffs also argue a multiplier is appropriate in light of the risk in taking contingent civil rights cases and the need to give other counsel incentives to take similar cases. A district court may enhance a fee award when "payment for attorney's services is contingent upon success and the attorney bears the risk of nonpayment in case of failure." *Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (internal citation and quotation marks omitted). This type of enhancement is appropriate if "two prerequisites" are met: "First, . . . without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market," and, "[s]econd, any enhancement for contingency must reflect the difference in market treatment of contingent fee cases as a class, rather than . . . the riskiness of any particular cases." *Id.* (quoting *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988)) (internal citations and quotation marks omitted).

The Court finds Plaintiffs are deserving of an enhancement under this theory. Plaintiffs' counsel submits declarations making clear that prisoners who seek counsel for injunctive relief lawsuits face significant difficulty in finding such counsel. *See Gomez v. Gates*, 804 F. Supp. 69, 78 (C.D. Cal. 1992). Mr. Beladoff's declaration speaks directly to this issue:

> From my experience in representing prison and jail inmates throughout my career, including against the Idaho Department of Corrections, I know that prisoner cases are time-consuming and difficult, the hourly rates are limited by the PLRA, the financial ability of the defendants to mount a defense and litigate the case is far greater than the plaintiffs, and there is a lack of funds to cover the costs of diligent and effective representation, discovery and experts witnesses. I know of *no* private attorneys in Boise who in my opinion would have been willing to pursue a class action prisoner case over an extended period of time because they are undesirable and a financial hardship . . . . Most Idaho attorneys and law firms are simply unwilling to

---

[13] These multipliers differ slightly from Plaintiffs' requested multipliers given Plaintiff's mistaken maximum rate under the PLRA ($213 per hour).

undertake a contingency fee case because of the commitment of time and outlay of expenses that is necessary to represent a class of prisoners in a case seeking only injunctive and declaratory relief.

Beladoff Decl. ¶¶ 14–15. Similarly, Mr. Sinclair expressed he would "strongly advise" against his firm undertaking such a case. Sinclair Decl. ¶ 13. The Court credits these statements, particularly because IDOC offers no direct response.

Instead, IDOC asserts that no enhancement is warranted because Plaintiffs' counsel has previously received fee awards in this case, and because there has not been an exceptional delay in payment of fees to Stoel Rives. Opp'n at 9–10; *see also* Response Ex. 3 Affidavit of Cindy McMackin (detailing IDOC's past payments to Stoel Rives). Neither argument is relevant, as Plaintiffs have not moved for an enhancement on these theories. Further, the fact that Plaintiffs' counsel previously received awards in the course of this lengthy litigation does not bear on the issue of whether fee awards are appropriate here.

Accordingly, the Court finds that the multiplier amounts set out in the previous section are sufficient to serve the interests articulated here. This analysis thus serves as an alternate sufficient basis for the same fee enhancement granted above.

## F. Final Calculation

Using a rate of $375 per hour for Mr. Pooser, $265 per hour for Mr. Watkins, $240 per hour for Ms. Reynolds, $190.50 for Ms. Courtney, $190.50 for Mr. Frost, and $165 per hour for Ms. Franolich, and including the $17,307.76 for costs, the total award amount for attorney's fees and costs is $338,427.44.

## G. Disposition

After considering the totality of the record and the arguments by counsel, the Court awards Plaintiffs' counsel $338,427.44 in fees and costs. The Court finds this award is reasonable and appropriate based on its analysis. Plaintiffs' Motions (Dkts. 994, 1000) are GRANTED.

DATED:

_____

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE