**LAWRENCE G. WASDEN**
ATTORNEY GENERAL OF IDAHO

**MARK A. KUBINSKI, ISB # 5275**
Lead Counsel, Corrections Section
Deputy Attorney General
Idaho Department of Correction
1299 N. Orchard St., Suite 110
Boise, Idaho  83706
Telephone: (208) 658-2097
Facsimile:   (208) 327-7485
Email:  mkubinsk@idoc.idaho.gov

**COLLEEN D. ZAHN, ISB # 6208**
**BRIAN V. CHURCH, ISB # 9391**
Deputy Attorneys General
Civil Litigation Division
954 W. Jefferson – 2nd Floor
PO Box 83720
Boise, Idaho  83720-0010
Telephone:  (208) 334-4137
Facsimile: (208) 854-8073
Email:  colleen.zahn@ag.idaho.gov
Email:  brian.church@ag.idaho.gov
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER D. BALLA, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>IDAHO STATE BOARD OF<br>CORRECTION, *et al.*,<br><br>          Defendants. | Case No. CV 81-1165-S-BLW<br><br>**DEFENDANTS'**<br>**PREHEARING MEMORANDUM** |

      The plaintiffs have asked that the Court hold the defendants (collectively IDOC) in

contempt based on IDOC's self-reported deviations of the Modified Compliance Plans (MCPs).

Because the Court has determined that an abbreviated hearing is appropriate, dkt. 1167, IDOC

**DEFENDANTS' PREHEARING MEMORANDUM – 1**

will present witness testimony that will, from a broad perspective, show IDOC's substantial compliance with the MCPs after the deviations. As the plaintiffs have also raised and are expected to put forward testimony from inmates about their individual issues, IDOC will also have witnesses address these individual inmate issues. And given the abbreviated nature of this hearing, IDOC will rely on its briefing and affidavits in opposition to the plaintiffs' contempt motion, in addition to the testimony and exhibits IDOC will offer at the hearing next week. Finally, to satisfy the Court's request, dkt. 1167 at 5, IDOC submits this prehearing memorandum to address what evidence it will present and what it will show. At end, this evidence should convince the Court to deny the contempt motion, or otherwise find that no actual damages were shown to result from the deviations and find that coercive relief is not necessary.

## I. CIVIL CONTEMPT STANDARD

This civil contempt proceeding was initiated by the plaintiffs on the basis of IDOC's self-reported deviations from the MCPs. For civil contempt, the initial burden of production is on the complaining party to come forward with evidence that the alleged contemnor violated a specific and definite order of the court; the complainant must make this showing by clear and convincing evidence. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (*citing Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). Once the complainant makes this showing, the burden is then upon the alleged contemnor to generally demonstrate why it was unable to comply. *Id.* (citing *Stone*, 958 F.2d at 856 n.9). That is, the alleged contemnor must then put on its defense.

There are, generally, three defenses to civil contempt. First, a party's substantial compliance with a court order, even if the party has violated the court order, is a defense. *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). This is so as long as the party has "taken 'all reasonable steps' to comply with the court order." *Id.* (quoting *Vertex Dist., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)). In short, "technical or inadvertent violations…will not support a finding of civil contempt." *Stone*, 968 F.2d at 857.

**DEFENDANTS' PREHEARING MEMORANDUM – 2**

(9th Cir. 1992). Next, a party's present inability to comply with a court order is a defense to civil contempt. *United States v. Rylander*, 460 U.S. 752, 757 (1983). And third, to the extent that a party makes a good faith and reasonable interpretation of a somewhat vague order, and acts on that interpretation, the party might avoid contempt. *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953-54 (2014); *In re Dual-Deck Video Cassette Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

## II. HOW IDOC WILL SHOW THAT THE PLAINTIFFS' CONTEMPT MOTION SHOULD BE DENIED.

Given that this is an abbreviated hearing, IDOC has limited its witnesses that it has identified to Dr. Brent Gibson, Ashley Dowell, Rona Siegert, Michael Grace, Anne Lawler, Jeremy Clark, and Warden Keith Yordy. In addition to their testimony and the exhibits introduced through them, IDOC relies on its briefing and affidavits submitted in opposition to the plaintiffs' contempt motion.

### A. IDOC will present witnesses that will address individual inmate issues, even though the individual inmate issues did not result from the deviations, are not deviations themselves, and do not establish contempt.

Although this proceeding should be about deviations from the MCPs, the plaintiffs in their contempt briefing referred to several individual inmate issues. *E.g.,* Dkts. 1090-1 at 14-15, 1159 at 12-14. IDOC responded to these issues through its briefing and affidavits, which were replete with testimony and medical records demonstrating the appropriate and constitutional care received by the various inmates. But given the plaintiffs' recent disclosure of the inmates the plaintiffs wish transported for next week's hearing, and given the various deposition questions asked by plaintiffs' counsel, it is apparent to IDOC that the plaintiffs will again raise at the hearing issues related to individual inmates and present testimony from some of these inmates.

These individual inmate issues were not the deviations upon which this contempt proceeding sprang from, nor are the individual inmate issues violations of a specific and definite court order, namely the MCPs. But to address the plaintiffs' presentations, IDOC will put forward testimony to address the individual inmate issues. IDOC's Health Services Director,

Rona Siegert, will testify about the various inmate issues and address the allegations by the inmates. Amongst the individual inmate issues identified by the plaintiffs is one inmate whose toe was amputated. While at ISCI, one of the inmate's treating medical staff was Michael Grace, a registered nurse employed by Corizon. Mr. Grace will testify concerning the care that this inmate received. Another individual inmate identified by the plaintiffs lost fingers due to frostbite. Ms. Siegert will testify about the medical care provided to the inmate. IDOC will also present testimony from the Warden of ISCI, Keith Yordy, concerning the circumstances that led to the frostbite. Ms. Siegert is also expected to testify about the care provided to other inmates identified by the plaintiffs. Warden Yordy may also provide testimony that speaks to some of these individual issues.

Beyond individual inmate medical or mental health issues, the plaintiffs informed the IDOC's counsel just days ago that the plaintiffs expect to proffer testimony from a former inmate of IDOC, who was for some time housed at ISCI. This inmate filed a complaint against a Corizon medical provider with the Idaho Board of Medicine. Testifying for IDOC, Anne Lawler, the Executive Director of the Idaho Board of Medicine, will provide the Court with the Board of Medicine's investigation file on this complaint, including its ultimate decision to close the complaint without action.

These individual inmate issues are not evidence concerning or related to the deviations, nor are they evidence of violations of a specific and definite court order. In short, these issues are not presented for the contempt proceeding, so much as to have the Court consider their individual grievances. The testimony and evidence offered by IDOC in response will show that these inmates received adequate and constitutional medical care. The testimony will demonstrate that these individual inmate issues were not the result of, or otherwise related to, deviations and did not involve contumacious conduct.

**DEFENDANTS' PREHEARING MEMORANDUM – 4**

**B. IDOC will present evidence to show its substantial compliance with the MCPs, including evidence of how it corrected its deviations.**

Returning to what actually underlies this contempt proceeding, IDOC Chief of Prisons Ashley Dowell will testify about how she assumed the role overseeing the Balla litigation in spring 2015, and how she learned of the deviations. Although Chief Dowell was not involved in the Balla litigation prior to 2015, other IDOC witnesses were. Ms. Siegert will provide the Court with insight into how IDOC addressed the requirements under the MCPs before the deviations were discovered through the efforts of Chief Dowell, as will Warden Yordy.

Chief Dowell, Ms. Siegert, and Warden Yordy will also provide the Court with testimony of how IDOC completed a line-by-line review of the MCPs to determine its compliance, and the steps to correct the deviations upon learning of them. IDOC will also present testimony as to when the deviations were corrected, how they were corrected, and how this changed items such as the audit tools and the monthly health services report card (known as the Balla HSR). This testimony from Chief Dowell and Ms. Siegert will prove that IDOC corrected its deviations and is substantially compliant with the MCPs. Their testimony will also discuss areas where it has been unable to comply with the MCPs.

Further, IDOC will address specific deviation issues raised in plaintiffs' briefing. These include suicide risk training, with testimony from Warden Yordy and IDOC Clinical Supervisor Jeremy Clark; issues with medical staff, with testimony from Chief Dowell, Warden Yordy, and Ms. Siegert; the inmate companion program, with testimony from Warden Yordy; care provided in the long-term care unit, with testimony from Ms. Siegert; and the electronic medical record in use at ISCI, with testimony from Chief Dowell. Warden Yordy will also provide testimony in response to a former IDOC employee who plaintiffs just recently identified as a witness that will testify concerning IDOC's Medical Annex and concerning an individual inmate issue.

In sum, the evidence and witness testimony will establish IDOC's substantial compliance with the MCPs, and the plaintiffs cannot establish IDOC engaged in contumacious conduct.

**C. The NCCHC Resources, Inc. audit proves IDOC's substantial compliance with the MCPs and establishes the care at ISCI meets constitutional requirements.**

The NCCHC Resources, Inc. (NRI) audit validates IDOC's substantial compliance with the MCPs. That audit was conducted by a team of four auditors, jointly selected by the parties, with tools the parties jointly developed with the Court's assistance. The defendants will present the testimony of the Chief Health Officer for NRI, Dr. Brent R. Gibson. Doctor Gibson, who was present at ISCI for the first two days of the audit, and who participated in the daily meetings between the auditors and the parties' counsel, will introduce the NRI audit report into evidence. He will also discuss the qualifications of the auditors, and provide a general overview of the audit process.

The testimony of Chief Dowell, Ms. Siegert, Dr. Gibson, and Warden Yordy will establish that the auditors were onsite at ISCI for a week reviewing records, meeting with randomly selected inmates, meeting with the class representatives, analyzing medical files of an *additional* list of inmates provided by the class representatives, and asking questions of IDOC or Corizon staff. These witnesses will prove to the Court that the NRI auditors had what they needed in order to adequately conduct the audit, without interference from IDOC staff.

As the audit report makes plain, and as this Court appears to recognize, *see* dkt. 1166 at 5, IDOC satisfied the NRI auditors' requirements in large part. Admittedly, certain areas of concern were identified in the NRI report. But IDOC has responded to this report by correcting or taking significant steps to correct the remaining issues. Chief Dowell will detail for the Court IDOC's strong and corrective actions in response to the audit report. Ms. Siegert and Mr. Clark will testify about the audits they perform now, and in light of the NRI report findings, which audits they believe would be of value continuing after termination of the stipulation and MCPs.

**D. The plaintiffs cannot prove actual damages resulting from the alleged contempt, and their reliance on IDOC's contract with Corizon is misplaced, given that they were not parties or intended beneficiaries to the contract.**

As this Court identified in its prehearing order, dkt. 1167 at 2, the motion for contempt (dkt. 1090), IDOC's opposition (dkt. 1132), and the reply (dkt. 1152), "are the main vehicles for

addressing the contempt issues" and "the hearing should be focused on any factual dispute material to a finding of contempt and actual damages." In this contempt proceeding, the plaintiffs' theory has not been based on proving that the plaintiffs actually suffered damages as a result of the deviations or proving the amount of damages. They have, instead, advocated for their own liquidated damages by reference to the liquidated damages provision in the medical services contract between IDOC and Corizon.

Here, the plaintiffs in their contempt briefing advanced that they had been "denied the benefit of their bargain," and contended that IDOC had "failed to uncover delays in Plaintiffs' access to medical care and failed to ensure quality control was maintained." Dkt. 1090-1 at 27. For the latter category, the plaintiffs cited ISCI's mortality rate and the individual inmate issues as "symptomatic of [IDOC's] failures" and baldly asserted that they were entitled to compensation for their injuries. *Id.* at 27-28. Yet the plaintiffs were required to establish actual losses. *United States v. Mine Works of Am.*, 330 U.S. 258, 303-04 (1947). Walking through the plaintiffs' points, one party simply citing statistics and claiming that it has been denied the benefit of its bargain does not establish actual losses, such that the party should be compensated. Nor did the plaintiffs establish how the deviations caused any of the complained-of individual cases. The plaintiffs failed to offer adequate explanation or evidence with their contempt briefing for how the deviations *resulted in* actual harm to individual inmates.

As IDOC discussed in its opposition brief, compensatory sanctions must compensate the complainant for the *complainant's* actual losses. Dkt. 1132 at 8. Yet the plaintiffs, besides the problems identified above, hit another roadblock with the damages they request. The plaintiffs identified what they referred to as "a benchmark for a proper sanction" for the alleged contempt: the IDOC and Corizon medical services contract's liquidated damages provision. Dkt. 1090-1 at 28. But the plaintiffs attempt to use the dollar amount they pull from the contract's liquidated damages provision is much more than a benchmark; it is the figure the plaintiffs rely on for their calculation of the "appropriate compensatory penalties." *Id.* at 29.

**DEFENDANTS' PREHEARING MEMORANDUM – 7**

The plaintiffs' reliance on the liquidated damages provision in the IDOC and Corizon medical services contract is misplaced. First, the plaintiffs are not third-party beneficiaries of the IDOC and Corizon medical services contract. "Idaho case law is clear that the party claiming to be a third-party beneficiary must show that the contract expressly indicates that it was made for his or her direct benefit." *De Groot v. Standley Trucking, Inc.*, 157 Idaho 557, 562-63, 338 P.3d 536, 541-42 (2014). And the "mere mention of a third party in a contract does not render that party a third-party beneficiary absent a showing that the contract was made for that party's direct benefit." *Id.* at 562, 338 P.3d at 541. The plaintiffs have provided no evidence that they are direct beneficiaries of the contract, nor are they. The medical services contract at issue is a contract for Corizon to provide services to the *State*. Certainly, the inmates receive an incidental benefit from the services contract, in that they receive medical services, but just because a person is provided a benefit does not mean that the person is a third party beneficiary. *Cf. Clearwater REI, LLC v. Boling*, 155 Idaho 954, 961, 318 P.3d 944, 951 (2014). The inmates are incidental beneficiaries to the contract, but incidental beneficiaries are not in a position to sue upon a contract. *Partout v. Harper*, 145 Idaho 683, 687, 183 P.3d 771, 775 (2008).

Moreover, this is a contempt proceeding, not a contract action. Thus any attempt to sue upon the IDOC and Corizon contract is incompatible with the contempt proceeding initiated by the plaintiffs. Ultimately, what the plaintiffs are actually attempting is to re-write the stipulation to include a liquidated damages provision. But the stipulated motion contains no such liquidated damages provision. See Dkt. 842 at 11. Nor are liquidated damages the appropriate remedy for a contempt proceeding.

**E. The plaintiffs' contempt motion is barred by the doctrine of laches.**

One issue that plagues the plaintiffs' contempt motion is their delay in addressing these deviations. If a complainant has delayed filing its motion for contempt, the doctrine of laches may bar the claim. *See Melendres v. Arpaio*, 154 F. Supp. 3d 845, 849-55 (D. Ariz. 2016); *see also Breen v. Tucker*, 760 F. Supp. 2d 141, 144-45 (D.D.C. 2011). The party claiming laches,

here IDOC, must make a prima facie showing of unreasonable delay and prejudice to itself, before the burden of production shifts to the complainant to show that the complainant exercised reasonable diligence in filing the motion for contempt or to show that there was no prejudice to the party claiming laches. *See Melendres*, 154 F. Supp. 3d at 850; *Telink, Inc. v. United States*, 24 F.3d 42, 47 (9th Cir. 1994).

The first element, delay, focuses on when the complainant knew or should have known of the alleged contumacious conduct, and calculates the delay until the complainant filed the motion for contempt. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). Various reasons may make the delay reasonable or unreasonable. *See Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012). Whether the delay is reasonable is not fixed by "temporal boundaries"; rather the focus is "on the reasons why [the complainant delayed] assert[ing] its claims and the prejudice that delay may have caused." *Battelle Energy Alliance, LLC v. Southfork Sec., Inc.*, 3 F. Supp. 3d 852, 863-64 (D. Idaho 2014).

The second element, prejudice to the party raising laches, may take two forms. *See Danjaq LLC*, 263 F.3d at 952. The first, evidentiary prejudice, occurs where evidence is lost, stale, or degraded, or witnesses' memories have faded, or witnesses have died. *Id.* Expectation-based prejudice, alternatively, focuses on whether the party claiming laches "took actions or suffered consequences that it would not have, had the plaintiff brought the suit properly." *Id.*

Chief Dowell will testify for the defendants as to the plaintiffs' greater-than-six-month delay in responding to IDOC's self-reporting of the deviations, and more-than-17-month delay since that disclosure to file their contempt motion. Chief Dowell and Ms. Siegert will also provide evidence of the expectation-based prejudice IDOC has incurred, based on this delay.

IDOC will also present testimony, although it no longer carries the burden, to show that the plaintiffs failed to exercise reasonable diligence in not only filing their motion, but also in discovering the contempt—for again it was IDOC that self-reported its deviations, even though as the Court noted, the plaintiffs were to be monitoring for years prior to IDOC's self-disclosure. Dkt. 1166 at 4-5. This testimony will be substantiated by Chief Dowell, Warden Yordy, and Ms.

**DEFENDANTS' PREHEARING MEMORANDUM – 9**

Siegert. Ms. Siegert and Warden Yordy will testify concerning the many monitoring
opportunities provided to the class representatives. Some of the deviations could have been
detected just by looking at the monthly Balla HSR reports provided to the inmates and their
counsel. For others, the testimony will show how IDOC made its employees and its information
available to the plaintiffs, and how the plaintiffs had regularly requested information on a variety
of topics. Chief Dowell, Warden Yordy, and Ms. Siegert will also testify about the multitude of
information that is audited and reported out to the plaintiffs each month. The plaintiffs were
provided with a wealth of information, both by virtue of the stipulation and the MCPs, and at
their own request.

**F. Coercive relief is not needed, as IDOC is substantially compliant with the MCPs.**

In its July 3rd order, the Court announced that it was "inclined to deny the Motion for
Contempt or conclude that no coercive relief is warranted and no actual damage has resulted
from the failure of both parties to monitor according to the MCP terms." Dkt. 1166 at 6. The
testimony at the hearing, along with the pleadings and evidence filed in opposition to the
plaintiffs' motion, will show that the plaintiffs' contempt motion should be denied because it was
not timely raised and because IDOC has not engaged in contumacious conduct. Moreover, as
detailed above, there will be no proof of actual damages that resulted from the alleged
contumacious conduct. Finally, the defendants point out that coercive relief is no longer needed,
based on the NRI audit report, and based on the testimony that will be adduced at the hearing
from Chief Dowell about the steps IDOC has taken to address any areas of concern in the NRI
audit report.

**III. CONCLUSION**

The plaintiffs' contempt motion, was not only filed untimely, but was filed after IDOC
had taken significant steps to correct its deviations from the MCPs. IDOC was in substantial
compliance with the MCPs. Moreover, the NRI audit, conducted after the contempt motion was
filed, validates IDOC's substantial compliance. IDOC's evidence will also show the steps that

**DEFENDANTS' PREHEARING MEMORANDUM – 10**

IDOC has taken to correct the few concerns identified by the auditors. After hearing the witnesses' testimony and considering the admitted exhibits, and after considering the briefing and the affidavits submitted in opposition to the contempt motion, IDOC requests that the Court deny the plaintiffs' contempt motion. In the alternative, IDOC requests that the Court find that the plaintiffs have not suffered or proven actual damages, and further conclude that coercive sanctions are unnecessary.

Respectfully submitted July 20, 2017.

OFFICE OF THE ATTORNEY GENERAL
STATE OF IDAHO

BY_____/s/ BRIAN V. CHURCH_____
        BRIAN V. CHURCH
        MARK A. KUBINSKI
        COLLEEN D. ZAHN
        DEPUTY ATTORNEYS GENERAL
        Attorneys for the defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

W. Christopher Pooser
christopher.pooser@stoel.com

Elijah M. Watkins
elijah.watkins@stoel.com

Wendy J. Olson
wendy.olson@stoel.com

Anna Courtney
Anna.courtney@stoel.com

/s/ Brian V. Church_____
Brian V. Church

**DEFENDANTS' PREHEARING MEMORANDUM – 12**