UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER D. BALLA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>IDAHO STATE BOARD OF CORRECTION, et al.,<br><br>Defendants. | Case No. 1:81-cv-01165-BLW<br><br>**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE** |

**INTRODUCTION AND SUMMARY OF ORDER**

In March 2017, Plaintiffs filed a motion for contempt (Dkt. 1090), asserting that Defendants had violated the Court's June 6, 2014 Order (Dkt. 930) adopting Addenda A and B to the Modified Compliance Plans ("MCP") as part of the parties' Stipulated Motion to Modify Injunctive Relief (Dkt. 842). The MCP established ongoing monitoring of the medical and mental health care delivery system at Idaho State Correctional Institution and was negotiated between the parties with the assistance of the Honorable David O. Carter, the settlement judge in this case.

The undersigned referred the motion for contempt to Judge Carter. (Dkt. 1165.) Judge Carter held a hearing on the motion and, on September 28, 2017, issued a decision finding Defendants in contempt of the June 6, 2014 Order from its date of issuance until July 2016. (Dkt. 1202 at 28.) Judge Carter also determined that Plaintiffs did not prove

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 1**

that Defendants' contempt caused harm to any class member. (*Id.* at 67.) Finally, Judge Carter concluded that, by July 2016, Defendants had brought themselves into compliance with the June 2014 Order and that they are not presently in contempt. (*Id.* at 68.)

Judge Carter did not decide whether any particular remedy for the Defendants' past contempt was appropriate, instead leaving that determination to the undersigned judge.[1] (*Id.* at 69.) Moreover, Judge Carter made "no findings as to whether Defendants are currently operating in compliance with the Eighth Amendment such that termination of monitoring would be appropriate."[2] (*Id.* at 68 n.20.)

Judge Carter also found several instances of bad behavior on the part of the parties or their counsel with respect to the litigation of this case. The undersigned is concerned about this behavior. In an attempt to avoid litigation on this tangential issue when this case appears to be nearing its end, the Court will order counsel to confer to see if they can come to an agreement about a limited request for attorney fees and costs for Plaintiffs' counsel (given the limited success on their motion). (*See* Dkt. 1090-1 at 37.)

---

[1]     Judge Carter suggested that any remedies for Defendants' past contempt could "be determined when [the undersigned] rules on the upcoming termination motion in this case." (Dkt. 1202 at 69.) However, after considering that suggested approach, the Court has determined that Judge Carter has already made all of the findings necessary to consider such remedies. Further, the motion for contempt is fully briefed, including all of Plaintiffs' requests for relief, and all evidence has been taken. Therefore, the Court will consider the issue of remedies now.

[2]     Judge Carter accurately noted, however, that absent a "continuing Eighth Amendment violation[]," an extension of the monitoring period would be prohibited by the Prison Litigation Reform Act. (Dkt. 1202 at 30, citing *Hallett v. Morgan*, 296 F.3d 732, 742-44 (9th Cir. 2002), and 18 U.S.C. § 3626.) Although the Court need not determine at this juncture whether termination of the underlying injunctions is appropriate—the Court will await an appropriate motion to terminate to consider that question—it does appear that the monitoring established in the MCP has expired, as explained more fully below.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 2**

Accordingly, having reviewed the record, the Court finds that the parties' briefing and the transcripts of the hearing are adequate to determine the remedies issue before the Court, and that further briefing is not necessary. The Court enters the following Order concluding that Plaintiffs are not entitled to any remedy for Defendants' past contempt.[3] Specifically, (1) compensatory damages are not appropriate for Defendants' past contempt, (2) coercive damages are not appropriate because Defendants are no longer in contempt, and (3) an extension of the monitoring period is not appropriate because Defendants' contumacious behavior ended as of July 2016.

## DISCUSSION

### 1.     Potential Remedies for Defendants' Contempt

As noted above, Judge Carter left to the undersigned the determination of any remedy for Defendants' past contempt of the June 2014 Order.

In their motion, Plaintiffs requested the following remedies for Defendants' contempt: (1) compensatory damages in the amount of nearly $24.5 million; (2) coercive fines, to deter future contempt, in the amount of $601 per violation per day, with the possibility of increasing to $1,326 per violation per day; (3) an additional two-year monitoring period under the MCP; and (4) an award of "the full attorney fees and costs incurred by Plaintiffs in bringing" the motion for contempt. (Dkt. 1090-1 at 33-37.)

---

[3]       While some courts consider attorney fees and litigation costs a "remedy" in a contempt action, this Court prefers to deal with that issue separately in this matter.

ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING
OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 3

**A.     *Plaintiffs Are Not Entitled to Compensatory Damages***

As Judge Carter found, none of Defendants' actions that violated the MCP and the

June 2014 Order actually caused any harm to Plaintiffs. (Dkt. 1202 at 31, 67-68.)

Because a compensatory award for contempt is limited to the actual damages suffered as

a result of the contumacious acts, Plaintiffs are not entitled to any compensatory

damages. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)

("Where compensation is intended, a fine is imposed, payable to the complainant. Such

fine must of course be based upon evidence of complainant's actual loss . . . ."); *Inst. of*

*Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 959 (9th Cir.

2014) ("The Plaintiffs are also entitled to compensation for any actual damages suffered

and resources (such as fuel and personnel costs) that were wasted *as a result of* the

Defendants' contumacious acts interfering with the Plaintiffs' mission." (emphasis

added)).

In addition to failing to establish a causal connection between Defendants'

contempt and any compensable damage, Plaintiffs' counsel also requested—apparently

without any basis in fact or law—"compensatory damages" in the amount of nearly $24.5

million. Counsel's basis for this number? A *liquidated damages* clause found in a

contract between the IDOC and Corizon, Inc. (Dkt. 1090-1 at 33-35.) Plaintiffs did not

cite a single case to support their proposition that a liquidated damages clause in a

contract between the party in contempt and a non-party can be considered as, or be

substituted for, actual compensatory damages for the contempt. (Dkt. 1090-1 at 33-35.)

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING**
**OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 4**

Plaintiffs' failure to support this argument is unsurprising. Liquidated damages can be awarded where a consent decree *specifically provides* for a liquidated damages sum in place of actual damages as to the *parties who entered into* the agreement underlying the consent decree. *See, e.g., Uni Hosiery Co., Inc. v. Union Am. Int'l*, 2013 WL 12204320, at *10-11 (C.D. Cal. April 8, 2013). Here, the circumstances are entirely different. Further, there is a clear distinction in the law between compensatory and liquidated damages. *See In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1263 (9th Cir. 1982) ("[L]iquidated damages . . . are most useful where 'damages are uncertain in nature or amount or are unmeasurable . . . .'") (quoting *Priebe & Sons v. United States*, 332 U.S. 407, 411 (1947)).

Although Rule 11(b) allows an attorney to make "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Plaintiffs' counsel did not even attempt to provide a legal foundation for their request for their hybrid of compensatory/liquidated damages, citing no case law whatsoever for their argument. The Court has found no authority to transport a liquidated damages clause from an entirely different contract among different parties that has nothing to do with the stipulations or orders in this case into a compensatory contempt award for a different party, especially where no causal link between the contumacious acts and the alleged damages exists. Moreover, it has been clear since at least 1947 that a plaintiff is not entitled to compensatory damages without a showing that the contumacious behavior caused actual harm. *See United Mine Workers of Am.*, 330 U.S. at 304. As experienced

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 5**

civil litigators, Plaintiffs' counsel are charged with knowing that they have an ethical obligation not to pursue a claim that has no factual or legal basis.

**B.     The Court Will Not Impose Coercive Fines**

As part of his comprehensive Order Granting in Part and Denying in Part Plaintiffs' Motion for Contempt, Judge Carter found that Defendants are now in compliance with the Court's June 2014 Order and have been since July 2016. (Dkt. 1202 at 27-29.) Because coercive fines are intended "to coerce the defendant into compliance with the court's order," *United Mine Workers of Am.*, 330 U.S. at 303, the fact that Defendants are no longer in contempt leads the Court to conclude that coercive fines are inappropriate in this case.

**C.     The Court Will Not Extend the Monitoring Period**

Again, because Defendants brought themselves into compliance with the MCP and the Court's June 2014 Order as of July 2016, the Court concludes that any prospective equitable relief, such as extending the monitoring period, is unavailable as a remedy for Defendants' past contempt.

As Judge Carter noted, an additional extension of the monitoring period would be prohibited by the PLRA absent a continuous Eighth Amendment violation. *See Hallett*, 296 F.3d at 743 ("[I]n the absence of a 'current and ongoing' violation, there is no occasion to fashion prospective relief to cure the violation. In other words, if a violation no longer exists, the statute does not permit the court to order prospective relief.") (quoting 18 U.S.C. § 3626(a)(1)(A)). However, the Court expresses no opinion as to

whether the current medical and mental health care delivery system at ISCI currently complies with the Eighth Amendment; that issue would be more appropriately considered during termination proceedings.

The Court does note that the MCP and its monitoring period appear to have expired by the terms of the MCP (and by the passage of time). The MCP was not designed to operate in perpetuity. The monitoring period was initially set to end two years after approval of the MCP, in June 2016, by way of an audit by the National Commission on Correctional Health Care ("NCCHC").

As set forth in Section 6 of the Stipulated Motion, the parties contemplated that, as the end of the two-year compliance monitoring period approached, the NCCHC would conduct an audit to determine Defendants' compliance. (Dkt. 842, § 6.4.) If the NCCHC found any area of noncompliance, Defendants would have a cure period of 60 days, and NCCHC would then conduct a follow-up audit. (*Id*., § 6.5.) Upon NCCHC's final determination of compliance, the parties were to stipulate to the termination of the medical and mental health injunctions in this case. (*Id*., § 6.7.)

On August 11, 2015, Judge Carter extended the monitoring period for an additional two years as a sanction for the bad behavior of some of the IDOC's employees. This was an appropriate exercise of discretion, but it was not contemplated by the parties when they entered into the Stipulated Motion. The extended two-year monitoring period expired on September 1, 2017.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 7**

The NCCHC has already conducted the initial and follow-up audits. The initial audit report concluded that "the prison has a well-run health care and mental health care system." (Dkt. 1202 at 24, quoting Exhibit 2000 at 3). The follow-up audit report has not yet been submitted, and the parties have not yet stipulated to the termination of any or all of the injunctions pursuant to Section 6.7 of the Stipulated Motion.

Therefore, it appears to the Court that, although the underlying medical and mental health injunctions (Orders 1, 3, 4, and 5) remain in effect, the MCP—the settlement agreement by which the parties agreed to implement those injunctions, with its attendant audits and meetings—has expired by its own terms. The MCP provides that, if Defendants "fail to cure any area of non-compliance . . . , *the injunctive relief set forth in* Balla I *Orders 1, 3, 4 or 5 related to that area of non-compliance shall remain in full force and effect*." (Dkt. 842, § 6.6 (emphasis added).) The MCP does *not* refer to any continuation of the MCP; the only remedy specified is Plaintiffs' "right to seek from the Court any and all available legal remedies to address the situation." (*Id*.) However, the Court will refrain from issuing a final determination as to this issue until the report of NCCHC's follow-up audit is completed or when the Court considers a motion for termination.

### D.     *The Parties and Counsel Should Consider Negotiating and Stipulating to any Request for Attorney Fees and Costs, as the Court Declines to Consider a Fee and Cost Award at This Time.*

Plaintiffs request an award of all attorney fees and costs incurred in pursuing the motion for contempt. (Dkt. 1090-1 at 37.)

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 8**

Judge Carter found that high-level officials in the IDOC did not even read the Court's 2014 Order, and ground-level personnel knew nothing about the MCP. (Dkt. 1202 at 12.) This fact is, as he noted, quite shocking, particularly given the importance of this litigation to Plaintiffs, Defendants, and the citizens of Idaho. However, it is unclear precisely where this breakdown occurred. Did Defendants' counsel fail to provide the Order to IDOC officials? Or did counsel instruct the officials to read and implement the Order and the officials neglected or refused to do so? The Court has insufficient evidence at this point to determine who was responsible for Defendants' failure to update their auditing practices from the 2012 to the 2014 Order.

Although the IDOC's failure to comply with the 2014 Order is of concern, the fact remains that Defendants were following a settlement agreement and a Court order. Granted, they were following the wrong version of the agreement and the wrong order, but Defendants were—in fact—monitoring and auditing the prison's medical and mental health care delivery system in an effort to bring that system into Eighth Amendment compliance. As a result, the medical and mental health delivery system at ISCI went from a system that in some respects may have constituted cruel and unusual punishment to, as described by the NCCHC, "a well-run health care and mental health care system." (*Id.* at 24, quoting Exhibit 2000 at 3). Thus, the MCP, in whatever form it was actually implemented, appears to have accomplished its mission, though—again—the Court expresses no opinion on whether the Eighth Amendment is now satisfied.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING**
**OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 9**

Further, although Defendants' failure to even read the June 2014 Order is inexcusable, it does not appear that any person associated with Defendants affirmatively attempted to mislead the Court[4] or made frivolous arguments in response to the Motion for Contempt.

Judge Carter found that Plaintiffs did not establish that any of Defendants' contumacious behavior actually caused any harm to any member of the Plaintiff class. To this Court, however, the problem appears to be not simply a deficiency in the presentation of evidence, but that certain allegations might have been made without an investigation reasonable under the circumstances. Such an investigation would likely have saved Defendants significant resources that they had to expend in defending against unsupported allegations.

For example, Plaintiffs asserted that a clinician, Amy Houser, lacked a valid license and, therefore, Defendants' failure to audit pursuant to the June 2014 Order caused the suicide of Inmate #10, who had been a suicide watch companion. Judge Carter stated that this allegation was "unsupported by *any* evidence." (Dkt. 1202 at 67 (emphasis added).) Although Clinician Houser's license did lapse for a short time for an unknown reason, it was in full effect during the time Houser evaluated the inmate and, therefore, could not have contributed in any way to that inmate's death. (*See id*. at 46, finding that

_____

[4]     As Judge Carter found, one IDOC employee did falsify suicide-prevention training records. However, when Warden Yordy discovered this, he "immediately took steps to discipline that employee, notify Plaintiffs, and re-set the training schedule deadline." (Dkt. 1202 at 29.) Thus, the Court finds it inappropriate to hold IDOC responsible for one employee's malfeasance.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 10**

"[t]here is no evidence to show that at the time Houser evaluated Offender #10, she was not working under a valid, current license.")

The information about Clinician Houser's licensing was readily available: "It would have been easy to find out the exact dates of Amy Houser's mental health clinician license lapse and omit that evidence because it did not support Plaintiff's damages, but Plaintiffs suggested, without supporting evidence, that the lapse was connected to Inmate #10's suicide." (*Id*. at 67.) Plaintiffs' counsel could have contacted the licensing board, inquired into the procedures necessary to confirm the existence of a valid license, including time periods, and followed those procedures. Rather than do so, "Plaintiffs continued to suggest at the hearing that IDOC's failure to screen suicide watch companions occurred during the time frame when Houser assessed Inmate #10 for that position, after they were aware that the evidence clearly showed otherwise." (*Id*. at 67-68.)

As another example, Plaintiffs' counsel cited ISCI mortality rates in their Motion as support for their argument that Defendants' contumacious behavior caused inmate deaths. However, Plaintiffs failed to show any hint of a connection between the violation of the June 2014 Order and the mortality rate at ISCI. (*See* Dkt. 1202 at 57-58.) An allegation in a federal court brief that a state entity has, by malfeasance, caused the untimely deaths of numerous people in its custody should not be made lightly. Likewise, as discussed above, Plaintiffs' request for $24.5 million in "compensatory" damages, had no factual or legal basis, and therefore bordered on being frivolous.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 11**

Just as Defendants "had an independent duty to read and implement the [June 2014] Order" (*Id.* at 28), so did Plaintiffs' counsel have an independent duty to investigate any allegations of their clients prior to filing the motion for contempt. Plaintiffs' counsel had a duty to include in that motion, and pursue at the hearing, only those factual allegations with a reasonable basis in fact and only those legal arguments with a reasonable basis in law. Although Plaintiffs' counsel started out in this case pro bono, they have been getting paid for years by the Idaho taxpayers for their representation of Plaintiffs. Plaintiffs also had a paralegal and at least *four* lawyers working on the motion for contempt—counting only those lawyers whose names are on the briefs or who appeared at the hearing. (*See* Dkt. 1090, 1161, 1191.) It is unclear why Plaintiffs did not investigate and significantly hone and narrow their allegations according to their supporting evidence (or lack thereof) in the motion for contempt, and then again prior to the hearing. It is true that Plaintiffs did establish that Defendants violated the June 2014 Order. But, even here, the Plaintiffs' burden of proof was substantially eased by the fact that Defendants themselves disclosed the deviations.

If Plaintiffs file a motion for attorney fees and costs with respect to the motion for contempt, the Court may hold a hearing and fully consider counsel's conduct and any objections which Defendants may wish to make in response to a fee and cost request.

However, the Court encourages the parties to negotiate and stipulate on a fair amount of fees and costs in order to avoid a protracted proceeding. Defendants should also keep in mind that, although they are not required to pay a monetary award or to

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 12**

institute additional equitable remedies for their past contempt, their behavior with respect to the June 2014 Order was also not free from taint. They did, in fact, violate an order of this Court for more than two years. The parties and counsel should keep these issues in mind when negotiating the payment of fees and costs.

The above observations are made with the Court's acknowledgement that it may be missing some of the pieces of the puzzle as to why Plaintiffs chose to litigate as they did. Nevertheless, a review of the record seems to suggest that the lawyering in this case has departed from the level of professionalism, wisdom, and candor that the Court expects of lawyers appearing before it. It makes no difference whether the attorneys are being paid at full rates, receiving reduced rates, or acting pro bono—the Rules of Professional conduct universally apply.

## 2.  The Case Management Conference Set for October 19, 2017, Will Be Vacated

The Court will also vacate the status conference currently set for October 19, 2017, which was initially intended as a means to discuss potential next steps for the non-medical injunctions in this case—that is, all of the current injunctions that were not part of the MCP.[5] Although the Court will not place any limits on Defendants' statutory right to file a motion to terminate any of these injunctions,[6] the Court has reconsidered the

---

[5]      In light of the Court's decision to vacate the October 19 status conference, it need not consider Plaintiffs' brief (Dkt. 1204) submitted in advance of that hearing. The Court does note, however, that Plaintiffs' request for appointment of counsel with respect to the non-medical injunctions is moot, as Plaintiffs are already represented by counsel.

[6]      The Prison Litigation Reform Act provides that prospective relief "shall be terminable":

      (i)      2 years after the date the court granted or approved the prospective relief;

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 13**

issue and has decided not to take a more active role with respect to those injunctions at this time. The Court has determined that the issues identified in this Order as to the behavior exhibited by the parties and counsel are more important for the parties and counsel to resolve at this juncture—particularly given that this litigation is taxpayer-funded[7] and of tremendous significance to the public.

---

      (ii)      1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or

      (iii)     in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.

18 U.S.C. § 3626(b)(1)(A). *See also Plata v. Brown*, where the Court determined that the district court's issuance of a scheduling order leading up to a termination motion did not contravene the State's statutory right to termination or the automatic stay:

> The PLRA itself, of course, provides that a defendant may move to terminate injunctive relief under a consent decree when two years have elapsed since its imposition. 18 U.S.C. § 3626(b)(1)(A)(i). The cases interpreting the statute make this clear. As the Seventh Circuit explained, "What subsection (b)(1) does is identify a class of cases that are eligible for termination: that is, cases in which a district court must entertain motions to terminate prospective relief. If two years have elapsed since the decree was entered ... then any party is entitled to file a motion seeking termination." *Berwanger v. Cottey,* 178 F.3d 834, 838 (7th Cir. 1999); *see also Gilmore,* 220 F.3d at 999 ("Thus, any prospective relief becomes terminable, at the latest, two years after its imposition."); *Cason v. Seckinger,* 231 F.3d 777, 780 (11th Cir. 2000) ("Section 3626(b)(1)(A) establishes specified time frames under which prospective relief is terminable upon motion of a party.").

754 F.3d 1070, 1076-77 (9th Cir. 2014) (relying on *Miller v. French*, 530 U.S. 327 (2000), for the principle that the PLRA prohibits district courts from exercising their equitable authority to suspend the operation of the automatic stay).

[7]      The public is paying for this litigation three times over. First, Idaho taxpayers are paying for the work of Defendants' counsel. Second, they are paying for the Court's work. Third, they are paying for the work of Plaintiffs' counsel, as Plaintiffs have been receiving fees and costs from Defendants for several years.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 14**

## CONCLUSION

The Court wishes to express its deep appreciation for the tireless work of Judge Carter and the court facilitator, whose efforts in this case have gone above and beyond the call of duty. Judge Carter has steered the complex medical issues in this case through a settlement that appears to have resulted in the vast improvement of the medical and mental health care delivery system at ISCI, which benefits all parties as well as the public. The Court thanks Judge Carter and the court facilitator for their exemplary service. The undersigned will handle the remainder of the litigation of this case.

To that end, the parties' counsel shall meet and confer within 28 days after entry of this Order to discuss any outstanding issues with respect to the contempt motion. Counsel should also consider whether to stipulate to deadlines for filing any further contempt motions or motions to terminate any of the injunctions in this case, including the injunctions not subject to the MCP. The parties are to use the utmost care in determining whether any claims or issues remain and in how they choose to address those claims or issues. Attempting to protract this taxpayer-funded litigation without adequate grounds may result in sanctions and/or attorney fee and cost awards.

## ORDER

**IT IS ORDERED:**

1.      No monetary or other relief shall be awarded for Defendants' contempt of the June 2014 Order.

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 15**

2.      The case management conference currently scheduled for October 19, 2017, is VACATED.

3.      Within 28 days after entry of this Order, counsel for the parties shall meet and confer (1) to attempt to negotiate any outstanding issues with respect to the Plaintiffs' motion for contempt, and (2) to consider a potential schedule for the litigation of the remainder of this case, including the filing of other motions for contempt or motions to terminate injunctive relief. Any agreements between the parties may be submitted to this Court by joint motion or by stipulation.

4.      Any procedural questions regarding this case, as well as any future proposed orders, should be directed to Sarah E. Davis, Staff Attorney with the Court's Prison Litigation Unit.

DATED: **October 13, 2017**

B. Lynn Winmill
Chief Judge
United States District Court

**ORDER RE: REMEDIES FOR PAST CONTEMPT and ORDER VACATING
OCTOBER 19, 2017 CASE MANAGEMENT CONFERENCE - 16**