W. Christopher Pooser, ISB No. 5525
E-mail: *christopher.pooser@stoel.com*
Elijah M. Watkins, ISB No. 8977
E-mail: *elijah.watkins@stoel.com*
Wendy J. Olson, ISB No. 7634
E-mail: *wendy.olson@stoel.com*
STOEL RIVES LLP
101 S. Capitol Blvd, Ste 1900
Boise, ID 83702
Telephone:  (208) 389-9000
Fax:  (208) 389-9040

Attorneys for Plaintiffs, Walter D. Balla, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER D. BALLA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>IDAHO STATE BOARD OF CORRECTION, et al.,<br><br>　　　　　Defendants. | Case No. CV 81-1165-S-BLW<br><br>PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C |

Plaintiffs, Walter D. Balla, et al. ("Plaintiffs"), submit this offer of proof in support of Plaintiffs' argument that Defendants' policy and practice in treating the Hepatitis C virus ("HCV" or "Hepatitis C") amounts to a continuing and ongoing constitutional violation that precludes termination of injunctive relief related to the provision of medical care at the Idaho State Correctional Institution ("ISCI").

The Defendants' withholding of Direct Acting Antivirals ("DAAs") treatment from Hepatitis C positive inmates who have an expected lifespan of 12 or more months constitutes

"cruel and unusual" punishment in violation of the Eighth Amendment to the U.S. Constitution and amounts to a continuing and ongoing constitutional violation.

Plaintiffs' offer of proof is supported by the Declaration of Richard Hearn ("Hearn Decl."), Declaration of Anna E. Courtney ("Courtney Decl."), Declaration of Dr. Gish ("Gish Decl."), Declaration of Dr. Bick ("Bick Decl.") and Declaration of Dr. Witte ("Witte Decl."). Plaintiffs' offer of proof is also supported by the Declaration of Richard Hearn in Support of Plaintiffs' Opposition to Motion to Terminate Prospective Relief (Dkt. 1257) and Request for Evidentiary Hearing ("Hearn Decl. II").

## I.  ARGUMENT

Defendants are charged with the medical care of the Plaintiffs, a class of approximately 1,400 individuals. One hundred fifty-six class members (or approximately 11% of the *Balla* class) are known to be infected with Hepatitis C, with only approximately 10 currently receiving treatment. Hearn Decl. II ¶ 8. However, in 2018, the Idaho Department of Correction ("IDOC") estimated that "approximately 30% of its inmates are infected with hepatitis C." Hearn Decl. Ex. P. Based on IDOC's own estimates, of the approximately 1,400 *Balla* class members, it is likely that at least 400 members may be infected by Hepatitis C. Hearn Decl. II ¶¶ 8, 9. Hepatitis C is a serious medical condition. Defendants' purposeful failure to address this serious medical condition results in real and material harm to the Plaintiff class. This amounts to a current and ongoing constitutional violation at ISCI and it precludes termination of *Balla* injunctions relating to the provision of medical care.

**A.  Applicable Legal Standard.**

An inmate who suffers "deliberate indifference" to his "serious medical needs" may state a claim for a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For claims like the Plaintiffs', that Defendants' policies create a systemic, future-oriented Eighth

PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C - 2
101894609.2 0063811-00006

Amendment claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Serious medical needs are shown by demonstrating "that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiffs must show a "culpable state of mind." *Farmer*, 511 U.S. at 834. Deliberate indifference is demonstrated by "showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* Indifference "'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*. (citation omitted).

### B.  Hepatitis C Is a Serious Medical Illness.

"Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks, alterations, and citation omitted) (concluding that total blindness in one eye is a serious medical need).

Several courts, including this Court, have concluded that Hepatitis C is a serious medical need. *Workman v. Atencio*, No. 1:16-CV-00309-BLW, 2018 WL 4496628, at *4 (D. Idaho Sept. 19, 2018); *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1299 (N.D. Fla. 2017) (finding that chronic Hepatitis C constitutes a "serious medical need" because it causes "substantial risks of serious harm, including, but not limited to, bleeding from any site in the body, accumulation of fluid in

the legs or abdomen, life-threatening infections, significant pain or discomfort, organ failure, liver cancer, and death"); *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011) (noting that "HCV infection is a serious medical condition that can lead to irreversible physical damage and even life-threatening situations"); *Loeber v. Andem*, 487 F. App'x 548, 549 (11th Cir. 2012) ("That Hepatitis C presents a serious medical need is undisputed."); *Black v. Ala. Dep't of Corr.*, 578 F. App'x 794, 795 (11th Cir. 2014) ("The parties do not dispute that Black's Hepatitis C is a serious medical need."); *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *14 (M.D. Pa. Jan. 3, 2017)[1] ("the Court finds that Plaintiff[] has a reasonable likelihood of showing that chronic hepatitis C constitutes a serious medical need under the Eighth Amendment").

Hepatitis C is a serious medical illness. HCV is the deadliest infectious disease in the United States. Gish Decl. ¶ 8. Up to 5 million individuals in the United States are currently living with HCV. Gish Decl. ¶ 7. More than 20,000 people in the United States die each year due to liver disease caused by HCV. Gish Decl. ¶ 8.

HCV is an active infectious disease that can be transmitted to others when the blood of a person infected with HCV enters the body of a person who is not infected. Gish Decl. ¶ 10. HCV is most commonly acquired via sharing needles during injection drug use. Bick Decl. ¶ 11. HCV is transmitted via needle sticks and other healthcare-related exposures to blood and body fluids, and by using contaminated needles during tattooing. *Id*. Because of the way it is transmitted, HCV has a very high frequency in incarcerated individuals. Gish Decl. ¶ 10; *see also* Bick Decl. ¶¶ 18-21.

---

[1] *Appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), *and*  No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017).

Up to 85% of those infected with HCV will develop "chronic" Hepatitis C, meaning the infection did not clear itself spontaneously on its own within a few months of infection. Gish Decl. ¶ 8; Bick Decl. ¶¶ 12-13. "'The principal consequence of [HCV] infection is infection of the liver, which causes inflammation that in turn may result in scarring of the liver (fibrosis).'" *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1294 (N.D. Fla. 2017) (brackets in original; citation omitted); Gish Decl. ¶ 11. Untreated chronic Hepatitis C causes liver fibrosis which is irreversible and, over time, advanced liver fibrosis caused by Hepatitis C often leads to liver cirrhosis.  Bick Decl. ¶ 14; Gish Decl. ¶ 11. This happens when the chronic HCV enters the cells of the liver, and the body mounts an immune response against the virus. *Id*. This results in the death of liver cells, leading to the formation of scarring called fibrosis.  *Id*. In the absence of treatment, extensive fibrosis can develop, resulting in impaired blood flow through the liver and diminished liver function. *Id*. Over time, these scarred fibrotic areas can merge together, leading to an advanced stage referred to as cirrhosis. *Id*.

"The amount of liver scarring a patient has is usually measured on the METAVIR ['MFS'] scale. On this scale, a person can be classified F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis)." *Jones,* 290 F. Supp. 3d  at 1294–95; Gish Decl. ¶ 11 ("The severity of liver damage due to HCV is most frequently measured by the Metavir Fibrosis Score ('MFS') to establish the 'stage' of fibrosis, among many other choices of liver damage scoring. An MFS of F0 or F1 indicates a lack of or minimal scarring; F2 is an intermediate stage of fibrosis or liver scarring; F3 indicates severe fibrosis; and F4 indicates cirrhosis or advanced liver scarring.").

Up to 40% of those with chronic Hepatitis C will go on to develop cirrhosis over a period of 20-30 years. Gish Decl. ¶ 10. For those with cirrhosis, there is a 1-5% annual risk of

hepatocellular carcinoma and a 3-6% annual risk of hepatic decompensation, for which the risk of death in the following year is 15-20%. *Id*. HCV is the leading cause for liver transplant in the U.S. Gish Decl. ¶ 9. However, HCV harms more than just an individual's liver. Gish Decl. ¶ 8. During the initial stages of the disease, individuals with HCV can suffer from fever, fatigue, decreased appetite, nausea, vomiting, abdominal pain, kidney injury, renal failure, joint pain, heart attacks, diabetes, low quality of life, depression, arthritis, nerve and brain damage, and jaundice. *Id*.; Bick Decl. ¶¶ 12-13. Moreover, delaying treatment until the disease reaches more advanced or "higher" levels has adverse side effects, including irreversible liver damage, increased risk of death, and needlessly prolonged suffering. Gish Decl. ¶¶ 11, 29.

Patients who develop decompensated cirrhosis experience life-threatening complications such as bleeding of dilated esophageal veins called varices, ascites or the accumulation of fluid in the peritoneal cavity, spontaneous bacterial peritonitis or infection of ascites fluid, combined liver/kidney failure, combined liver/lung failure, and a brain disorder called hepatic encephalopathy. Bick Decl. ¶ 14. Dr. Witte concluded that Hepatitis C represents a serious medical need and has opined that "[e]ach one of these Hep C positive inmates refused treatment by IDOC/Corizon in FY 2017 was at substantial risk of suffering irreparable harm from untreated Hep C and said risk continues until each of these identified inmates is appropriately treated and cured." Witte Decl. ¶ 17(o).

Hepatitis C is a serious disease that leads to serious medical complications when it is left untreated. The Court should find that chronic Hepatitis C constitutes a serious medical need under the Eight Amendment.

C.  **The Community Standard of Care Is to Provide Treatment to All Hepatitis C Positive Patients Who Have an Expected Lifespan of 12 Months or More.**

Up until 2013, the only treatment for HCV was a lengthy injection and oral drug regimen with serious side effects. Bick Decl. ¶ 24. In October of 2014, the FDA approved Harvoni (ledipasvir/sofosbuvir) for the treatment of Hepatitis C. Witte Decl. ¶ 13. Harvoni allows most patients to achieve a cure for their Hepatitis C within 8 to 12 weeks without needing interferon injunctions. Witte Decl. ¶ 14. Since that time, the FDA has approved other highly effective oral treatments for Hepatitis C. Witte Decl. ¶ 15; *see also* Gish Decl. ¶ 25 (the FDA has approved multiple new treatments for HCV that offer nearly universal cure rates with minimal side effects); Bick Decl. ¶ 25.

"Prior to the availability of highly effective well tolerated treatment regimens, some health care systems chose to prioritize patients and only offer treatment to patients who had more advanced disease and were therefore at greatest risk for developing decompensated cirrhosis. Various staging systems were developed that used blood tests, specialized ultrasound examinations, and liver biopsies to categorize patients into different degrees of fibrosis." Bick Decl. ¶ 26.

However, "with the availability of highly effective and well tolerated DAAs, it is no longer medically justified to defer HCV treatment unless there is a major contraindication such as a very short life expectancy due to a non-liver related illness." Bick Decl. ¶ 26; Witte Decl. ¶ 17 ("Since the FDA approval of Harvoni in October of 2014, all patients with HCV RNA positive – with the exception of those not expected to survive the 12 months – should be treated with a direct acting antiviral."); Gish Decl. ¶ 24 (There "was a need to prioritize treatment to those patients in the end-stages of liver disease. This prioritization was not based upon medical necessity or analysis of the effectiveness of the drugs. However, insurers began formalizing the

PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C - 7
101894609.2 0063811-00006

exclusion of DAAs based upon this initial prioritization. This was, and remains, a gross misreading of the initial standards and falls below the standard of care in the community.").

Treatment for Hepatitis C is the standard of care because there is no justifiable reason to delay the provision of care. *See* Witte Decl. ¶ 17 ("IDOC and its medical services provider breach the standard of care whenever a Hep C positive inmate is not offered treatment with a direct-acting antiviral agent regardless of their Priority Level according to the Federal Bureau of Prison Guidelines."). "From a public health perspective, observation without treatment risks spreading the disease to others. There is no medical justification for observation and delaying treatment to individuals with HCV unless they have a short life expectancy that cannot be remediated by treatment, by transplantation, or by other directed therapy at another underlying liver disease." Gish Decl. ¶ 11; Bick Decl. ¶ 26.

On November 16, 2015, the American Association for the Study of Liver Disease ("AASLD") issued a press release strongly condemning the practice of rationing care to Hepatitis C patients based upon the level of liver fibrosis. The AASLD explained that delaying treatment until HCV has progressed cannot be justified on any medical basis:

> Over the past two-plus years, the Food and Drug Administration has approved multiple new treatments for HCV that offer nearly universal cure rates with minimal side effects. It is a remarkable success story for medical science. Unfortunately, many insurers – both private and public – are delaying access to new HCV treatments to patients until their disease has progressed and the liver is further damaged. ***There is no medical evidence to justify that position and much to justify treating all patients.***
> . . . .
> **AASLD endorses treating patients with HCV as the standard of care.** In the regularly revised HCV Practice Guidance of AASLD and IDSA, we recommend early treatment of chronic HCV infection before the development of severe liver disease and other complications to improve overall survival rates.
> . . . .
> **Inaction is harmful to patients.** Untreated HCV has been linked to many causes of death, such as liver cancer and kidney problems.

PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C - 8
101894609.2 0063811-00006

> . . . .
> **Failure to treat leads to other medical problems.** Among them are HCV-associated heart disease, lymphatic cancers, particularly non–Hodgkin Lymphoma, kidney damage in many patients and evidence of immune-related disease when tested for rheumatoid factors. Studies show that HCV infection increases the risk of insulin resistance and diabetes by almost four times. Diabetes increases the risk of liver cancer in people living with HCV.

Gish Decl. ¶ 25. The AASLD/IDSA Guidelines explain that there are benefits to treatment of HCV even at early stages of fibrosis (less than F2) and outline the national standard of care for treatment of HCV using DAAs. Gish Decl. ¶ 18.

Thus, all patients with chronic HCV, with the exception of those not expected to survive for 12 months, should be treated with a DAA under the Idaho community standard of care. Witte Decl. ¶ 17 ("The standard of care for the treatment of Hep C positive patients in Idaho, whether or not those patients are incarcerated in one of the Idaho Department of Correction's facilities, is treatment with an oral DAA for 8 to 12 weeks."); *see also* Gish Decl. ¶¶ 11, 18, 19.  This is also the standard of care nationally. *See Jones*, 290 F. Supp. 3d at 1296 ("Despite the high cost of DAAs, the present-day standard of care is to treat chronic-HCV patients with DAAs as long as there are no contraindications or exceptional circumstances. It is inappropriate to only treat those with advanced levels of fibrosis.").

DAAs cure HCV, a condition which causes suffering and endangers the life of an individual with HCV. Gish Decl. ¶ 19. The only reason to deny treatment is expected lifespan. *Id*. Defendants breach the community standard of care every time they fail to treat members of the Plaintiff class suffering from Hepatitis C, who are expected to live for more than 12 months, with DAAs.

PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C - 9

### D. Defendants' Withholding of DAA Treatment Violates the Eighth Amendment to the U.S. Constitution By Creating A Substantial Risk Of Serious Harm.

Defendants do not treat all inmates within the *Balla* class at ISCI who have Hepatitis C, despite knowing that it is the standard of care. This amounts to deliberate indifference, cruel and unusual punishment, and is an ongoing constitutional violation at ISCI.

While the "Ninth Circuit has not definitely spoken on the issue of whether, and in what circumstances, DAAs constitute the constitutionally required standard of care for Hepatitis C patients," several courts have already determined that the proper standard of care is for all individuals with Hepatitis C to be prescribed DAAs. *Workman*, 2018 WL 4496628, at *5.

In *Wetzel*, the Pennsylvania Department of Correction had a policy of treating those who were the most in need of Hepatitis C treatment through a prioritization protocol: identify those with the most serious liver disease and treat them first, before moving down the list to lower priorities. 2017 WL 34700, at *9-10. The court concluded that the standard of care was for the treatment through DAA medications. *Id*. at *15. The fact that the policy completely barred some people with Hepatitis C from receiving treatment (because they did not fall into a certain priority level), constituted a refusal, "without medical justification, to provide treatment for certain inmates with hepatitis C" and imposed unreasonable conditions to receiving care. *Id*. at *16. The court reasoned that this deliberate delay in treatment of Hepatitis C, despite the knowledge that the medicine will cure Hepatitis C in 90-95% of cases and that substantial delay in treatment "is likely to reduce the efficacy of these medications and thereby prolong the suffering of those who have been diagnosed with chronic hepatitis C and allow the progression of the disease to accelerate so that it presents a greater threat of cirrhosis, hepatocellular carcinoma, and death of the inmate with such disease" constitutes deliberate indifference. *Id*. at *11. The court found that the deliberate choice to monitor, rather than treat, when made for non-medical reasons, allows

the inmate's condition to worsen while liver function and health continues to deteriorate. *Id*. at *14.

The court noted that this was not a case where the inmate simply disagreed with a doctor's decision, but was rather a system-wide policy that categorically denied inmates the community standard of care. *Id*. at *18. Nor was this a case of medical negligence, because the policy was instituted with the knowledge of the standard of care, the knowledge that inmates would likely suffer from Hepatitis C "complications and disease progress without treatment," and the knowledge that delay in administering "DAA medications reduces their efficacy." *Id*.

Other courts have reached similar conclusions. In *Hoffer*, the court concluded that a policy of prioritizing treatment of individuals with Hepatitis C, and the justification of lack of funding, amounted to deliberate indifference to a serious medical need. 290 F. Supp. 3d at 1300 (granting preliminary injunction on the basis that the Florida Department of Corrections was not treating Hepatitis C infected inmates as required by the Constitution). In *Stafford v. Carter*, the court concluded that the undisputed evidence established: (1) "individuals with untreated chronic HCV face a substantial risk of harm" including "immediate symptoms" and the "certainty" that the disease will progress; (2) "the metric used by Defendants to measure disease progression is not effective at distinguishing between degrees of infection before the disease becomes advanced"; (3) "chronic HCV is a curable disease, and the only effective treatment—oral DAA medication—can cure it within eight to twelve weeks"; and (4) "there is no medical reason to divide individuals by 'priority' or to ration the use of DAAs." No. 1:17-CV-00289-JMS-MJD, 2018 WL 4361639, at *20 (S.D. Ind. Sept. 13, 2018).

In *Stafford*, the court also noted the adverse consequences of non-treatment: "[T]he undisputed medical evidence is that delaying treatment for chronic HCV until patients have developed more advanced stage liver fibrosis has been demonstrated to result in two to five times

PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C - 11

higher rates of liver-related mortality, as compared to those offered treatment at an earlier stage," and "the symptoms suffered by patients as their disease progresses[] include[e], among other things, pain, accumulation of fluid in the abdomen, diabetes, and the risk of kidney failure." *Id.* at *17.

Although substantial, the cost of providing Plaintiffs with treatment for their Hepatitis C which meets the standard of care cannot outweigh the Eighth Amendment's guarantee of adequate medical care while in prison. *Wetzel*, 2017 WL 34700, at *20 ("While the Court is sensitive to the realities of budgetary constraints and the difficult decisions prison officials must make, the economics of providing this medication cannot outweigh the Eighth Amendment's constitutional guarantee of adequate medical care."). In *Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014) (*en banc*), the Ninth Circuit explained:

> **Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations.** See *LaMarca v. Turner*, 995 F.2d 1526, 1536-39, 1542 (11th Cir. 1993) (prison official wouldn't be personally liable if he did everything he could, but prisoner could get an injunction against official in his official capacity); *see also Watson v. City of Memphis*, 373 U.S. 526, 537, 83 S. Ct. 1314, 10 L. Ed. 2d 529 (1963) (rejecting argument that city couldn't desegregate parks because of budgetary concerns); *Wright v. Rushen*, 642 F.2d 1129, 1134 (9th Cir. 1981) ("[C]osts cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards."). **A case seeking prospective relief thus can't be dismissed simply because there is a shortage of resources.**

*Id.* at 1083 (emphasis added).

Here, it is important to note at the outset that Defendants have likely failed to identify all the individuals housed at ISCI who have Hepatitis C. According to Defendants' own estimates, up to 30% of the prison population in Idaho is infected with Hepatitis C. Hearn Decl. ¶ 24, Ex. L. Yet, as of December 2018, IDOC had only identified 145 inmates at ISCI who have Hepatitis C, equating to only 10.1% of the ISCI population. Hearn Decl. ¶ 33, Ex. Q. This is likely because

up until September 2018, Defendants were only testing inmates who "opted-in" to Hepatitis C testing rather than employing an opt-out strategy for testing. Hearn Decl. Ex. S; Witte Decl. ¶ 17(g)-(j); Bick Decl. ¶ 23.

Nevertheless, it is clear that even for those who have been tested, Defendants are not treating all those with Hepatitis C. Hearn Decl. ¶ 9, Ex. Q. In October 2018, ISCI believed 177 individuals had Hepatitis C, but only eight were receiving treatment. *Id*. In November 2018, still only eight were receiving treatment. *Id*. In December 2018, only 11 were receiving treatment. *Id*. For the fiscal year 2018, Defendants planned to treat only 58 inmates in the entire state of Idaho for Hepatitis C. Hearn Decl. ¶ 24.

These low numbers are because Defendants are still providing care based on priority criteria for treatment, and only treating those at the highest priority level, a practice, as demonstrated, that multiple courts have found to be unconstitutional. *Id*.; *see also* Hearn Decl. ¶ 16, Ex. E. Defendants' focus is only on patients at Priority 1, and only once Priority 1s are treated, will Defendants start treating Priority 2s. Courtney Decl. Ex. A. Defendants have discussed the gradual implementation of treating everyone, before they were "court ordered to do so," but decided not to treat everyone and rather wait for the outcome of the legal cases. Courtney Decl. Ex. B.

The standard of care in Idaho and elsewhere is to treat (and cure) HCV positive patients by treating them with an 8- to 12-week course of an oral DAA. Witte Decl. ¶ 17; Gish Decl. ¶¶ 11, 18, 19; Bick Decl. ¶¶ 34-35, 37. "IDOC and its medical services provider breach the standard of care whenever a Hep C positive inmate is not offered treatment with a direct-acting antiviral agent regardless of their Priority Level according to the Federal Bureau of Prison Guidelines." Witte Decl. ¶ 17. Defendants' decision to treat only some individuals with Hepatitis C is not based on a medical decision, but rather a limited budget appropriation. Hearn Decl. ¶ 8.

Defendants also know that "all patients with chronic HCV infection may benefit from treatment." Hearn Decl. ¶ 10. Despite this knowledge, Defendants only treat some patients based on their priority level. Hearn Decl. ¶¶ 10, 12, 18-21.

"The Idaho Department of Correction's plan to approve treatment with DAAs of only 55 to 60 Hep C positive inmates in 2018 and each year thereafter demonstrates the Idaho Department of Correction's continuing deliberate indifference to the medical needs of hundreds, if not thousands, of Hep C positive inmates each year." Witte Decl. ¶ 17. A limited budget cannot constitutionally justify IDOC's indifference to the serious risk posed by Hepatitis C to more than 2000 IDOC inmates.

In sum, a minimum of 10.1% and up to 30% of the Plaintiff class have Hepatitis C. Hearn Decl. ¶ 24, Exs. L, R. Hepatitis C is a serious medical need, including immediate symptoms as well as certain disease progression. *See supra* § II.B. As such, the community standard of care is to treat anyone with chronic HCV, except those with a short life expectancy that cannot be mediated. Under the guidance from AASLD, prioritization tables are no longer used. Hearn Decl. Ex. D. Defendants do not have a medical rationale for the continued use of the prioritization system. This is a denial of treatment for those suffering from chronic HCV, creates a substantial risk of serious harm to the *Balla* class, and is a violation of the Eighth Amendment.

## II. CONCLUSION

Defendants have a policy that categorically denies certain inmates with Hepatitis C from receiving the curative treatment, despite Defendants' knowledge that such treatment is the standard of care in the community. The outright refusal to treat those with a chronic condition that causes infection and pain if left untreated constitutes deliberate indifference. This amounts to violation of the Eighth Amendment as cruel and unusual punishment and, therefore, a continuing and ongoing constitutional violation at ISCI.

DATED:  May 17, 2019.                    STOEL RIVES LLP

*/s/ Wendy J. Olson*
W. Christopher Pooser
Wendy J. Olson
Elijah M. Watkins

Attorneys for Plaintiffs

PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C - 15
101894609.2 0063811-00006

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I served a copy of **PLAINTIFFS' OFFER OF PROOF ON HEPATITIS C** on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

Mark A. Kubinski - mkubinsk@idoc.idaho.gov
Colleen D. Zahn - colleen.zahn@ag.idaho.gov
Brian V. Church – brian.church@ag.idaho.gov

*/s/ Wendy J. Olson*
W. Christopher Pooser
Wendy J. Olson
Elijah M. Watkins